| | | |
|---|---|---|
| IN RE : | ) | Chapter 11 |
| ALABAMA PARTNERS, LLC, Debtor. | ) ) ) ) | Case No. 17–03469-TOM-11 |
| IN RE : | ) ) | Chapter 11 |
| BAMACHEX, INC., Debtor. | ) ) ) ) | Case No. 17–03471-TOM-11 |
| IN RE : | ) ) | Chapter 11 |
| MARYLAND LC VENTURES, LLC, Debtor. | ) ) ) ) | Case No. 17–03472-TOM-11 |
| IN RE : | ) ) | Chapter 11 |
| MARYLAND PIZZA, INC., Debtor. | ) ) ) ) | Case No. 17–03473-TOM-11 |
| IN RE : | ) ) | Chapter 11 |
| PG COUNTY PARTNERS LLC, Debtor. | ) ) ) ) | Case No. 17–03474-TOM-11 |
| IN RE : | ) ) | Chapter 11 |
| PG COUNTY PIZZA, INC., Debtor. | ) ) ) ) | Case No. 17–03475-TOM-11 |

**DEBTORS' MOTION FOR INTERIM ORDER AND FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c)(2) AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Alabama Partners, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully move the Court, pursuant to 11 U.S.C. §§ 361(a) and 363 and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 503(b), for interim and final approval of the Debtors' use of cash collateral. In support of this Motion, Debtors state as follows:

## FACTUAL BACKGROUND

### A. Procedural Posture.

1. On August 11, 2017 (the "Petition Date"), each Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

### B. Corporate Structure and Nature of Business Operations.

2. The Debtors are a series of related and affiliated companies that operate in the fast food restaurant business.

3. Alabama Partners, LLC is a holding company for the operating entity BamaChex, Inc. These debtors operate a series of Rally's hamburger restaurants in the Birmingham, Alabama metropolitan area.

4. Maryland LC Ventures, LLC is a holding company for the operating entity Maryland Pizza, LLC; and PG County Partners, LLC is the holding company for the operating entity PG County Pizza, Inc. Each of the holding companies owns four Little Caesars Pizza franchises in Maryland.

5. As the Court is aware, the fast food restaurant business is extremely competitive, and its operating margins are extremely thin.

6. The Debtors have recently been under substantial stress as a result of both operational and capital structure issues. In an effort to survive and maintain operations, they have resorted to taking short term loans with extremely high interest rates. The Debtors had an exit strategy to attempt to sell themselves to third-party operators, and a sale was originally scheduled for July of this year. However, that sale was ultimately cancelled when the purchaser backed out of the transaction the day before the proposed closing.

7. The Debtors have filed these chapter 11 cases in order to reorganize and streamline operations and prepare for a sale of the operating entities.

8. The Debtors anticipate that they will continue with their prior marketing efforts to sell the operating units and to ultimately market the businesses as part of a § 363 sale.

9. The Debtors are hopeful that the resulting proceeds will be able to pay all administrative claims and secured and priority claims, as well as obtain a dividend for unsecured creditors.

<u>ALABAMA OPERATIONS</u>

10. The Debtors' Alabama operations consist of 12 Rally's Hamburger restaurants. Collectively, these stores are projected to generate positive cash flow. Attached hereto as Exhibit A is a three-month budget for the Alabama operations.

11. The Debtors own each of their stores and their equipment, with the exception of one store that the Debtors sublease the building from Checkers. The remaining stores are subject to ground leases with various lessors.

12. The Debtors have substantial tax obligations. The secured federal and state tax liens total approximately $1.5 million.

13. The Debtors estimate they have general unsecured claims of approximately $3 million.

14. Based upon prepetition negotiations and offers and the Debtors' discussions with their broker,[1] the Debtors currently estimate the going concern value of the Alabama operations at between $2-3 million.

### MARYLAND OPERATIONS

15. The Debtors' Maryland operations consist of two operational entities. Each of these entities operates 4 Little Caesar's Pizza stores. The Debtors believe that on a going-forward basis, each group of stores will be cash flow positive. Attached hereto as Exhibits B and C are three-month budgets for the Maryland operations.

16. The Debtors lease each of these stores. In addition, the Debtors have equipment leases in place for certain of their stores. The Debtors anticipate that they will soon be filing motions to reject the franchise, store, and equipment leases in three of the stores operated by Maryland Pizza, Inc.

17. The Debtors estimate they have general unsecured claims of approximately $1.6 million.

18. The Debtors have outstanding federal, state and local tax obligations, but no tax liens have been recorded against the Maryland operations.

---

[1] The Debtors anticipate they will be filing an application to employ Advanced Restaurant Sales as their broker shortly.

19. Based upon negotiations, the opinion of equity holders, and discussions with their broker, the Debtors currently believe the Maryland operations have a going concern value of $1.2 – 1.5 million.

**SECURED CLAIMS AND TREATMENT**

20. The Debtors' various secured claims can be placed in three categories. Namely, tax liens, equipment liens, and Daily Lender liens.

21. The Debtors acknowledge the existence of the tax liens. The Debtors further propose to provide post-petition replacement liens for these creditors to protect against any diminution in the value of their collateral the same nature and extent of their pre-petition liens.

22. The Debtors acknowledge the existence of the equipment financing agreements and recording of liens on certain of the Debtors' equipment. The Debtors contend that they hold significant equity in the equipment and thus that any equipment lender is adequately protected.

23. The final categories of alleged secured claims are blanket liens asserted by certain of the Daily Lenders.[2] The Debtors dispute the validity of these liens. These liens arise from a series of pre-petition agreements whereby the Debtors accepted a lump sum of money from the Daily Lenders in exchange for providing the Daily Lenders with an interest in their future credit card receivables. The Daily Lenders thereafter would automatically debit the Debtors' bank accounts on a daily basis, and generally for a six month term, to repay not only the original cash payment made to the Debtors but also a substantial profit amount. In many cases, the profit being automatically taken from the Debtors' bank accounts on a daily basis would amount to interest rates of 80%, if not higher. The Debtors dispute that the transactions in which they engaged with the Daily Lenders constitute "true sales" and contend that such transactions are

---

[2] These lenders include Yellowstone Capital, LLC, Eagle Phillips, LLC and NuGrowth Capital (collectively, the "Daily Lenders").

5

actually disguised financing arrangements. The Debtors reserve all rights with respect to this issue.

24. Even if the Daily Lenders hold liens on the Debtors' accounts, the provisions of Bankruptcy Code § 552 cut off any of the Daily Lenders' rights in the cash collateral. *See In re Karakosta Investments, Inc.*, 2008 WL 4057901 (M.D. Fla.) (opinion of Judge Paskay analyzing the sale of future credit card receivables and the interplay of Bankruptcy Code § 552)

25. For purposes of this Motion, the Debtors propose that the Daily Lenders be granted a replacement lien to the nature and extent of their pre-petition lien and only to the extent of any diminution in the value of the collateral. The Debtors, however, dispute the validity of these liens and reserve their rights to dispute them in the future.

### SUMMARY OF RELIEF REQUESTED

26. As noted above, certain parties may claim liens in essentially all of Debtors' personal property (the "Collateral"), including cash, proceeds and other cash equivalents that constitute cash collateral under § 363(a) of the Bankruptcy Code.

27. The Debtors must use cash collateral to pay wages, utilities, and other expenses related to business operations and the administration of the Debtors' estates. The Debtors seek authority to use cash collateral and provide adequate protection under § 363(c) of the Bankruptcy Code.

### JURISDICTION AND NOTICE

28. The Debtors bring the instant motion (the "Motion") pursuant to §§ 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

29. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of Debtor's chapter 11 case and this Motion in this district are proper pursuant to 28 U.S.C.§§ 1408 and 1409.

30. No committees have been appointed in the Debtors' cases.

31. Notice of this Motion has been provided to (1) the Office of the Bankruptcy Administrator for the United States Bankruptcy Court for the Northern District of Alabama, Southern Division; (2) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (3) the holders of Debtors' equity interests; (4) the District Director of the Internal Revenue Service for the Northern District of Alabama; and (5) any secured creditors of record (the "Notice Parties"). Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other further notice need be provided.

32. Under Bankruptcy Rule 4001(b)(2), the Court may commence a final hearing on a motion to approve use of cash collateral no earlier that fourteen (14) days after service of the motion and notice of hearing on the motion. Bankruptcy Rule 4001(b)(2) further provides, however, that the Court may conduct a preliminary hearing before the expiration of the 14-day notice period as necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. The Debtors request the Court conduct a preliminary hearing on this Motion on August 16, 2017, in conjunction with the hearing set for Debtors' First Day Motions (*See* Case No. 17-03469-11, Doc. 15), to authorize the use of cash collateral as necessary to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing.

## NEED FOR USE OF CASH COLLATERAL

33. To the extent the Collateral consists of cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalent, the Collateral is cash collateral under § 363(a) of the Bankruptcy Code (the "Cash Collateral").

34. To preserve the value of the Debtors' assets and the Debtors' ability to manage their estates for the benefit of creditors and other parties in interest, the Debtors must use the Cash Collateral to pay wages, utilities, and other expenses related to business operations and the administration of the Debtors' estates. Without authority to use the Cash Collateral, the Debtors will not be able to retain their employees or to preserve the value of their assets for the benefit of the Debtors' estates. The result will be the immediate shut down of the Debtors' businesses to the detriment of all parties in interest. Thus, an immediate and critical need exists for the Debtors to use funds in order to continue the operation of their fast food restaurants, and without the ability so spend their cash, the Debtors will not be able to pay payroll and other direct operating expenses and obtain goods and services needed to operate the restaurants during this sensitive period in a manner that will avoid irreparable harm to their estates. The Debtors' ability to use Cash Collateral is vital to the confidence of the Debtor's customers, employees, vendors, and suppliers of goods and services and to the preservation and maintenance of the going concern value of the Debtors' estates.

35. The Debtors propose to use Cash Collateral on the following terms:

   a. <u>Scope of Use</u>: The Debtors will be authorized to use Cash Collateral to pay pre-petition payroll obligations and for the purposes of operating their businesses in accordance with the Budgets (as defined below). Other than the payment of the pre-petition payroll obligations, the Debtors will not use the Cash Collateral for any purpose not set forth in the Budgets or otherwise outside the ordinary course of the Debtors' businesses.

b. <u>Budget</u>: The budgets for the use of Cash Collateral are attached as Exhibits A, B, and C.

c. <u>Cash Management</u>: The Debtors will maintain their pre-petition cash-management systems.[3] All Cash Collateral collected by the Debtors after the Filing Date will be deposited in the Debtors' bank accounts in accordance with the Budgets.

d. <u>Reporting and Disclosure</u>: Except to the extent already provided, the Debtors shall provide evidence of insurance on all insurable assets of the Debtors. During the terms of the Budgets, the Debtors shall provide monthly operating reports pursuant to the requirements of the Bankruptcy Administrator's office.

### AUTHORIZATION TO USE CASH COLLATERAL

36. Under Section 363(c)(2) of the Bankruptcy Code, the Debtors may not use the Cash Collateral unless the Court authorizes its use.

37. To preserve the value of the Debtors' assets and the Debtors' ability to manage their estates for the benefit of creditors and other parties in interest, the Debtors must use the Cash Collateral to pay employees, utilities, and other expenses related to business operations and the administration of the Debtors' estates. The Debtors respectfully submit that their use of Cash Collateral for these purposes is due to be approved.

38. The Debtors request the Court authorize on a preliminary basis the Debtors' use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm. The Debtors have an immediate need for authorization to pay pre-petition wages as set forth more fully in Debtors' previously-filed motion for authority to pay pre-petition wages, salaries, employee expense reimbursements and employee benefits and to direct banks to honor checks for payment of pre-petition employee obligations (the "Wage Motion"). Furthermore, the Interim Budget reflects the Debtors' minimum cash flow needs to avoid immediate and irreparable harm.

39. Without immediate approval of the use of the Cash Collateral to pay accrued payroll obligations and to meet the Interim Budget, Debtors will not be able to pay expenses

---

[3] The Debtors have filed a separate motion seeking authority to maintain and use their prepetition bank accounts.

necessary to maintaining their business operations, which in turn is necessary to preserve going concern value and maximize returns to creditors. Accordingly, approval of the use of the Cash Collateral to pay pre-petition payroll and employee expenses reimbursement obligations and to operate the Debtors' businesses in accordance with the Interim Budget is necessary upon a preliminary hearing to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing.

40. Adequate protection relates only to the preservation of the value of the secured creditor's interest in collateral. Adequate protection does not require preservation of other rights the secured creditor may have. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1998). Because the Debtors' use of the Cash Collateral, as proposed herein, will not affect the Lenders' ability to recover the full amount of their claims from the Collateral, the Lenders are not entitled to further adequate protection. Notwithstanding, the Debtors propose to grant the Lenders replacement liens to the extent of any diminution in the value of their respective Collateral, with such liens being accorded the same validity, extent, and priority as existed on the Petition Date.

41. The Debtors are entitled to surcharge the Collateral to the extent that the Debtors have incurred reasonable expenses necessary to, without limitation, generate, preserve and collect receivables, resulting in tangible benefits to the Lenders. Accordingly, the Debtors reserve the right to seek authority, pursuant to Section 506(c) of the Bankruptcy Code, to surcharge the Collateral to recover the reasonable and necessary expenditures – as included in the Budgets – related to the preservation of the Collateral.

## CONCLUSION

42. Approval of the use of the Cash Collateral to pay accrued payroll and employee expense reimbursement obligations in accordance with the Wage Motion and approval of the use of Cash Collateral according to the Interim Budget are necessary upon a preliminary hearing to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing. Final approval of the use of the Cash Collateral upon final hearing is necessary to preserve the Debtors' ability to avail themselves of the protection of chapter 11 and to preserve the value of their estates for creditors.

43. The adequate protection proposed by the Debtors is fair and reasonable and protects the Lenders' interests in the Collateral while allowing the Debtors to fund their activities by using the Cash Collateral. Authorizing the Debtors to use the Cash Collateral and provide adequate protection as set forth herein is warranted under §§ 361 and 363 of the Bankruptcy Code and is in the best interests of the Debtors, their estates and creditors, and all parties in interest.

WHEREFORE, the Debtors respectfully request that this Court enter an order:

a. Setting the Motion for emergency, interim hearing on August 16, 2017, in conjunction with the hearing set for Debtors' First Day Motions (*See* Case No. 17-03469-11, Doc. 15) to consider the Debtors' use of Cash Collateral to pay the Debtors' pre-petition payroll and employee expense reimbursement obligations in accordance with the Wage Motion and in accordance with the Interim Budget;

b. Upon such interim hearing, authorizing the Debtors to use the Cash Collateral to pay the Debtors' pre-petition payroll and employee expense reimbursement obligations in accordance with the Wage Motion and the Interim Budget and granting adequate protection on the terms and conditions set forth herein;

c. Setting the Motion for final hearing at the earliest practicable date after fourteen (14) days from service of the Motion;

d.  Upon such final hearing, entering a final order granting the Motion approving the use of Cash Collateral on a final basis on the terms and conditions set forth herein; and

e.  Granting such other, further or different relief as this Court deems just and appropriate.

Dated this 15th day of August, 2017.

Respectfully submitted,

/s/ R. Scott Williams
R. Scott Williams
Robert H. Adams
Frederick D. Clarke


Proposed Attorneys for Debtors
ALABAMA PARTNERS, LLC
BAMACHEX, INC.
MARYLAND LC VENTURES, LLC
MARYLAND PIZZA, INC.
PG COUNTY PARTNERS LLC
PG COUNTY PIZZA, INC.

**Of Counsel:**
**RUMBERGER, KIRK & CALDWELL, P.C.**
Renasant Place
Suite 1300
2001 Park Place North
Birmingham, AL 35203
Phone: (205) 327-5550
Facsimile: (205) 326-6786
swilliams@rumberger.com
fclarke@rumberger.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th Day of August, 2017, the foregoing was served by depositing same in the United States Mail, first class, postage prepaid on the Notice Parties as indicated on the list attached hereto.

/s/ R. Scott Williams
Of Counsel

12

10425382.1

# Exhibit A

# BamaChex, Inc. / Alabama Partners LLC
*Monthly Budget*

| | August | September | October |
|---|---:|---:|---:|
| **Income** | | | |
| 43800 · Net Sales | $ 507,712.11 | $ 507,712.11 | $ 507,712.11 |
| **Total Income** | $ 507,712.11 | $ 507,712.11 | $ 507,712.11 |
| **Cost of Goods Sold** | | | |
| 50000 · Food | $ 151,487.69 | $ 151,487.69 | $ 151,487.69 |
| 52100 · Paper | $ 12,318.06 | $ 12,318.06 | $ 12,318.06 |
| 54000 · Labor and Benefits | | | |
|     54010 · *Management* | $ *40,829.00* | $ *40,829.00* | $ *40,829.00* |
|     54011 · *Direct Labor* | $ *108,659.54* | $ *108,659.54* | $ *108,659.54* |
|     54012 · *Payroll Taxes* | $ *16,717.39* | $ *16,717.39* | $ *16,717.39* |
|     54013 · *Employee Insurance* | $ *277.52* | $ *277.52* | $ *277.52* |
| Total 54000 · Labor and Benefits | $ 166,483.44 | $ 166,483.44 | $ 166,483.44 |
| **Total COGS** | $ 330,289.19 | $ 330,289.19 | $ 330,289.19 |
| **Gross Profit** | $ 177,422.92 | $ 177,422.92 | $ 177,422.92 |
| **Expense** | | | |
| 60000 · Advertising and Promotion | $ 11,352.72 | $ 11,352.72 | $ 11,352.72 |
| 60100 · Royalties | $ - | $ - | $ - |
| 60200 · Automobile Expense | | | |
| 60400 · Bank Service Charges | $ 9,306.05 | $ 9,306.05 | $ 9,306.05 |
| 61000 · Business Licenses and Permits | $ 1,273.57 | $ 1,273.57 | $ 1,273.57 |
| 61300 · Cash Over and Short | $ 765.17 | $ 765.17 | $ 765.17 |
| 63100 · Supplies | $ 2,888.27 | $ 2,888.27 | $ 2,888.27 |
| 63300 · Insurance Expense | | | |
|     63310 · *General Liability Insurance* | $ *3,459.00* | $ *3,459.00* | $ *3,459.00* |
|     63360 · *Worker's Compensation* | $ *1,296.63* | $ *1,296.63* | $ *1,296.63* |
| Total 63300 · Insurance Expense | $ 4,755.63 | $ 4,755.63 | $ 4,755.63 |
| 64700 · Miscellaneous Expense | $ 905.64 | $ 905.64 | $ 905.64 |
| 64900 · Office Supplies | $ 124.80 | $ 124.80 | $ 124.80 |
| 66000 · Payroll Expenses | | | |
| 66600 · Printing and Reproduction | $ 177.99 | $ 177.99 | $ 177.99 |
| 66700 · Professional Fees | $ - | $ - | $ - |
| 67100 · Rent Expense | $ 38,939.31 | $ 38,939.31 | $ 38,939.31 |
| 67200 · Repairs and Maintenance | $ 15,231.36 | $ 15,231.36 | $ 15,231.36 |
| 67300 · Contract Services | $ 8,404.21 | $ 8,404.21 | $ 8,404.21 |
| 68000 · Taxes - Property | $ - | $ - | $ - |
| 68100 · Telephone Expense | $ 3,467.02 | $ 3,467.02 | $ 3,467.02 |
| 68600 · Utilities | | | |
|     68610 · *Electricity* | $ *22,568.49* | $ *22,568.49* | $ *22,568.49* |
|     68620 · *Gas* | $ *2,520.40* | $ *2,520.40* | $ *2,520.40* |
|     68630 · *Water and Sewer* | $ *4,565.60* | $ *4,565.60* | $ *4,565.60* |
|     68640 · *Trash* | $ *2,852.21* | $ *2,852.21* | $ *2,852.21* |
| Total 68600 · Utilities | $ 32,506.69 | $ 32,506.69 | $ 32,506.69 |
| **Total Expense** | $ 130,098.42 | $ 130,098.42 | $ 130,098.42 |
| **Net Ordinary Income** | $ 47,324.50 | $ 47,324.50 | $ 47,324.50 |

# Exhibit B

# PG County Pizza LLC / PG County Ventures LLC
*Monthly Budget*

| Ordinary Income/Expense | August | | September | | October | |
|---|---:|---:|---:|---:|---:|---:|
| **Income** | | | | | | |
| 40000 · SALES - CARRYOUT | $ 138,646.01 | | $ 138,646.01 | | $ 138,646.01 | |
| 40101 · SALES - BREAD | $ 15,450.84 | | $ 15,450.84 | | $ 15,450.84 | |
| 40102 · SALES - WINGS | $ 13,826.15 | | $ 13,826.15 | | $ 13,826.15 | |
| 40104 · SALES - BEVERAGES | $ 9,072.08 | | $ 9,072.08 | | $ 9,072.08 | |
| **Total Income** | $ 176,995.08 | | $ 176,995.08 | | $ 176,995.08 | |
| **Cost of Goods Sold** | | | | | | |
| 50000 · MEAT | $ 6,781.97 | 3.83% | $ 6,781.97 | 3.83% | $ 6,781.97 | 3.83% |
| 50101 · TOPPINGS | $ 4,536.97 | 2.56% | $ 4,536.97 | 2.56% | $ 4,536.97 | 2.56% |
| 50102 · CHEESE | $ 25,183.16 | 14.23% | $ 25,183.16 | 14.23% | $ 25,183.16 | 14.23% |
| 50103 · DAIRY | $ 547.15 | 0.31% | $ 547.15 | 0.31% | $ 547.15 | 0.31% |
| 50104 · SOFT DRINKS | $ 4,762.32 | 2.69% | $ 4,762.32 | 2.69% | $ 4,762.32 | 2.69% |
| 50105 · DOUGH | $ 8,449.22 | 4.77% | $ 8,449.22 | 4.77% | $ 8,449.22 | 4.77% |
| 50107 · DESSERT | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| 50108 · WINGS | $ 5,569.72 | 3.15% | $ 5,569.72 | 3.15% | $ 5,569.72 | 3.15% |
| 50109 · OTHER | $ 1,386.66 | 0.78% | $ 1,386.66 | 0.78% | $ 1,386.66 | 0.78% |
| 50200 · PAPER COSTS | $ 8,846.70 | 5.00% | $ 8,846.70 | 5.00% | $ 8,846.70 | 5.00% |
| 51000 · Labor Cost | | | | | | |
|    51100 · Labor - Asst Manager | *$ 10,089.10* | *5.70%* | *$ 10,089.10* | *5.70%* | *$ 10,089.10* | *5.70%* |
|    51101 · Labor - Crew | *$ 30,939.73* | *17.48%* | *$ 30,939.73* | *17.48%* | *$ 30,939.73* | *17.48%* |
|    51102 · Labor - Manager | *$ 5,350.35* | *3.02%* | *$ 5,350.35* | *3.02%* | *$ 5,350.35* | *3.02%* |
| Total 51000 · Labor Cost | $ 46,379.18 | 26.20% | $ 46,379.18 | 26.20% | $ 46,379.18 | 26.20% |
| **Total COGS** | $ 112,443.05 | 63.53% | $ 112,443.05 | 63.53% | $ 112,443.05 | 63.53% |
| **Gross Profit** | $ 64,552.03 | 36.47% | $ 64,552.03 | 36.47% | $ 64,552.03 | 36.47% |
| **Expense** | | | | | | |
| 50110 · SALAD | $ - | | $ - | | $ - | |
| 50128 · FUEL SURCHARGE(BLUE LINE) | $ 164.88 | 0.09% | $ 164.88 | 0.09% | $ 164.88 | 0.09% |
| 60130 · ADV - CAESAR FUND | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| 66000 · Payroll Expenses | | | | | | |
|    66200 · Payroll Taxes FUTA | *$ 276.50* | *0.16%* | *$ 276.50* | *0.16%* | *$ 276.50* | *0.16%* |
|    66300 · Payroll Taxes - SUTA | *$ 994.48* | *0.56%* | *$ 994.48* | *0.56%* | *$ 994.48* | *0.56%* |
|    66400 · Payroll Taxes - FiCA/Mediare | *$ 3,656.81* | *2.07%* | *$ 3,656.81* | *2.07%* | *$ 3,656.81* | *2.07%* |
|    66000 · Payroll Expenses - Other | *$ 1,422.06* | *0.80%* | *$ 1,422.06* | *0.80%* | *$ 1,422.06* | *0.80%* |
| Total 66000 · Payroll Expenses | $ 6,349.85 | 3.59% | $ 6,349.85 | 3.59% | $ 6,349.85 | 3.59% |
| 66600 · Printing and Reproduction | $ 6,349.85 | 3.59% | $ 6,349.85 | 3.59% | $ 6,349.85 | 3.59% |
| 66700 · Professional Fees | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| 68500 · Uniforms | $ 219.22 | 0.12% | $ 219.22 | 2.17% | $ 219.22 | 0.12% |
| 71100 · STORE RENT | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| 71101 · RENT - CAM | $ 14,504.79 | 8.20% | $ 14,504.79 | 8.20% | $ 14,504.79 | 8.20% |
| 71102 · PROPERTY TAXES | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| 73100 · TELEPHONE | $ 1,527.27 | 0.86% | $ 1,527.27 | 0.86% | $ 1,527.27 | 0.86% |
| 73101 · ELECTRIC | $ 1,093.53 | 3.53% | $ 1,093.53 | 0.62% | $ 1,093.53 | 3.53% |
| 73102 · GAS | $ 3,719.34 | 2.10% | $ 3,719.34 | 2.10% | $ 3,719.34 | 2.10% |
| 73105 · TRASH | $ 2,586.62 | 1.46% | $ 2,586.62 | 1.46% | $ 2,586.62 | 1.46% |
| 74100 · REPAIS/MAIN. - BLG | $ 536.24 | 0.30% | $ 536.24 | 0.30% | $ 536.24 | 0.30% |
| 74101 · REPAIRS/MAIN. - EQUIP | $ 137.01 | 0.08% | $ 137.01 | 0.08% | $ 137.01 | 0.08% |
| 75100 · WORKER'S COMPENSATION | $ 2,060.57 | 1.16% | $ 2,060.57 | 1.16% | $ 2,060.57 | 1.16% |
| 75101 · ROYALTIES | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| 75103 · BANK SERVICE CHARGE | $ 3,539.90 | 2.00% | $ 3,539.90 | 2.00% | $ 3,539.90 | 2.00% |
| 75106 · RENT-EQUIPMENT | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| 75107 · INSURANCE (P & C) | $ 3,042.44 | 1.72% | $ 3,042.44 | 1.72% | $ 3,042.44 | 1.72% |
| 75111 · CONTRACT SERVICES | $ 632.04 | 0.36% | $ 632.04 | 0.36% | $ 632.04 | 0.36% |
| 75112 · MISCELLANEOUS | $ 3,649.56 | 2.06% | $ 3,649.56 | 2.06% | $ 3,649.56 | 2.06% |
| 75113 · AUTO/GAS REIMBURSEMENTS | $ 10.96 | 0.01% | $ 10.96 | 0.01% | $ 10.96 | 0.01% |
| 75114 · CASH (OVER)/SHORT | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| 75115 · CREDIT CARD FEES | $ 397.97 | 0.22% | $ 397.97 | 0.22% | $ 397.97 | 0.22% |
| 75116 · SUPPLIES - CLEANING | $ 1,283.33 | 0.73% | $ 1,283.33 | 0.73% | $ 1,283.33 | 0.73% |
| 75117 · SUPPLIES - OPERATING | $ 813.79 | 0.46% | $ 813.79 | 0.46% | $ 813.79 | 0.46% |
| 75121 · INTEREST EXPENSEE | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| **Total Expense** | $ 52,619.18 | 29.73% | $ 52,619.18 | 29.73% | $ 52,619.18 | 29.73% |
| **Net Ordinary Income** | $ 11,932.86 | 6.74% | $ 11,932.86 | 6.74% | $ 11,932.86 | 6.74% |

# Maryland Pizza Inc. / Maryland LC Ventures LLC
## Monthly Budget

| Ordinary Income/Expense | August | | September | | October | |
|---|---:|---:|---:|---:|---:|---:|
| **Income** | | | | | | |
|   40000 · SALES - CARRYOUT | $ 97,118.75 | | $ 36,218.63 | | $ 36,218.63 | |
|   40101 · SALES - BREAD | $ 11,001.49 | | $ 3,556.18 | | $ 3,556.18 | |
|   40102 · SALES - WINGS | $ 12,142.14 | | $ 4,458.17 | | $ 4,458.17 | |
|   40104 · SALES - BEVERAGES | $ 6,264.90 | | $ 2,264.64 | | $ 2,264.64 | |
| **Total Income** | $ 126,527.29 | | $ 46,497.63 | | $ 46,497.63 | |
| **Cost of Goods Sold** | | | | | | |
|   50000 · MEAT | $ 4,776.84 | 3.78% | $ 1,754.28 | 3.77% | $ 1,754.28 | 3.77% |
|   50101 · TOPPINGS | $ 3,035.86 | 2.40% | $ 1,264.42 | 2.72% | $ 1,264.42 | 2.72% |
|   50102 · CHEESE | $ 17,317.55 | 13.69% | $ 6,086.66 | 13.09% | $ 6,086.66 | 13.09% |
|   50103 · DAIRY | $ 392.23 | 0.31% | $ 144.14 | 0.31% | $ 144.14 | 0.31% |
|   50104 · SOFT DRINKS | $ 3,474.70 | 2.75% | $ 1,248.49 | 2.69% | $ 1,248.49 | 2.69% |
|   50105 · DOUGH | $ 5,234.54 | 4.14% | $ 2,240.51 | 4.82% | $ 2,240.51 | 4.82% |
|   50107 · DESSERT | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
|   50108 · WINGS | $ 3,815.78 | 3.02% | $ 1,315.58 | 2.83% | $ 1,315.58 | 2.83% |
|   50109 · OTHER | $ 932.23 | 0.74% | $ 202.10 | 0.43% | $ 202.10 | 0.43% |
|   50110 · SALAD | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
|   50200 · PAPER COSTS | $ 6,215.01 | 4.91% | $ 2,180.34 | 4.69% | $ 2,180.34 | 4.69% |
|   51000 · Labor Cost | | | | | | |
|     51100 · Labor - Asst Manager | $ 10,768.89 | 8.51% | $ 5,360.53 | 11.53% | $ 5,360.53 | 11.53% |
|     51101 · Labor - Crew | $ 21,661.19 | 17.12% | $ 7,121.02 | 15.31% | $ 7,121.02 | 15.31% |
|     51102 · Labor - Manager | $ 9,348.44 | 7.39% | $ 2,529.46 | 5.44% | $ 2,529.46 | 5.44% |
|   Total 51000 · Labor Cost | $ 41,778.52 | 33.02% | $ 15,011.01 | 32.28% | $ 15,011.01 | 32.28% |
| **Total COGS** | $ 86,973.26 | 68.74% | $ 31,447.53 | 67.63% | $ 31,447.53 | 67.63% |
| **Gross Profit** | $ 39,554.04 | 31.26% | $ 15,050.09 | 32.37% | $ 15,050.09 | 32.37% |
| **Expense** | | | | | | |
|   50128 · FUEL SURCHARGE(BLUE LINE) | $ 57.24 | 0.05% | $ 22.18 | 0.05% | $ 22.18 | 0.05% |
|   60130 · ADV - CAESAR FUND | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
|   62600 · Equipment Rental | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
|   63300 · Insurance Expense | | | | | | |
|     63360 · Worker's Compensation | $ 386.55 | 0.31% | $ 193.27 | 0.42% | $ 193.27 | 0.42% |
|     63300 · Insurance Expense - Other | $ 386.55 | 0.31% | $ - | 0.00% | $ - | 0.00% |
|   Total 63300 · Insurance Expense | $ 773.10 | 0.61% | $ 193.27 | 0.42% | $ 193.27 | 0.42% |
|   63400 · Interest Expense | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
|   66000 · Payroll Expenses | | | | | | |
|     66200 · Payroll Taxes FUTA | $ 238.02 | 0.19% | $ 84.68 | 0.18% | $ 84.68 | 0.18% |
|     66300 · Payroll Taxes - SUTA | $ 1,088.99 | 0.86% | $ 388.34 | 0.84% | $ 388.34 | 0.84% |
|     66400 · Payroll Taxes - FICA/Mediare | $ 3,278.01 | 2.59% | $ 1,230.24 | 2.65% | $ 1,230.24 | 2.65% |
|     66000 · Payroll Expenses - Other | $ 1,090.05 | 0.86% | $ 1,070.64 | 2.30% | $ 1,070.64 | 2.30% |
|   Total 66000 · Payroll Expenses | $ 5,695.08 | 4.50% | $ 2,773.90 | 5.97% | $ 2,773.90 | 5.97% |
|   68500 · Uniforms | | | | | | |
|   71100 · STORE RENT | $ 17,123.21 | 13.53% | $ 4,932.43 | 10.61% | $ 4,932.43 | 10.61% |
|   71101 · RENT - CAM | $ 1,500.90 | 1.19% | $ - | 0.00% | $ - | 0.00% |
|   71102 · PROPERTY TAXES | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
|   73100 · TELEPHONE | $ 672.44 | 0.53% | $ 123.01 | 0.26% | $ 123.01 | 0.26% |
|   73101 · ELECTRIC | $ 2,660.55 | 2.10% | $ 895.69 | 1.93% | $ 895.69 | 1.93% |
|   73102 · GAS | $ 2,320.53 | 1.83% | $ 795.38 | 1.71% | $ 795.38 | 1.71% |
|   73105 · TRASH | $ 885.16 | 0.70% | $ 299.63 | 0.64% | $ 299.63 | 0.64% |
|   74100 · REPAIS/MAIN. - BLG | $ 171.27 | 0.14% | $ - | 0.00% | $ - | 0.00% |
|   75101 · ROYALTIES | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
|   75103 · BANK SERVICE CHARGE | $ 621.14 | 0.49% | $ 155.29 | 0.33% | $ 155.29 | 0.33% |
|   75107 · INSURANCE (P & C) | $ 283.92 | 0.22% | $ 221.87 | 0.48% | $ 221.87 | 0.48% |
|   75111 · CONTRACT SERVICES | $ 2,530.55 | 2.00% | $ 929.95 | 2.00% | $ 929.95 | 2.00% |
|   75112 · MISCELLANEOUS | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
|   75114 · CASH (OVER)/SHORT | $ 707.68 | 0.56% | $ 242.54 | 0.52% | $ 242.54 | 0.52% |
|   75115 · CREDIT CARD FEES | $ 877.05 | 0.69% | $ 330.20 | 0.71% | $ 330.20 | 0.71% |
|   75116 · SUPPLIES - CLEANING | $ 575.38 | 0.45% | $ 279.19 | 0.60% | $ 279.19 | 0.60% |
|   75117 · SUPPLIES - OPERATING | $ 96.82 | 0.08% | $ 42.76 | 0.09% | $ 42.76 | 0.09% |
|   75120 · TRAINING | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
|   75121 · INTEREST EXPENSEE | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| **Total Expense** | $ 37,552.01 | 29.68% | $ 12,237.29 | 26.32% | $ 12,237.29 | 26.32% |
| **Net Ordinary Income** | $ 2,002.03 | 1.58% | $ 2,812.80 | 6.05% | $ 2,812.80 | 6.05% |

# Exhibit C