# Exhibit B

## AGREEMENT OF LEASE

THIS AGREEMENT OF Lease (hereinafter the "Lease") made this _____ day of _____, 2014 by and between Maryland LC Ventures LLC, a Maryland limited liability company ("Tenant"), and Good Hope Investments, LLC, a District of Columbia limited liability company ("Landlord").

In consideration of the mutual covenants and agreements hereinafter set forth, the parties hereto, intending to be legally bound, agree as follows:

## SUMMARY OF TERMS

<u>Basic Lease Terms</u>. The following Terms shall have the following meanings in this Lease and constitute a short form summary of some of the material Terms of the Lease.

(a)     Leased Premises (sometimes referred to herein as the "Premises").: Approximately 1,499 square feet of improved real property located at 1918 14th St., SE, Washington, DC 20020, as outlined on **Exhibit A** attached hereto.

(b)     Building:  the Building containing approximately 14,600 square feet of first floor leasable space located at 1918 14th St., SE, Washington, DC 20020.

(c)     Lease Commencement Date:  See Section 2. Rent Commencement Date:  See Section 3.01.

(d)     Lease Term:  Five (5) years.

(e)     Options:  (2) five (5) year options commencing sequentially at the end of the Lease Term (the "Option and or Renewal Term(s)").

(f)     First Year Base Rent: $53,964.00.  Base Rent schedule outlined on **Exhibit B** attached hereto.

(g)     Operating Expenses (also known as Common Expenses, Common Area Expenses or CAM):  Tenant to pay its Pro Rata Share determined to be 16.45%; .

(h)     Real Estate Taxes and CAM: Tenant to pay its Pro Rata Share commencing on the Rent Commencement Date.

(i)     Address for Notices:
        To Landlord:     Good Hope Investments, LLC
                            9109 Lucky Estates Drive
                            Vienna Virginia 22182

                            With a copy to:
                            Michael J. Chamowitz, Esq.

Case 17-03469-TOM7     Doc 95-2     Filed 09/05/17     Entered 09/05/17 15:32:05     Desc
Exhibit Exhibit B     Page 2 of 44

Counsel for Landlord
118 North Alfred Street
Alexandria, Virginia 22314

To Tenant:      Maryland LC Ventures LLC
c/o Mark Williams
226 Crowne Wood Drive
Birmingham, Alabama  35244

To Guarantors      Same address as Tenant

(j)      Guarantors:      Wazir Kaisani, Pervez Kaisani and Richard Ruggiero (individual guarantees to be executed by guarantors upon execution of the Lease). Guaranties to be limited  in accordance with Subsections (w) through (y) of the Guaranty Agreement.

(k)      Assignments and Subleases:   See Section 8.20

(l)      Permitted Use:  The operation of a carry-out pizza restaurant to be known as Little Caesar's Pizza as more fully described in Section 8.01.

(m)      Security Deposit: $4,497.00.

**SECTION 1 - Leased Premises:**  Landlord does hereby lease and demise to Tenant and the Tenant hereby leases from the Landlord, upon the terms and conditions hereinafter set forth, the Leased Premises  known as Suite 102, 1918 14th St., SE, Washington, DC 20020, in the City of Washington, District of Columbia, together with the right in common with other tenants in the Building to use any parking areas, driveways, sidewalks and other site improvements and common areas on the Land not reserved exclusively to another tenant.  Landlord acknowledges and agrees that the Premises shall include not less than nineteen (19) parking spaces for Tenant's non-exclusive use, as shown on **Exhibit A.**  In the event neither of the two other tenants at the Building have opened for business to the public prior to Tenant's opening for business to the public,  Landlord will use its best efforts to provide three (3) temporary exclusive parking spaces for Tenant in the parking lot parallel to 14th Street  until such time as one of the other two tenants at the Building opens for business to the public.  This temporary parking is not guaranteed by the Landlord as the Landlord is bound by prior existing leases and such parking spaces have previously been allocated to tenants who entered into leases at the Building prior to the execution of this Lease.

**SECTION 2 - Lease Term:**

**2.01**  The Lease Term shall be for five (5) years, commencing on the Rent Commencement Date (as defined hereinbelow)  and expiring five (5) years thereafter.

**2.02**  Provided Tenant is not then in material default after notice and beyond any applicable cure period at the time it exercises its option to renew for a Renewal Term or has not committed   an uncured material default after notice and beyond any applicable cure period

2

during the Lease term, Tenant shall have the option to renew this Lease for two (2) additional Term of five (5) years each, (the Renewal Terms") and subject to the same conditions as are set forth in the Lease and the Renewal Terms, including rent obligations. Such Renewal Terms shall be conditioned by the foregoing and by the following:

A. Tenant must exercise its option to renew in writing no later than six months preceding the last day of the Lease Term, or the immediately preceding Renewal Term, as the case may be.

## SECTION 3 - RENT:

**3.01** The Rent Commencement Date ("Rent Commencement Date") shall be January 1, 2015, unless Tenant has not received its Permits pursuant to Section 6 hereof, in which case the Rent Commencement Date shall be February 1, 2015, provided that Tenant shall pay a Security Deposit upon Lease execution as set forth hereinbelow and one (1) month's prepaid rent upon possession. The prepaid rent shall be applied to the first month's rent coming due after the Rent Commencement Date. Monthly Base Rent shall increase by 10% per Renewal Term(s). Tenant shall pay during the Lease Term and the Renewal Term(s) annual Base Rent as set forth in **Exhibit B** ("Base Rent").,

**3.02** Said rental shall be payable at 9109 Lucky Estates Drive, Vienna, Virginia 22182 or at such other place as Landlord may designate in writing, and shall be due and payable, without deduction, set-offs, demand or counterclaim, (except as otherwise set forth in this Lease) in consecutive monthly installments in advance, on or before the first day of each and every month of the Lease Term and any Renewal Terms exercised by Tenant. Rent checks shall be made payable to Good Hope Investments, LLC or such other person, firm, or corporation as the Landlord may designate in writing.

**3.03** If any monthly installment is not paid within five (5) days after the date such Rent is due, it shall be deemed late and there shall be imposed a late payment charge of ten percent (10%) of the amount of such installment, which charge shall be additional rent, and shall be immediately due and payable.. In the event of such non-payment of Rent or additional rent, interest shall accrue at the rate of 1.5% per month from the date such Rent or additional rent was due to the date such Rent or additional rent is paid. Interest shall be due and payable upon demand and shall be deemed to be additional rent. All payments received shall be applied first to interest, if any, then to unpaid late charges, if any, commencing with the earliest late charge imposed, then to any installment then unpaid, and finally to the most current installment of Rent due or in the case of additional rent to the payment of such additional rent. No express designation of any payment by the Tenant shall vary the application of payment as aforesaid. Nothing herein shall be deemed to limit or supersede the remedies of Landlord as set forth in this Lease. IF ANY CHECK IS RETURNED FOR NONPAYMENT FOR ANY REASON, TENANT SHALL BE LIABLE THEREFOR AND SHALL PAY TO LANDLORD, AS ADDITIONAL RENT, A RETURNED CHECK PROCESSING FEE OF $150.00 PLUS ANY CHARGES ASSESSED AGAINST LANDLORD BY ITS DEPOSITORY BANK. Returned check fees and charges shall be due and payable five (5) days following the date of written notice and demand to Tenant by Landlord.

3

**SECTION 4 - SECURITY DEPOSIT:** A security deposit in the amount or Four Thousand Four Hundred Ninety Seven ($4,497.00) Dollars shall be paid upon Lease execution to ensure the faithful performance of the covenants of this Lease. Posting of the Security Deposit is a condition precedent to occupancy of the Premises by the Tenant. Said deposit shall be held by Landlord, without liability for interest, as security for the faithful performance by Tenant of all of the Terms, covenants, and conditions of this Lease by said Tenant to be kept and performed during the Term hereof. If at any time during the Term of this Lease any of the Rent herein reserved shall be overdue and unpaid, or any other sum payable by Tenant to Landlord hereunder shall be overdue and unpaid then Landlord may, at the option of Landlord (but Landlord shall not be required to), appropriate and apply any portion of said deposit to the payment of any such overdue rent or other sum, provided that Tenant shall have first received any notice required under this Lease and any applicable cure periods have expired.

In the event of the failure of Tenant to keep and perform any of the non-monetary Terms, covenants and conditions of this Lease to be kept and performed by Tenant, then the Landlord at its option (but only after notice and the expiration of any applicable cure period set forth in Section 9 hereof) may appropriate and apply said entire deposit, or so much thereof as may be necessary, to compensate the Landlord for loss or damage sustained or suffered by Landlord due to such breach on the part of the Tenant. Should the entire deposit, or any portion thereof, be appropriated and applied by the Landlord to the payment of overdue Rent or other sums due and payable to Landlord by Tenant hereunder, then Tenant shall, upon the written demand of Landlord, forthwith remit to Landlord a sufficient amount to restore said deposit to the original sum deposited, and Tenant's failure to do so within ten (10) days after receipt of such demand shall constitute a breach of this Lease. Should Tenant comply with all of said Terms, covenants and conditions and promptly pay all of the rental herein provided for as it falls due, and all other sums payable by Tenant to Landlord hereunder, the said deposit shall be returned to Tenant at the end of the Term of this Lease, or upon the earlier Termination of this Lease, following a reasonable period (not to exceed thirty (30) days) for Landlord's inspection of the Leased Premises.

Landlord, in the event of the sale of the Building, may deliver the funds deposited by Tenant to the Purchaser of Landlord's interest in the Premises and thereupon Landlord shall be discharged from any further liability with respect to such deposit.

**SECTION 5 - POSSESSION:** Subject to Section 9.07, provided that Tenant is in compliance with the terms of this Lease, (including execution of the Lease, the payment of the Security Deposit and the first month's Rent and delivery of an insurance certificate(s) for personal liability insurance in the amount required by this Lease), Tenant shall be entitled to possession on or before October 1, 2014

When possession of the Leased Premises is delivered to Tenant, then the Landlord and Tenant shall jointly execute a Certificate setting forth the Lease Commencement Date, the Rent Commencement Date, the expiration of the Term of this Lease and such additional information as the Landlord may reasonably require. Such Certificate shall be attached hereto as **Exhibit C**. If permission is given to Tenant to enter into possession of the Leased Premises or to occupy the

4

Leased Premises prior to the satisfaction of the conditions set forth in this Section, Tenant covenants and agrees that such "early" occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this Lease, except for the payment of Rent, Common Expenses, Taxes and Insurance (as hereinafter defined). Tenant shall comply with all laws, ordinances, rules, orders and regulations of all government authorities and of the Board of Fire Underwriters (and any successor thereto) at any time promulgated and in force, attributable to the use or manner of use by Tenant of the Leased Premises, or any part thereof.

**SECTION 6 - LICENSES AND PERMITS:** Tenant shall be solely responsible to obtain any and all permits approvals, variances and consents necessary (or, in Tenant's sole discretion, desirable) to perform its construction work on the Premises, erect its signage and ready the Premises for the conduct of its business for the Permitted Use, including, but not limited to, business licenses, health department certificates and/or certificates of occupancy (to the extent not the obligation of Landlord) ("Permits"), This Lease is contingent upon Tenant's ability to obtain Permits by January 1, 2015. If Tenant has not received its Permits by December 15, 2014, Tenant shall so notify Landlord in writing. If Tenant cannot obtain its Permits by January 1, 2015, Tenant may ,upon ten (10) days written notice to Landlord either terminate this Lease or obtain an extension until February 1, 2015. If Tenant has not obtained said Permits by February 1, 2015, Tenant may upon ten (10) days written notice, terminate this Lease. Landlord will cooperate with Tenant (at no material out of pocket costs) in obtaining such Permits as Tenant may require, including the execution of any applicable applications therefore. Tenant shall not perform any structural work in the Premises until it has obtained the Permits. However, upon possession Tenant may perform general cleaning, removal of debris, and other non-structural construction activities necessary to prepare its Plans and ready the Leased Premises for construction. The Tenant shall, at its own cost and expense, procure each and every Permit, license, or other authorization, (including but not limited to any certificate of occupancy, business license and liquor license, if desired) and any renewals, extensions or continuances of the same required in connection with the lawful and proper use of the Leased Premises. Tenant agrees to make prompt application for the issuance of Tenant's Franchisor's required prototype "Little Caesar" architectural plans and shall, immediately upon its receipt of the same, submit them to any required applicable governmental authority for approval and thereafter to diligently and in good faith prosecute such applications at Tenant's sole cost and expense.

## SECTION 7 - AGREEMENTS AND COVENANTS OF LANDLORD:

Landlord agrees as follows:

**7.01** To provide Tenant with quiet enjoyment of the Leased Premises during the Lease Term, or for so long as Tenant shall pay the Rent aforesaid and carry out all other obligations that herein are made binding upon the Tenant. In connection therewith, Landlord hereby represents to Tenant that to best of Landlord's knowledge and belief:

(a) Landlord is fully vested with fee simple title to the Leased Premises and the Building and the land upon which the same are located, and has the full right and authority to enter into this Lease;

(b) There are no encumbrances, liens, agreements, or covenants in effect applicable to the Leased Premises or the Building, or the land upon which the same are located

5

that are inconsistent with this Lease, or that materially impair Tenant's rights and remedies or increase Tenant's obligations hereunder, including the Permitted Use of the Premises, and Landlord will not enter into any of the same hereafter;

(c) There is no pending or threatened condemnation action or agreement in lieu which will or may affect the Leased Premises or the Building in any respect whatsoever;

(d) To the actual knowledge of the Landlord, neither the Building or the land upon which the Building is located is currently or has previously been used as a landfill or dump for garbage;

(e) There is no action, suit or proceeding, pending or threatened, against or affecting the Premises or the Building;

(f) Landlord has no knowledge of any fact, action or proceeding, whether actual, pending or threatened, which could result in the modification or termination of the present zoning classification of the Leased Premises, or the termination of full, free and adequate access to and from the Leased Premises and the adjacent public highways and roads;

(g) No existing restrictions, building and zoning ordinances or other law or requirements of any governmental authority prevent the use of the Leased Premises for the Permitted Use and

(h) No joinder or approval of another person or entity is required with respect to Landlord's rights to enter into this Lease.

**7.02** To furnish only such services and facilities as may be set forth in the Lease,

**7.03** To perform such Landlord Work as is set forth in Landlord's Work Letter, **Exhibit D** and as otherwise required under this Lease.

**7.04** To warrant that the roof will be free of leaks and watertight on the date Tenant opens for business (provided that the same shall be in addition to and not by limitation of other obligations of Landlord hereunder.).

**7.05** To maintain, repair and or replace the roof (including roof membrane, gutters and downspouts) structural items, foundation, exterior and interior structural walls , provided that, as between Landlord and Tenant, Landlord shall not be required to make any repairs necessitated by reason of (a) any act or omission of Tenant, its employees, agents, licensees, invitees, or any person or entity claiming under Tenant, (b) any alteration, addition or improvement made by Tenant or any person or entity claiming under Tenant; and further provided that, if Landlord does make the repairs which are the obligation of Tenant pursuant to subsections (a) and (b) hereof, Landlord shall give Tenant written notice and opportunity to cure as provided in Section 9 hereof before Landlord makes said repairs except in the event of an emergency, which shall be defined as a situation where failure to take or delay action would result in immediate or material damage to the Leased Premises or Building or person(s) occupying the same.

**7.06** To make, at its sole cost and expense, any alterations, additions or improvements to or in the Leased Premises that may be required because of changes in laws, rules, regulations, ordinances, restrictions and the like, hereafter enacted or promulgated by federal, state or local authorities; provided, however, that Landlord shall not be required to make any such alterations, additions or improvements required by reason of Tenant's use of, or activity in, the Leased

6

Premises. Other than the Landlord obligations set forth in Section 7 of this Lease and the Landlord Work letter attached, the Leased Premises are leased to Tenant in "As Is" condition.

**7.07** to provide meters and submeters as agreed to by the parties.

**7.08** Tenant shall have the right to install exterior signage on the Premises so long as (a) such signage complies with applicable law; (b) Tenant does not interfere with the structural integrity of the Building and (c) such signage complies with the standard signage program of Little Caesar Enterprises, Inc. ("Tenant's Franchisor") In all other cases, Landlord's consent is required prior to the installation of signage, provided that Landlord shall have no approval rights over Tenant's interior signage (even if visible from the exterior of the Leased Premises) or Tenant's window signage. Where Landlord's consent is required, it shall not be unreasonably withheld, conditioned or delayed. It shall be unreasonable for Landlord to withhold its consent to any signage which depicts Tenant's Franchisor's national trade dress, including, but not limited to, coloring, trade dress or logos, a sample of which is attached as **Exhibit F**. In addition, Landlord hereby approves the same irrespective of any signage criteria of Landlord.

Landlord also agrees to permit Tenant, at Tenant's expense to install temporary and tasteful, in Landlord's discretion, "Coming Soon" and "Grand Opening" signage on the storefront of the Leased Premises for a period of 30 days before and after Tenant opens for business to the public.

Tenant may use the sidewalks and Common Areas in front of the Leased Premises (but not the parking lot) for reasonable promotional purposes, including, but not limited to, the display of "shakerboards" and movement across the said areas by persons supporting said boards, provided that the same shall be conducted in compliance with any applicable governmental ordinances or codes

**7.09** To warrant that no portion of the Building and land will be leased to an "adult" enterprise, including without limitation, adult bookstores or entertainment facilities offering pornography or live nudity, a billiard hall, cocktail lounge or bar, or any other business that in the Landlord's reasonable discretion would tarnish the reputation or character of the Building.

**7.10** To construct a City approved trash enclosure large enough to accommodate a Tenant supplied commercial waste receptacle approved by Landlord.

**7.11** Landlord shall ensure that the Building (as well as any adjacent or contiguous property now or hereafter owned or controlled directly or indirectly by Landlord, its successors, assigns or affiliates) is not used for the sale or offering for sale (including, but not limited to so called carry-out and delivery,) of pizza, "Crazy Bread" and Italian cheese bread and related sauces (sometimes collectively referred to herein as Tenant's "Exclusive"). Notwithstanding the foregoing, the current tenant "7-11" (but not any successors or assigns thereto except permitted assigns pursuant to its lease) may sell pizza and any other items which 7-11 elects to sell to the public without violating this Section 7.11. In addition, Tenant's Exclusive granted hereunder shall apply only to tenants of the Building not currently under lease by the Landlord and shall apply only during the Term (including Renewal Terms) of Tenant's Lease.

7

**SECTION 8 - AGREEMENTS AND COVENANTS OF TENANT:** Tenant hereby covenants, warrants, and agrees as follows:

**8.01** To not use the Leased Premises for any disorderly or unlawful purpose, and only for conducting lawful business therein. Tenant shall use and occupy the Premises solely for the Permitted Use, provided that Tenant, subject to the Exclusives granted to "7-11" , may sell any food and beverage items approved by Tenant's Franchisor or regularly sold at a "Little Caesar" restaurants, including, but not limited to, pizza, Italian specialties, sandwiches, dessert items, chicken wings, pasta, salads, sandwiches, bread products (including, but not limited to "Crazy Bread" and Italian cheese bread) and beverages.(but with respect to beverages, only in compliance of the limits set forth hereinbelow). Tenant may not use or occupy the Premises for any other purpose whatsoever without first obtaining Landlord's written approval, which approval shall not be unreasonably withheld, conditioned or delayed.. Tenant and or its successors and assigns are, however, specifically prohibited from operating a massage parlor or "health salon" of any description, a sexually oriented business of any description or a crystal, palmist, spiritual or psychic reading studio. Additionally, Tenant may not use the Leased Premises in violation of any exclusive use granted to any other Tenant. A list of said Tenants and their exclusive rights is attached as **Exhibit E.** Notwithstanding 7-11's Exclusive and the foregoing, Tenant may sell beverages  in 1 and 2 liter size but may not sell  alcoholic beverages for off premises consumption without Landlord's consent.

**8.02** To obtain at Tenant's expense, any and all permits, licenses, authorizations and the like, required to permit Tenant to use the Leased Premises for the Permitted Use as more fully and to the extent set forth in Section 6 hereof, to assume the risk that any governmental authority may fail to grant Tenant any necessary permits, licenses or authorizations.

**8.03** Subject to their inclusion as Operating Costs and subject to Landlord's obligations set forth in Section 10 hereof, Tenant shall have the responsibility to keep the area directly in front of the  Leased Premises cleaned and free from litter and rubbish and to keep the windows and signs clean, and in good order; not to store any material or trash of any nature whatsoever on the exterior of the Leased Premises except in authorized receptacles in an area to be determined by Landlord to the rear of the Building as shown on **Exhibit A;**

**8.04** Tenant's garbage and trash shall not be permitted to accumulate in or about the Leased Premises but shall be disposed of  at Tenant's sole cost and expense at least five (5) days a week.  Proper and adequate receptacles for collection of garbage and trash shall be maintained by Tenant so that offensive odors shall not be permitted to exude therefrom at any time. To the extent not furnished by Landlord pursuant to Section 10 hereof, Tenant also covenants to contract with a commercial trash collection service and to pay all trash collection fees so long as the same are competitively priced.  A copy of the trash collection service contract shall be delivered to Landlord  upon written request but no sooner than seven (7) days after Tenant assumes possession of the Leased Premises. In the event Landlord undertakes to contract for trash collection services, Tenant agrees to reimburse Landlord as additional rent its pro rata share of the trash collection services pursuant to Section 10 hereof, provided further only to the extent the same is competitively priced.

8

**8.05** An exterminating service shall be employed and a contract for extermination of termites, harmful bugs and rodents shall be procured and maintained at all times by the Tenant, so that the Leased Premises shall be protected against and free of pests and vermin, consistent with the extermination service available for food service facilities in the greater Washington, D.C. area, A copy of the contract for extermination shall be delivered to Landlord upon written request but no sooner than seven (7) days after Tenant assumes possession of the Leased Premises. The exterminating service to be performed shall be performed not less frequently than once per month.

**8.06** The Tenant shall provide, at its own cost and expense, adequate janitorial and cleaning services so that the Leased Premises, including but not limited to any and all restroom facilities therein which shall at all times be kept clean. In addition, Tenant agrees to at all times clean any debris, spillage or litter left by its customers but only to the extent that they are directly on or in front of the entrance to the Leased Premises.

**8.07** Tenant will not cause or permit objectionable odors to emanate or be dispelled from the Leased Premises. All odors emanating from cooking and or baking within the Leased Premises shall be carried above the highest roof line of the Building by means of pipes or vents. Objectionable odors shall be defined under a reasonable person standard, provided that Landlord acknowledges that food and/or cooking odors emanating from the Leased Premises by virtue of Tenants' Permitted Use shall not be deemed a violation of this Section 8.07.

**8.08** To refrain from keeping any explosive material in the Leased Premises other than products used or resulting from Tenant's use of the Premises for the Permitted Use (such as normal cleaning solvents used in accordance with the manufacturer's direction) , or from doing any act or thing which may make void or voidable Landlord's insurance against fire or casualty, and to conform to all rules and regulations from time to time established by any pertinent insurance rating organization.

**8.09** To the extent possible, to maintain all utilities used at the Leased Premises in its own name and pay directly all utility charges and deposits; and to promptly reimburse Landlord, as additional rent, for all utility charges due and payable by Tenant which are paid by Landlord. Tenant paid utilities shall include, but not be limited to, electricity, gas, fuel, water and sewer, condenser and telephone and cable services used in or about the Leased Premises by Tenant. Tenant agrees to reimburse to Landlord charges for domestic water and sewer charges as part of Common Expenses unless such services can be separately metered to Tenant. Tenant further agrees to pay Tenant's Pro Rata Share of Common Expenses which include utilities for the common areas.

**8.10** Notwithstanding anything in Section 7 above to the contrary and to the extent not covered by insurance, to pay the cost of any repairs to the exterior walls, foundation or roof or any other structural portions of the Leased Premises but only if and to the extent such repairs were made necessary by any act or neglect of the Tenant or of its agents, employees, licensees, invitees or any person or entity claiming under the Tenant. Should Tenant fail to make such repairs after notice and within the cure period set forth in Section 9 hereof, Landlord may make

9

such repairs and charge the Tenant for such repairs as an item of additional rent, due upon demand. This Section shall not affect any waiver of subrogation by any insurance carrier.

8.11 To pay all court costs, legal fees (whether suit is filed or not) and other expenses incurred by Landlord in seeking the collection of Rent or additional rent or compliance by Tenant with the terms of this Lease, the curing of any default on the part of Tenant in the performance of any of its obligations hereunder and/or the obtaining of possession of the Leased Premises from Tenant following default or breach by Tenant.

8.12 To provide Guarantors as set forth in Section (j) of the Summary of Terms set forth hereinabove to guarantee the payment of all monetary obligations required by the Lease and Guaranty and to guarantee Tenant's compliance with its terms, in accordance with the Guaranty attached hereto as **Exhibit H**.

8.13 Except for the Landlord's obligations described elsewhere in this Lease, Tenant agrees to make, at Tenant's expense, all repairs and replacements and to perform all maintenance becoming necessary in or about the Leased Premises during the Lease Term and any Option and or Renewal Term(s), including specifically, but not being limited to, all maintenance and repairs and replacements necessary to any doors and door jambs, windows and window casing and sills, both inside and outside, all plumbing and sprinklers if any currently exist or are subsequently installed by or on behalf of Tenant (but only to the extent servicing the Leased Premises exclusively), and the electrical, heating, ventilating and air conditioning equipment in or about the Leased Premises and exclusively serving the same. Subject to Landlord's obligations under Section 10 hereof, Tenant specifically agrees to keep the exterior area directly in front of the entrance to the Leased Premises, free of trash, litter and debris (but only to the extent required by Sections 8), replace all doors, windows, locks, trimmings, glass, and plate glass broken during the tenancy, regardless of the cause of the breakage, unstop all plumbing fixtures clogged for any reason, and repair any and all broken or cracked pipes within the Leased Premises but not broken or cracked pipes located beyond the boundaries of the Leased Premises unless the damage to such pipes is caused by Tenant

8.14 To make no claim against Landlord and to assume the responsibility of defending, at Tenant's expense, any claim which shall be made against Landlord by any agent, employee, licensee or invitee of Tenant or by others claiming the right to be in or about the Leased Premises through or under Tenant, for any injury, loss or damage to person or property occurring upon the Leased Premises or the approaches thereto, from any cause other than the gross negligence of Landlord; to save Landlord harmless and indemnified from all loss, damage, liability or expense incurred, suffered, or claimed by reason of Tenant's neglect or use of the Leased Premises, or the approaches thereto.

8.15 To obtain and maintain through the Lease Term, at its expense, general liability insurance protecting both Landlord and Tenant, as named insureds, with limits required by Tenant's Franchisor and to furnish Landlord with satisfactory evidence thereof prior to possession of the Leased Premises by Tenant and subsequently, upon Landlord's request. All rights of subrogation against the Landlord, shall be waived in such policy. In the event Landlord

10

permits the sale of alcoholic beverages from the Leased Premises, Tenant agrees to provide Dram Shop insurance coverage in an amount determined by Landlord.

**8.16** Tenant may make, at the commencement of the Lease Term, or at any time during the Lease Term, without Landlord's approval, non-structural additions, improvements or alterations to the Leased Premises, including removing existing improvements which Tenant deems necessary or desirable, except that structural changes and changes that materially affect building-wide systems that serve other portions of the Building may be made only with Landlord's consent, not to be unreasonably withheld, conditioned or delayed. In addition, Tenant may install, remove and/or replace, at any time during the Lease Term or at the end of the Lease Term any personalty, affixed improvements, appliances, furniture, other personal property or trade fixtures (including, but not limited to, Tenant's oven, hood and cooler) (collectively "Trade Fixtures"). In addition, Tenant may, install, replace and/or remove such items from the Premises containing any of Tenant's Franchisor's trademarks, colors or logos (the "Proprietary Items"), examples of which are shown on **Exhibit F** as Tenant deems necessary to protect the property rights of Tenant and Tenant's Franchisor Any damage to the Leased Premises resulting from Tenant's removal of Trade Fixtures or Proprietary Item shall be promptly repaired at Tenant's expense. Tenant shall surrender possession of the Leased Premises in good repair, order and condition in all respects, ordinary wear and tear and damage by casualty excepted; and if Tenant shall have installed any structural items or made any structural improvements or alterations to the Leased Premises, (which shall not include Trade Fixtures or Proprietary Items) any such improvements and/or alteration shall immediately become the property of the Landlord upon their construction or installation), whether consented to by Landlord or not., Notwithstanding the foregoing, Tenant shall not be required to return the Leased Premises to Landlord in a "vanilla box' , "grey box" or "cold shell" condition.

**8.17** Not to operate any equipment or machinery or musical instruments or sound systems in the Leased Premises which may cause excessive vibration, which may cause damage to the Leased Premises or which can be heard outside the Leased Premises, provided that Tenants operation of its business in accordance with the Permitted Use shall not be deemed a violation of this Section 8.17

**8.18** Not to make any structural changes or changes that affect building-wide systems or systems that relate to the Building, not just to the Leased Premises without the express written consent of the Landlord, which consent will not be unreasonably withheld, conditioned or delayed.. Landlord acknowledges Tenant's intent to make interior improvements to the Leased Premises, including, but not limited to, those set forth in Sections 8.16 Tenant agrees to provide Landlord with "As Built" Plans of the interior improvements within thirty (30) days of the date Tenant opens for business to the public.

**8.19** To pay the expense of any alterations, modifications or improvements to the Leased Premises made by Tenant as may be made necessary by any governmental authority, or by the Landlord's insurance carrier (but only in order to avoid a cancellation of insurance or a raise in premium rates), and only because of the nature or the manner of use of the Leased Premises by Tenant.

11

Case 17-03469-TOM7    Doc 95-2    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit B    Page 12 of 44

**8.20** Except as otherwise set forth in this Section 8.20 or elsewhere in this Lease, Tenant agrees that it will not assign, transfer, mortgage or encumber this Lease or sublet or rent (or permit occupancy or use of) the Leased Premises, or any part thereof (collectively referred to as an "Assignment"), without compliance with this Section 8.20, including, but not limited to, any requirements of Landlord's consent as set forth hereinbelow. If Tenant is a partnership or limited liability company, a withdrawal or change, whether voluntary, involuntary or by operation of law, of partners owning a controlling interest in the Tenant shall be deemed a voluntary assignment of this Lease and subject to the foregoing provision. If Tenant is a corporation, any dissolution, merger, consolidation or other reorganization of Tenant, or the sale or transfer of a controlling interest in capital stock of Tenant, shall be deemed a voluntary assignment of this Lease and subject to the foregoing provision. Any attempted Assignment or transfer by Tenant of this Lease or its interest herein in violation of this Section 8.20 shall, at the option of Landlord, constitute a default under Section 9 of this Lease. **Unless set forth specifically in this Section 8.20 the consent by Landlord to any Assignment shall not be construed as a waiver or release of Tenant or the Guarantors hereof from the terms of, or Tenant's liability under, any covenant or obligation under this Lease, nor shall any such assignment be construed to relieve Tenant from obtaining the consent in writing of Landlord to any further Assignment .** Notwithstanding the foregoing, Landlord's consent is not required for an Assignment to Tenant's Franchisor, in which case the Tenant and the Guarantors shall be automatically released from liability under this Lease and the Guaranty.

Tenant may assign the Lease, to an approved franchisee of Tenant's Franchisor provided that Landlord's consent is obtained, not to be unreasonably withheld, delayed or conditioned. In addition, at such time, Landlord shall determine, in its reasonable discretion, whether to release the Tenant and/or Guarantors from liability hereunder and the Guaranty .Landlord shall have the right to review financial records and operational experience of the proposed assignee tenant and any guarantor, including meeting and/or interviewing such persons as Landlord deems reasonably necessary. In the event that the assignee tenant should default under the terms of this Lease, Tenant and the Guarantors (as defined in Section 1 (j) shall be entitled to written notice thereof in the same manner as said assignee tenant under the Lease. In the event that the Lease is thereafter terminated as a result of said assignee tenant's default, and Landlord has not released the Tenant and/or Guarantors pursuant to this Section 8.20, Tenant and the Guarantors shall be responsible for all unperformed obligations of the assignee tenant under the Lease. In the case of an assignment if its interest in this Lease by Landlord, Landlord shall ensure the assignee landlord assumes all of Landlord's obligations hereunder. **Tenant agrees to pay to Landlord at the time of request for approval of an assignment a Fee in the amount of One Thousand Five Hundred and no/xx Dollars ($1,500.00) to compensate the Landlord for its anticipated legal fees in reviewing the request for approval, the qualifications of the assignee tenant or sublessee, and or the review of or drafting of documents in connection with Tenant's application, whether or not the approval is obtained. The obligations of the Guarantors pursuant to this Section 8.20 shall be governed by the terms of the Guaranties in the form attached hereto as Exhibit H.**

**8.21** No sign, advertisement or notice shall be inscribed, painted, affixed or displayed on windows or exterior walls of the Leased Premises or on any public area by Tenant except such signs, advertisements and notices which are in compliance with Section 7.08

12

Case 17-03469-TOM7    Doc 95-2    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit B    Page 13 of 44

**8.22** To periodically inspect all portions of the Leased Premises, including all interior machinery and equipment therein, so it may promptly detect the need for repairs to any portion thereof, to make such repairs as Tenant is herein obligated to make and to notify Landlord in writing of the need for any repairs Landlord is herein obligated to make. In addition to any other contracts that Tenant is required to obtain by the terms of this Lease, Tenant shall be obligated to obtain maintenance contracts for the HVAC in and about the Leased Premises and any dishwashing machine utilized in connection with the Permitted Use.. In the event a hood is utilized in connection with the Permitted Use, Tenant also agrees to secure a periodic hood cleaning contract as a requirement of Landlord A copy of the contracts required by this Section 8.22 shall be delivered to Landlord no later than seven (7) days after Tenant opens for business to the public.

**8.23** To allow Landlord, upon reasonable notice, (but not less than twenty four (24) hours written notice) to inspect the Leased Premises and to make any repairs thereto, as well as other parts of the Building, provided that Landlord may not enter between the hours of 4:00pm and 8:00pm and shall not unreasonably interfere with the regular conduct of Tenant's business in the Premises for the Permitted Use. In cases of emergency, however, no notice need be given and the above time restrictions shall not apply.

**8.24** To permit Landlord to show the Leased Premises to prospective purchasers at all reasonable times and to prospective tenants at all reasonable times within ninety (90) days prior to the expiration of the Lease Term or any extensions thereof, as applicable. Landlord shall use its best efforts not to interfere with Tenant's conduct of its business for the Permitted Use. Landlord shall not place a "For Rent" or similar sign on the Leased Premises until the Lease is terminated and Tenant has vacated the Leased Premises, provided further that Landlord may prior to that date place a "generic" "For Rent" sign in the Common Areas or on the Building indicating a certain number of square feet for rent and a contact number provided that the same does not identify Tenant or the Premises (example-endcap)

**8.25** To indemnify and hold harmless Landlord for hazardous waste claims arising out of Tenant's use of the Leased Premises. Landlord shall indemnify Tenant for hazardous waste claims arising out of substances existing on the Building or land upon which the Building is located which were present prior to the execution of this Lease, or thereafter placed upon the Building (including but not limited to, the Leased Premises) or the property upon which the Building is located by Landlord, Landlord's agents, employees, contractors or other tenants in the Building (providing that cleaning solvents used by Tenant in the normal conduct of its business for the Permitted Use shall not be deemed Hazardous Waste for the purposes of this Section 8.25 so long as the same are used in accordance with the manufacturers' directions).

**8.26** To reimburse to Landlord upon demand for Tenant's pro rata percentage of all real property taxes of whatsoever nature levied and assessed upon the Building including sewer and storm water taxes but only to the extent that the same constitute "Taxes" as defined in Section 10 and its pro rata percentage of the CAM charges for the Building as defined and more fully set forth in Section 10 hereof. Tenant covenants and agrees to pay all personal property taxes of

13

Tenant for Tenant's personal property situated at or upon the Leased Premises directly to the applicable taxing authority.

**8.27** In consideration of the mutual benefits arising under this Lease, the Tenant hereby grants to Landlord a security interest in the form of a financing statement and security agreement to be filed and or recorded with the appropriate office of the DC Government establishing a lien on all property of the Tenant including but not limited to, Tenant's, Trade Fixtures, tools of trade, furniture and furnishings, alcoholic beverage license and other personal property in or on the Premises (except such part of any property that may be exchanged, replaced or sold from time to time in the ordinary course of business operation of the Tenant while not in default under this Lease), and such property shall be and remain subject to the lien of Landlord for the payment of all monthly rental and additional rent and any other sums agreed to be paid by the Tenant herein. Said lien shall be in addition to any lien provided to the Landlord by statute or common law. By its signature to this Lease, Tenant agrees that Landlord may execute financing statements to be recorded as set forth in this paragraph. Notwithstanding the forgoing, Landlord acknowledges that any such lien (s) shall be subject to any lien granted to Tenant's institutional lender, and Landlord agrees to execute the subordination agreement/ waiver attached hereto as **Exhibit G** ("Landlord Waiver") contemporaneously with the execution of this Lease. Such subordination will automatically terminate and Landlord's lien(s) shall revert to a primary position upon payment or other satisfaction of the amount secured by the Tenant's institutional lender. The parties shall sign such documents as shall be necessary to effectuate the same or as reasonably required by the other party.

This Lease is not contingent upon financing. Tenant and its Guarantors covenant and warrant that Tenant and Guarantors are financially capable of building out the Leased Premises

### Section 9 - GENERAL PROVISIONS:

**9.01 Condemnation:** If the whole or a substantial part of the Facility, or the approaches thereto, shall be taken, damaged or destroyed by public authority, this Lease shall Terminate as of the date of such taking, damage or destruction; but if the portion of the Facility so taken, damaged or destroyed shall not be so substantial as to render the Leased Premises unfit for the Tenant's continued occupancy for the purpose hereinbefore stated, this Lease shall continue in full force and effect, with an abatement or reduction in rental rate based on the percentage of the Leased Premises adversely affected. Landlord shall be entitled to the entire condemnation award except for such portion thereof, if any, as may have been made on account of the fixtures installed by Tenant which shall not have become the property of the Landlord or other damages allowed by law as long as the same does not reduce the award of Landlord.

**9.02 Tenant Holding Over:** If Tenant shall not immediately surrender possession of the Leased Premises at the expiration or other Termination of this Lease, Tenant shall become a tenant from month to month, provided rent shall be paid to and accepted by Landlord, in advance, at one and one-half times the rate of rental payable hereunder just prior to the Termination of this Lease; provided however, that unless and until Landlord shall accept such rental from Tenant, Landlord shall continue to be entitled to retake possession of the Leased Premises, but in accordance with law applicable to a month to month tenancy.. If Tenant shall

14

fail to surrender possession of the Leased Premises immediately upon the expiration of the Lease Term, Tenant hereby agrees that all of the obligations of Tenant, and all rights of Landlord applicable during the Lease Term shall be equally applicable during such period of subsequent occupancy.

**9.03  Fire Clause:**  In the event that the Building , or any part thereof, or the approaches thereto, be destroyed or damaged by fire or other insured casualty so as to render said Leased Premises and/or approaches unfit for use and occupancy, a just and proportionate part of the rent, according to the nature and extent of the damage to said Leased Premises/or approaches, shall be suspended and abated until said Leased Premises and approaches shall have been put in as good condition for use and occupancy as at the time of such damage or destruction, or until this Lease shall be canceled and Terminated as hereinafter provided, as the case may be.  It shall be the duty of Landlord to determine and to notify Tenant in writing, within ninety (90) days after such damage or destruction, of the estimated date by which the Leased Premises can be fully restored, if possible.  If the estimated date by which such restoration can be completed as stated in Landlord's notice shall not be later than six (6) months after such damage or destruction, or if the restoration is not completed in all material respects, for whatever reason, within six months from the date of such casualty, then either party hereto shall have the right, exercisable within thirty (30) days after receipt of such notice from Landlord of such estimated date or non-completion, to cancel and Terminate this Lease, by giving to the other party written notice thereof; but if this Lease shall not be so canceled, it shall remain in full force and effect and Tenant shall reoccupy the Leased Premises when fully restored. If the estimated date by which restoration can be completed, as stated in Landlord's notice, shall be within six (6) months after such damage or destruction, this Lease shall remain in full force and effect, and Tenant shall reoccupy the Leased Premises when fully restored.  Despite the foregoing provisions, the parties hereto may make such other agreements as they wish in the event of damage to or destruction of the Leased Premises.  In case of the damage to or destruction of the Leased Premises by an uninsured casualty, and if the estimated cost of repair or restoration should exceed 35% of the then estimated replacement cost of the Leased Premises, Landlord, at its option, may cancel and Terminate this Lease as to the date of such damage or destruction by giving Tenant a written notice to this effect within sixty (60) days of such damage or destruction; provided however, that if Landlord shall not so elect to Terminate, all of the provisions hereinbefore contained respecting an insured casualty shall be equally applicable to such uninsured casualty.

**9.04  Tenant's Default - Landlord's Remedies:**  In the event Tenant shall fail to pay when due,  any installment of rent or other charges or money obligation to be paid by Tenant hereunder, Tenant shall be deemed in default of this Lease ten calendar  (10) days after the date such amount is due and payable.  Landlord agrees to give  Tenant written notice of Tenant's monetary default and a ten (10) day period to cure its monetary default, including any interest and late charges having then accrued through the date of the cure.  In the event any payment of Rent or additional rent is not paid within said ten (10) day cure period,  Landlord shall be entitled to exercise such rights and or remedies as provided in this Lease and or under the laws of the District of Columbia.  In the event of a monetary default, Tenant may exercise its right of re-entry or may waive such right but may only waive such right if in writing upon receipt of good and sufficient consideration. If Tenant shall default in performing any of the covenants, Terms or provisions of this Lease (other than the payment, when due, of any of Tenant's monetary

15

obligations hereunder) and fails to cure such default within thirty (30) calendar days after written notice thereof from Landlord (provided, however, if the nonmonetary default shall reasonably require more than thirty (30) calendar days to cure, Tenant shall not be in default unless it shall fail to commence to cure the default within thirty (30) calendar days after Landlord's written notice or thereafter fails to pursue diligently the cure to its completion, provided that in no event shall the cure period exceed sixty (60) days from the breach or default); or if Tenant shall abandon the Leased Premises (excluding a closing for repair or remodel or in the event of casualty); or if Tenant is adjudicated a bankrupt; or if a permanent receiver is appointed for Tenant's property; or if, whether voluntarily or involuntarily, Tenant takes advantage of any debtor relief proceedings under any present or future law, whereby the rent or any part thereof, is or is proposed to be, reduced or payment thereof deferred; or if Tenant makes an assignment for the benefit of creditors; or if Tenant's property or effects should be levied upon or attached under process against Tenant. If Tenant does not cure the monetary or nonmonetary default within the time periods as set forth above (if any), Landlord, at its option may pursue any one or more of the following remedies without any notice or demand whatsoever except as set forth above ;

(a) Landlord, at its option, may at once, or at any time thereafter, Terminate this Lease by written notice to Tenant ), whereupon this Lease shall end concurrently with the receipt by Tenant of such notice. Upon such Termination by Landlord, Tenant will at once surrender possession of the Leased Premises to Landlord and remove all of Tenant's effects therefrom, and Landlord may forthwith reenter the Leased Premises and repossess itself thereof, and remove all persons and effects therefrom, using such force as may be necessary, without being guilty of trespass, forcible entry, detainer or other tort.

(b) Landlord may, without Terminating this Lease, enter upon and take possession of the Leased Premises and expel or remove Tenant and any other person who may be occupying the Leased Premises or any part thereof, without being liable for prosecution or any claim for damages therefor and, if Landlord so elects, make such repairs as would be required to be made under the terms of the Lease, and may relet the Leased Premises, or any part thereof for such rent and for such period of time and subject to such Terms and conditions as Landlord may deem advisable and receive the rent therefor. Upon each such reletting, all rent received by Landlord from such reletting shall be applied first to the payment of any indebtedness other than rent due hereunder from Tenant to Landlord, including interest thereon; second, to the payment of any loss or expense of such reletting, including brokerage fees, attorneys' and accounting fees, advertising and promotion expenses and the cost of such repairs; third, to the payment of rent due and unpaid hereunder, together with interest thereon as herein provided; and the residue, if any, shall be held by Landlord and applied in payment of future rent as the same may become due and payable hereunder. Tenant agrees to pay Landlord, on demand, any deficiency that may arise by reason of such reletting, to Landlord from Tenant pursuant to the terms of this Lease... Notwithstanding any such reletting without Termination, Landlord may at any time thereafter elect to Terminate this Lease for such prior default.

(c) Except where specifically prohibited by this Lease, in the event Landlord Terminates this Lease in accordance with the provisions of this Section 9.04, Landlord may, in addition to any other remedy it may have, recover from Tenant all damages and expenses Landlord may

16

Case 17-03469-TOM7    Doc 95-2    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit B    Page 17 of 44

suffer or incur by reason of Tenant's default hereunder, including, without limitation, the cost of recovering the Leased Premises, attorneys' fees and the amount of rent reserved in this Lease for the remainder of the started Term, all of which sums shall become immediately due and payable by Tenant to Landlord upon demand of Landlord ("Landlord's right of acceleration"). Landlord may not exercise Landlord's right of acceleration unless Landlord has given Tenant a ten (10) day notice of its intent to exercise Landlord's right of acceleration.

    **(d)** INTENTIONALLY DELETED

    **(e)** Except as otherwise set forth in this Lease, (pursuit of any of the foregoing remedies shall not preclude Landlord or Tenant from pursuing any other remedies herein or at law or in equity provided, nor shall pursuit of any remedy by Landlord constitute a forfeiture or waiver of any rent due to Landlord hereunder or of any damages accruing to Landlord or Tenant by reason of either party's violation of any of the covenants and provisions of this Lease.

    **(f)** If Tenant becomes the subject debtor in a case pending under the Bankruptcy Code, Landlord's rights to Terminate this Lease under this Section shall be subject to the applicable rights (if any) of the Trustee in Bankruptcy to assume or reject this Lease as then provided for in the Bankruptcy Code. However, the Trustee in Bankruptcy must give to Landlord and Landlord must receive proper written notice of the Trustee's assumption or rejection of this Lease, within thirty (30) days after the date of Trustee's appointment or such longer period provided by applicable law (the "Assumption or Rejection Period"): it being agreed that the failure of the Trustee to give notice of such assumption hereof within the Assumption or Rejection Period shall conclusively and irrevocably constitute the Trustee's rejection of this Lease and waiver of any rights of the Trustee to assume or assign this Lease. The Trustee shall not have the right to assume or assign this Lease unless said Trustee (i) promptly and fully cures all defaults under this Lease, (ii) promptly and fully compensates Landlord for all monetary damages incurred as a result of such default, and (iii) provides to Landlord "adequate assurance of future performance" (as defined hereinbelow). Landlord and Tenant hereby agree in advance that "adequate assurance of future performance", as used in this Paragraph, shall mean that all of the following minimum criteria must be met: (a) Tenant's gross receipts in the ordinary course of its business during the thirty (30) days immediately preceding the initiation of the case under the Bankruptcy Code must be at least ten (10) times greater than the next payment of rent due under this Lease, (b) both the average and median of Tenant's monthly gross receipts in the ordinary course of its business during the six (6) months immediately preceding initiation of the case under the Bankruptcy Code must be at least ten (10) times greater than the next payment of rent due under this Lease, (c) Tenant must pay to Landlord all rentals and other sums payable by Tenant hereunder, including also therein its share (as estimated by Landlord) of the cost of all services provided by Landlord (whether directly or through agents or contractors, and whether or not the cost of such services is to be passed through to Tenant) in advance of the performance of provision of such services, and (d) the Tenant must agree (by a writing delivered to Landlord) that the Tenant's business shall be conducted in a first class manner, and that no liquidating sales, auctions or other non-first class business operations shall be conducted on the Leased Premises, and that the use of the Leased Premises, as stated in this Lease will remain unchanged, and that the assumption or assignment of this Lease will not violate or affect the rights of other lessees in the Facility. In the event Tenant is unable to: (i) cure its defaults, (ii) reimburse Landlord for its

17

monetary damages, (iii) pay the rents due under this Lease or any other payments required of Tenant under this Lease on time, or (iv) meet the criteria and obligations imposed by (a) through (d) above the Tenant hereby agrees in advance that it has not met its burden to provide adequate assurance of future performance, and this Lease may be Terminated by Landlord.

It is further stipulated and agreed that, in the event of the Termination of the Term of this Lease by the happening of any such event described in this Section, Landlord shall forthwith, upon such Termination, and any other provision of this Lease to the contrary notwithstanding, become entitled to recover as and for the liquidated damages caused by such breach of the provisions of this Lease an amount equal to the difference between the then cash value of the rent reserved hereunder for the unexpired portion of the Term, and the then cash rental value of the Leased Premises for such unexpired portion of the Term, unless the statute which governs or shall govern the proceeding in which such damages are to be proved limits or shall limit the amount of such claim capable of being so provided, in which case Landlord shall be entitled to provide as and for liquidated damages an amount equal to the amount allowed by or under any such statute. The provisions of this Section of this Lease shall be without prejudice to (a) Landlord's right to prove in full damages for rent accrued prior to the Termination of this Lease, but not paid, or (b) any rights given to Landlord by any pertinent statute to prove any amounts allowed thereby. In making any such computation, the then cash rental value of the Leased Premises shall be deemed prima facie to be the rental realized upon any reletting if such reletting can be accomplished by Landlord within a reasonable time after such Termination of this Lease, and the then present cash value of the future rents hereunder reserved to Landlord for the unexpired portion of the Term hereby Leased shall be deemed to be such sum, if invested at six percent (6%) simple interest, as will produce the future rent over the period of time in question.

**(g) Tenant waives any statutory rights of redemption as to the Lease.**

**9.05 Exculpatory Clause:** It is expressly understood and agreed that no liability shall be imposed upon Landlord because of any injury or damage to person or property, or because of any interruption of services or utilities caused by accidents, repairs, riots, strikes, or for any other reason except that the Landlord may be liable for the gross negligence and/or wrongful willful actions of Landlord, its agents, or employees. . Except to make repairs and perform maintenance specifically required under this Lease, neither Landlord nor its agent, shall be under any duty to inspect the Leased Premises during Tenant's occupancy thereof unless and until Tenant has notified Landlord in writing of the need for repairs for which Landlord is responsible; provided however, Landlord and its agent may, upon reasonable notice, enter the Leased Premises at any time for the purpose of inspecting the same or for the performance of any repair but only to the extent allowed by Section 8.

**9.06 Force Majeure:** Subject to Section 5 of this Lease, each party shall be excused from performing any obligation or undertaking provided for in this Lease for so long as performance is prevented, delayed, retarded or hindered by act of God, fire, earthquake, flood, explosion, war, invasion, insurrection, riot, mob violence, sabotage, inability to procure or general shortage of labor, equipment, facilities, materials or supplies in the open market, failure to transportation, strike, lockout, action of labor unions, condemnation, requisition, laws, orders of government authorities, or any other cause, similar to the foregoing, not within the reasonable

18

control of the party prevented, delayed, retarded, or hindered thereby, including reasonable delays for adjustments of insurance.

**9.07 Delay:** In the event Landlord for any reason is unable to deliver possession of the Leased Premises to Tenant as required by this Lease, this Lease shall remain in full force and effect except that the Lease Commencement Date and Rent Commencement Date shall be delayed one day for each day that possession is delayed.

**9.08 Subordination:** **(a)** This Lease is subject and subordinate to all mortgages or deeds of trust, which may now or hereafter affect or encumber the Leased Premises or the real property of which the Leased Premises form a part and to all renewals, modifications, consolidations, replacements or extensions thereof. This paragraph shall be self-operative and no further instrument of subordination shall be required. In confirmation of any such subordination, Tenant shall execute, within fifteen (15) calendar days after receipt, any certificate or agreement that Landlord may reasonably so request. Tenant covenants and agrees to attorn to Landlord or to any successors to Landlord's interest in the Leased Premises, whether by sale, foreclosure or otherwise. The obligations of Tenant to subordinate and attorn shall be contingent upon Landlord exercising commercially reasonable efforts to secure for Tenant a commercially reasonable nondisturbance agreement from Landlord's lender, verifying that Tenant's rights hereunder shall not be diminished and Tenant's monetary obligations hereunder shall not be increased beyond those set forth in the Lease and options.

**(b)** Notwithstanding the foregoing, in the event any such mortgagee shall elect to make the lien of this Lease prior to the lien of its mortgage or deed of trust, then, upon such party giving Tenant written notice to such effect, this Lease shall be deemed to be prior in lien to the lien of such mortgage or deed of trust, whether dated prior or subsequent thereto.

**9.09 Mortgagee Protection:** Tenant agrees to give any mortgagees and/or trust deed holders, by certified mail, return receipt accepted, a copy of any notice of default served upon Landlord, provided that prior to such notice Tenant has been notified, in writing (by way of Notice of Assignment of Rents and Leases, or otherwise) of the address of such mortgagees and/or trust deed holders. Tenant further agrees that if Landlord shall have failed to cure such default within the time provided for in this Lease, then the mortgagees and/or trust deed holders shall have an additional thirty (30) calendar days within which to cure such default or if such default cannot be cured within that time, then such additional time as may be necessary if within such thirty (30) calendar days, any such mortgagee and/or trust deed holder has commenced and is diligently pursuing the remedies necessary to cure such default (including but not limited to commencement of foreclosure proceedings, if necessary to effect such cure).

**9.10 Estoppel Certificates:** Subject to Section 9.11 hereof, Tenant agrees, at any time and from time to time, upon not less than twenty (20) calendar days prior written notice from Landlord, to execute, acknowledge and deliver to Landlord or to such person(s) as may be designated by Landlord, a statement in writing (i) certifying that Tenant is in possession of the Leased Premises, has unconditionally accepted the same and is currently paying the rents reserved hereunder, (ii) certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the Lease is in full force and effect as modified and stating

Case 17-03469-TOM7    Doc 95-2    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit B    Page 20 of 44

the modifications), (iii) stating the dates to which the rent and other charges hereunder have been paid by Tenant, (iv) stating whether or not, to the best of Tenant's knowledge, Landlord is in default in the performance of any covenant, agreement or condition contained in this Lease, and, if so, specifying each such default in detail, and (v) certifying such other information concerning this Lease and the Leased Premises as Landlord may reasonably request subject to Section 9.11. Any such statement, delivered pursuant hereto may be relied upon by any owner, prospective purchaser, mortgagee or prospective mortgagee of the Leased Premises or of Landlord's interest therein.

**9.11 Financial Statements:** Tenant shall not be required to furnish Landlord with any financial information, including, but not limited to, any statement of its gross sales, or Tenant financial statements but shall provide Landlord upon written request but not more than once annually commencing twelve months following Lease Commencement with a statement certified by its principal officer that its sales at and/ or income generated from the Leased Premises is sufficient to pay its obligations to Landlord in a timely manner.

**9.12 Miscellaneous: (a)** In case two (2) or more persons shall constitute the Tenant hereunder, the covenants, obligations and agreements herein made binding upon Tenant, shall be joint and several obligations of all such persons. Notwithstanding the foregoing, the release of the personal guaranty of any guarantor shall not act to release the other guarantors of their personal guarantees except as specifically set forth in writing This Lease shall be binding upon and inure to the benefit of, not only the parties hereto, but also their respective heirs, personal representatives, successors and permitted assigns, and all provisions of this Lease shall be and are hereby made covenants that run with the Leasehold estate. Whenever Landlord conveys its interest in the Leased Premises, Landlord shall be automatically released from the further performance of covenants on the part of Landlord herein contained, and from any and all further liability, obligations, costs and expenses, demands, causes of action, claims or judgments arising from or growing out of, or connected with this Lease after the effective date of such release. The effective date of said release shall be the date the assignee of Landlord executes an assumption of such assignment whereby the assignee expressly agrees to prospectively assume all of Landlord's obligations, duties, responsibilities and liabilities with respect to this Lease. If requested, Tenant shall execute a form of release and such other documentation as may be reasonably required to further the effect the foregoing provision within fifteen (15) days Landlord's written request, provided that Tenant shall not be required to disclose any information prohibited by Section 9.11 hereof.

**(b)** This Lease constitutes the entire agreement of the parties in respect of the Leased Premises, and there are no other written or oral agreements, representations or promises between the parties. Any modification of this agreement must be in writing and signed by all parties hereto. Counterparts shall be deemed to be originals. Time is of the essence in connection with each party's obligations hereunder.

**(c)** Should any provisions of this Lease be declared invalid by any Court of competent jurisdiction, (other that Section 7.11 ) the remaining provisions of this agreement shall remain in full force and effect. In the event that a Court of competent jurisdiction declares the provision of Section 7.11 to be invalid, Tenant may, upon thirty (30) days written notice, terminate this Lease.

20

**(d)** Unless the context requires otherwise, the masculine, when used in this Lease, shall be deemed to include the feminine and neuter, and vice-versa, and the singular shall be deemed to include the plural, and vice-versa.

**(e)** Both parties waive trial by jury in any proceeding which may be instituted by either party arising under or by virtue of this Lease.

**(f)** Unless either party is otherwise notified in writing by the other party , any notice required to be given by either party under any provision of this Lease shall be sent by overnight delivery by a nationally recognized service, or by certified mail, return receipt requested, postage prepaid:

|  |  |
|---|---|
| To Landlord: | Good Hope Investments, LLC<br>9109 Lucky Estates Drive<br>Vienna Virginia 22182 |
|  | With a copy to:<br>Michael J. Chamowitz, Esq.<br>Counsel for Landlord<br>118 North Alfred Street<br>Alexandria, Virginia 22314 |
| To Tenant | Maryland LC Ventures LLC<br>c/o Mark Williams<br>226 Crowne Woods Drive<br>Birmingham, Alabama |
|  | and |
| To Guarantors: | Wazir Kaisani, Richard Ruggiero and Pervez Kaisani<br>At the addresses set forth in Item (i) of the Basic Lease provisions. |

Notices to either party shall be effective three (3) days after posting when sent by certified mail, return receipt requested and upon receipt if sent by overnight delivery service properly addressed and postage or delivery fees prepaid, to the parties set forth hereinabove .

**(g)** This Lease and the provisions contained therein shall be governed by the laws of the District of Columbia. Tenant waives its right of redemption. The Tenant and Guarantors agree that all persons will be subject to the jurisdiction of the courts of the District of Columbia and that venue shall be proper in the City of Washington, DC.

**(h)** Landlord agrees to pay a brokerage commission in accordance with a separate agreement with Tenant's representative, Renaud Consulting. This Lease is conditioned upon the agreement of all brokers and representatives that no commissions will be due and payable until

Case 17-03469-TOM7   Doc 95-2   Filed 09/05/17   Entered 09/05/17 15:32:05   Desc
Exhibit Exhibit B   Page 22 of 44

the Rent Commencement Date, at which time 50% of the agreed upon commission will be due. Thereafter, the balance will be due 180 days following the Rent Commencement Date.

## SECTION 10- COMMON EXPENSES, TAXES AND UTILITIES

(a) At all times during the Term, Landlord shall be responsible for maintaining, repairing and or replacing, as the case may be, , cleaning, ice and snow removal, trash removal and lighting the Common Area, including, without limitation, maintenance and repair where warranted of all landscaping, parking and driveway areas of the Land. For purposes hereof, the term "Common Expenses" shall mean the out of pocket costs and expenses incurred by Landlord in connection with the Common Area which are set forth as follows, provided all such costs and expenses shall not exceed the reasonable and customary expense for such services in the area in which the Premises are located: (i) maintaining, repairing, and cleaning the exterior facade and exterior areas of the Land and the Building, including without limitation, litter pick up and ice and snow removal; as well as all parking and driveway areas, and including striping and stenciling; and all exterior lighting and all landscaping; (ii) maintaining, testing, servicing, replacing and repairing any utility line, conduit and system of the Building not the responsibility of a particular tenant; (iii) insurance relating to or in connection with the operation of the Land and the Building, including but not limited to the cost of casualty and, liability insurance applicable to the Land and the Building and the Landlord, rent loss insurance and insuring of Landlord's personal property used in connection with the Land and the Building; (iv) accounting and legal fees for the Land and the Building, exclusive of such fees incurred to negotiate leases or by reason of tenant defaults or disputes with tenants, employees or contractors; (v)  management of the Land and the Building and an administrative and/or management fee (the aggregate of which shall (not to exceed five percent(5%) of the gross rents receivable from all leases), recognizing that if management services are not provided by a third party, Landlord shall be entitled to a management fee of five percent of  gross rents receivable from all leases; and (vi) In connection therewith the personnel engaged in the on-site management, operation, maintenance, servicing, security or repair of the Land and/or the Building, including without limitation, salaries, wages, medical, payroll taxes, worker's compensation insurance, surgical and general welfare benefits (including also group life insurance) and pension payments for employees of Landlord directly involved in the on-site operations of the Land and the Building below the grade of building manager and building superintendent, if any. Capital costs and expenses for equipment, systems or materials installed for the purpose of reducing costs and expenses described in clause (i) or (ii) above (but only to the extent of the reduction of Common Expenses) may be included in Common Expenses if amortized over the useful life of same as determined by the Internal Revenue Code of 1986, as amended. Utilities and cleaning contracts for Common Areas of the Land shall also be included as Common Expenses. Costs for provision of utilities and cleaning services to tenanted spaces within the Land shall be excluded from Common Expenses. Notwithstanding anything contained herein to the contrary, in no event shall the following be included in Common Expenses: any brokerage, leasing, management (except as provided above), accounting (except as provided above), administrative, clerical, remodel or similar fees or costs with respect to the Land, or costs of acquisition of new land or construction of new buildings, capital expenditures ,(except as provided above), any expenditures for which Landlord is reimbursed from any source, including, without limitation, insurance and condemnation proceeds and expenses in connection with services or other benefits of a type that are not provided to another tenant or occupant of the Land or the Building, depreciation and/or amortization of the

22

Building, fines, penalties and other government imposed charges inclusive of interest and attorney fees incurred solely as a result of Landlord's failure to comply with legal or regulatory requirements, construction defects or repairs due to the grossly negligent or willful acts or omissions of Landlord or its agents or others under its control, advertising or other promotional costs concerning the Premises, ground lease payments, payments on mortgages or other debt obligations, expenditures for compliance with any federal, state or local law, rule, ordinance or requirement regarding the environment or hazardous waste and materials the violation of which existed at or prior to the Delivery Date hereof for which Tenant is not legally responsible; expenses of Landlord in curing defaults or performing work expressly provided in this Lease to be borne at Landlord's expense; the costs of any initial "tap fees" or one time lump sum sewer or water connection fees for the Premises; expenses and costs of encapsulation, removal, or abatement of substances located on the Premises prior to the Delivery Date; costs or expenses, including judgments, incurred in connection with tort claims against Landlord (including the cost of investigating, defending, or settling the same), payments to subsidiaries or affiliates of Landlord for goods or services which as a result of a non-competitive selection process materially exceed the cost of such goods or services if obtained by parties unaffiliated with Landlord; and any charges otherwise payable by Tenant under another provision of this Lease (i.e. no duplicative charges. Tenant shall bear its Pro Rata Share of such Common Expenses. Landlord shall invoice Tenant for Tenant's share of such Common Expenses on a monthly or calendar quarter basis, at Landlord's option. Such invoice shall show in reasonable detail the Common Expenses and shall be forwarded to Tenant's office at the address provided in the Lease. In no event shall Tenant's Pro Rata Share of Common Expenses increase in any Lease Year (prorated on a per diem basis for any partial Lease Year) by more than five percent (5.0%) of the amount paid by Tenant for Tenant's Pro Rata Share of Common Expenses in the immediately preceding Lease Year, on a non-cumulative basis (the "CAM Cap").

(b)        At any time requested by Tenant but not more than once a year, Landlord shall provide Tenant with such information or data (including without limitation, invoices and payment receipts evidencing the work performed) as may be reasonably requested to verify the amount of the Common Expenses, or, if requested by Tenant, Landlord shall permit Tenant to audit Landlord's books and records maintained by Landlord in connection with the Common Expenses. Tenant shall give Landlord ten (10) days notice of its intention to conduct such an audit which shall be conducted at Landlord's offices as set forth in item (i) in the Summary of Terms hereof or at such other location wherein the books and records of Landlord for this Building are located. The cost of such audit shall be borne by Tenant; provided, however, that in the event the audit reveals that the actual Common Expenses are more than five percent (5%) less than the Common Expenses reflected in the statement(s) presented by Landlord which are the subject of the audit, Tenant's reasonable cost of conducting the audit (not to exceed $1,000.00) shall be borne by Landlord

(c)        If Landlord fails to invoice Tenant for Common Expenses within twelve (12) months of the incurrence of the Common Expenses to which such invoice relates, then Landlord's right to reimbursement of same shall be forever forfeited and waived.

(d)        That part of the Common Area which primarily serves the customers of the Premises shall be adequately lighted at night during Tenant's business hours.

23

(e)     Tenant agrees to pay all taxes levied upon its personal property, including trade fixtures and inventory, located on the Premises directly to the applicable taxing authority.

(f)     Landlord shall use good faith to estimate the annual amount of Tenant's Pro Rata Share (as hereafter defined) of Taxes and Common Expenses (as hereafter defined), and Tenant shall pay to Landlord on a monthly basis (at the same time base rent is paid to Landlord), as Additional Rent, one-twelfth (1/12th) of Landlord's estimate of the annual amount of Common Expenses (as described above) and Taxes due with respect to the Land and the Building, which shall be subject to the annual reconciliation as provided below as set forth herein   Tenant shall not be responsible for any assessments that are pending, levied, assessed, imposed or due on the Land and the Building .prior to the commencement of the Term.

(g)     Taxes for the first and final year of the Term or the final year of a Renewal Term, if applicable, shall be prorated between Landlord and Tenant based upon the commencement and expiration of the Term or  or Renewal Term. Tenant will not be required to pay any penalty, interest or cost resulting from Landlord's failure to pay such Taxes and/or the delinquent payment of such Taxes by Landlord (unless occasioned by Tenant's failure to timely pay its Pro Rata Share of Taxes).

(h)     If a separate real estate tax statement is not available for the Premises, the amount of taxes for which Tenant shall be liable under this Lease shall be a percentage of the total amount of such taxes levied against the Land and the Building, which percentage shall be determined by dividing the amount of gross leasable square feet in the Premises by the total amount of gross leasable square feet of all buildings on the Land, whether or not leased or occupied (the "Pro Rata Share"). In no event shall Tenant's Pro Rata Share be greater than Tenant's actual pro rata share of the Building based upon gross leasable square footage, .  Landlord represents that the total square footage of all buildings on the Land is approximately fourteen thousand six hundred (14,600) square feet. The parties acknowledge and agree that, for so long as the square footage of the Building is not increased, Tenant's Pro Rata Share of Taxes and Common Expenses for purposes of this Lease shall be sixteen and forty five percent (16.45%). .

(i)     In the event additional buildings are added to the Land during the Term (but as limited by Section 13),, Landlord shall so advise Tenant in writing upon completion of such additional buildings and provide the gross leasable square footage thereof, and Tenant's Pro Rata Share shall be reduced based on the gross leasable square footage of such additional buildings.

(j)     On an annual basis, within ninety (90) days after the end of each calendar year, Landlord shall provide Tenant with a reasonably detailed statement (each, a "Tax Reconciliation Statement") of Tenant's Pro Rata Share of all Taxes assessed against the Land and the Building and Premises in the preceding tax year. If Tenant has made estimated payments of Taxes during such tax year in excess of the actual amount due, Landlord shall, at Tenant's option, either (A) credit Tenant with any overpayment against the next rent otherwise due, or (B) reimburse Tenant in the amount of such overpayment via check within thirty (30) days; provided, however, if the Term has expired, then Landlord shall reimburse Tenant in the amount of such overpayment via check within thirty (30) days. If the actual Taxes due exceeds the estimated payments made by Tenant during the preceding tax year, Tenant shall pay such amount due as Additional Rent

24

within thirty (30) days after written notice from Landlord. Tenant will not be liable for, and Landlord will forever forfeit all rights to recover, such reimbursement owed by Tenant to Landlord pursuant to the immediately preceding sentence for taxes and assessments if presentation of the Tax Reconciliation Statement for the applicable tax year is not made by Landlord to Tenant in the manner set forth above within twelve (12) months after the end of the applicable tax year.

(k)     All tax statements submitted by Landlord hereunder shall be sent to Tenant's address as set forth in this Lease.

(l)     For purposes of this Lease, the term "Taxes", "taxes", or "real estate taxes" shall mean all real estate taxes, general and special, and any levies, fees or charges (including fees "in-lieu" of-any such tax or assessment) which are assessed, levied, charged, confirmed, or imposed by a public authority upon the Land and the Building (but not on any adjacent or contiguous developed or undeveloped land owned or controlled, indirectly or directly by Landlord, its successor, assigns or affiliates ) or the Leased Premises (including storm water management fees and the like), and including business improvement district taxes, any arena or stadium tax and vault rental fees, but excluding, corporate, franchise, income, gains, transfer, estate, inheritance, succession, gift, excise, profit, unincorporated business, capital, stock, gross receipts, capital levy, late charges (unless occasioned by Tenant's failure to timely pay Tenant's Pro Rata Share of Taxes), interest and/or penalties (unless occasioned by Tenant's failure to timely pay Tenant's Pro Rata Share of Taxes), special assessments levied against another tenant or occupant in the Building due to improvements made by such other tenant or occupant, or any charges in replacement or substitution of or similar in character to the foregoing. Notwithstanding anything contained in this Lease to the contrary, the term "Taxes" shall not include any assessments for special improvements installed in connection with the development (or re-development) of the Building, including, without limitation, assessments for the widening of the exterior roads, the installation and/or hook up to  sewer and sewer lines, sanitary and storm drainage systems, and other utility lines and installations, whether public or private, the same being the sole obligation of and at the sole cost and expense of Landlord.  Where special assessments are chargeable to Tenant as part of Taxes as permitted hereunder, the same shall be spread over as long a time period as permitted by the assessing authority. The term Taxes shall also include the reasonable costs and fees paid to consultants and attorneys for efforts to reduce the amount of Taxes (provided that in no event shall such fees be an amount greater than the actual amount of savings obtained by said consultants), provided that Tenant shall be credited with its pro-rata share of any refund.  Nothing contained herein shall be interpreted so as to include in the definition of Taxes those taxes that are assessed during the Term of this Lease but which relate solely to a tax year prior to the commencement of the Term; *i.e.,* Tenant shall not be responsible for any Taxes that are due on the Premises or the Facility prior to the commencement of the Term.

(m) *Utilities.* Upon Landlord's delivery of possession of the Premises to Tenant, Landlord shall make available all utilities necessary for operating the Premises for the Permitted Use, including gas, water and electricity, which shall be separately metered to the Premises.  The Tenant shall pay for all separately metered utilities, including, but not limited to, electric, gas, sewer and water (to the extent such services are not Landlord's obligation hereunder) directly to the utility or other service provider, including, but not limited to, costs related to security for the Premises. Any other utility expenses for the Common Areas that are not specific to any other tenant(s) shall

25

be considered Common Expenses. In the event that at any time during the Term any utility or service becomes unavailable due to an intentional act or omission of Landlord and causes closing of the Premises to the public, all rent and additional rent shall abate during the continuance thereof. Landlord and Tenant acknowledge and agree that Tenant shall not be obligated to pay any charges for utilities for the Leased Premises until Tenant has actual possession of the Premises in the condition required by this Lease.

**SECTION 11 – ADDITIONAL DEVELOPMENT RIGHTS:** SEE BELOW SECTION 13

**SECTION 12 – LANDLORD DEFAULTS** In the event that Landlord defaults in any of the terms and conditions of this Lease, Tenant shall give Landlord ten (10) days written notice in the case of a default that affects the Tenant's regular conduct of Tenant's business for the Permitted Use in the Leased Premises and thirty (30) days in the case of all other defaults. In the event that Landlord fails to cure the default within the above referenced cure periods (as applicable) Tenant may, in addition to any and all remedies which Tenant has under this Lease or otherwise under applicable law (a) cure Landlord's default and deduct the cost thereof from any and all sums coming due and owing from Tenant to Landlord until Tenant is reimbursed in full; (b) file suit for damages or equitable relief including, but not limited to, specific performance or injunctive relief or (c) upon ten (10) days written notice to Landlord, terminate this Lease

.

**SECTION 13 – ADDITIONAL DEVELOPMENT RIGHTS:** At any time after the expiration of the tenth (10th) Lease Year of the Term, Landlord, upon not less than one (1) year's prior written notice (the "Redevelopment Notice") to Tenant, may construct vertical and/or horizontal improvements at the Shopping Center for purposes of redeveloping the Shopping Center. The Redevelopment Notice shall specify the date (the "Redevelopment Date") on which Landlord intends to commence construction of any new building, additions, project or development pursuant to the preceding sentence (collectively, a "New Development"), and a complete description of the nature of the New Development (including preliminary plans and specifications for the New Development). In the event Tenant reasonably determines that the Premises cannot be utilized for Tenant's business operations during the course of or after Landlord's construction of the New Development, then at Tenant's option and election, and upon written notice to Landlord given within one hundred twenty (120) days after Tenant's receipt of the Redevelopment Notice: (i) this Lease shall terminate effective as of the Redevelopment Date, or (ii) the term of this Lease shall temporarily toll during the course of the construction of the New Development, and the term shall resume upon substantial completion of the New Development by Landlord. In the event Tenant does not elect to terminate this Lease pursuant to the terms of the preceding sentence, then upon substantial completion of the New Development, Tenant shall be provided a ninety (90) day period (the "Build-Out Period") in which to build-out its Premises in the New Development, and Tenant shall not be obligated to pay any base rent or additional rent during such Build Out Period. Notwithstanding the foregoing, once completed, the New Development shall not adversely affect the accessibility to and/or the visibility of the Premises or Tenant's signage. Tenant's square footage in the Premises shall not be reduced or unreasonably increased beyond Tenant's need for the conduct of the Permitted Use in the Premises. Tenant shall not be required (by Landlord or the New Development) to relocate the

26

Premises to a different level, and the New Development shall not adversely affect the regular conduct of Tenant's business for the Permitted Use.

[Signature page to follow]

Case 17-03469-TOM7    Doc 95-2    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit B    Page 28 of 44

WITNESS WHEREOF, the parties hereto have hereunto subscribed their names and affixed their seals, on the day and year first hereinbefore mentioned, and in case either party is a corporation, its name has been hereunto subscribed and its seal hereunto affixed and attested by its duly authorized officers.

**LANDLORD:**

Good Hope Investments, LLC
Virginia Limited Liability Company

Date: 7/16/2014          By: _____ (SEAL)
                        Mossadaq Chughtai, Managing Member

**TENANT:**

MARYLAND LC VENTURES LLC.

Date: 7/29/14          By: _____
                        Managing Member with authorization to bind the entity

**Guarantors are executing this Lease for the purposes of acknowledging their commitments, covenants, warranties and promises contained therein and as Guarantors of the Lease in accordance with the Guarantees as set forth in Exhibit H hereof.**

Date: 7/23/14          _____
                        Wazir Kaisani, Guarantor

Date: 7/16/14          _____
                        Richard Ruggiero, Guarantor

Date: 7/23/14          _____
                        Pervez Kaisani, Guarantor

28

# Exhibit A



| | Suite 101 | 7-Eleven Corporation |
| --- | --- | --- |
| | Suite 102 | Little Caeser Pizza * |
| | Suite 103 | RAI Dialysis Center |



29

## Exhibit B

Base Rent Schedule

| Lease Years | Monthly Installment | Annual Rent |
|---|---|---|
| 1-5 | $4,497.00 | $53,964.00 |
| Options | | |
| 6-10 | $4,946.70 | $59,360.40 |
| 11-15 | $5,441.37 | $65,296.44 |

Case 17-03469-TOM7    Doc 95-2    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit B    Page 31 of 44

## Exhibit C

## Certificate of Commencement of Lease

1.  Possession Date: Tenant accepted possession of the Premises on_____.

2.  Lease Commencement Date is_____. The Rent Commencement Date is_____.

3.  Initial Term Expiration Date. The Initial Term expiration date is_____subject to earlier termination or extension pursuant to the Lease.

4.  Lease Year. The first Lease Year commenced on_____and ends on_____. Each subsequent Lease Year commences on_____1, and ends on.

5.  Options to Extend. Tenant has the following right to extend the Term:

| Option | Period | Last Date for Notice |
|---|---|---|
| First Option Second Option | 5 years 5 years | |

In the event Tenant does not exercise its Option(s) to extend in a timely manner, the term will expire on_____or_____as the case may be.

**LANDLORD:**

Good Hope Investments, LLC
Virginia Limited Liability Company

Date: 7/16/20 16

By: _____(SEAL)
Mossadaq Chughtai, Managing Member

**TENANT:**

MARYLAND LC VENTURES LLC.

Date: 7/16/16

By: _____ Managing
Member with authorization to bind the entity

31

## **Exhibit D**

### Landlord's Work

Tenant shall accept the Premises in "as is" condition, provided the same is structurally sound, in good condition and repair, in compliance with applicable laws and free of actionable hazardous substances and the roof is in the condition required by Section 7.04. For the purposes of this lease, actionable hazardous substances shall be defined as materials and or substances not encapsulated or otherwise not in compliance with local or federal law.

## **Exhibit E**

### Exclusive Items

Tenant shall have the right to sell beverages to the extent provided in Section 8.01 of the Lease.

Tenant's use of the Premises is limited by the Exclusive Uses granted to 7-Eleven Corporation in paragraph 26 of its lease with the Landlord. A copy of paragraph 26 will be given to Tenant upon its written reques

33

Depictions of Proposed Signage.

# Little Caesar's Sign Options

LANDLORD TO INITIAL EACH OPTION ALLOWED



**Option A – Logo & Letters – Raceway Mounted Sign**



**Option B – Logo & Letters – Flush Mounted Sign**

**Option C – Letters Only – Raceway Mounted Sign**

**Option D – Letters Only – Flush Mounted Sign**

Case 17-03469-TOM7    Doc 95-2    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit B    Page 35 of 44

## Exhibit G

Subordination/Lien Waiver Agreement

## Exhibit H

### Form of Personal Guaranty

In consideration of that certain Lease Agreement between Good Hope Investments LLC ("Landlord") and Maryland LC Ventures LLC ("Tenant") dated the _____ day of _____, 2014, (said Lease Agreement, as heretofore or hereafter supplemented, amended, restated, renewed, extended, replaced or modified, is hereinafter referred to as the "Lease"), and to induce Landlord to enter into said Lease, and in further consideration of the sum of ten dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned (the "Guarantor"), and the undersigned's legal representatives, successors and assigns, does hereby unconditionally guaranty to Landlord, its successors and assigns, the full and faithful performance and observance by Tenant, its successors and assigns, of all the terms, covenants, conditions and agreements of the Lease including, but not limited to, the payment of all Rent and other sums due under the Lease. Guarantor agrees and covenants with Landlord, **but expressly subject to the limitations set forth in Paragraph (w) through (y) below,** as follows:

(a)     that Guarantor hereby unconditionally, absolutely and irrevocably guarantees to the Landlord the full, prompt and punctual payment of any and all Rent and other amounts that may be or become due to Landlord from time to time under the Lease and will  timely, completely and truly perform all of the terms and covenants in the Lease to be performed or to be paid by Tenant thereunder and, in addition, will pay all damages, claims, liabilities, costs and expenses that may arise in consequence of a Default under the Lease, including all attorneys' fees and other costs that may be incurred by Landlord in enforcing Tenant's covenants and agreements set forth in the Lease, or in enforcing the covenants and agreements of the undersigned herein, all without requiring notice from Landlord of any such Default;

(b)     that Guarantor will indemnify and hold Landlord harmless from and against all damages, claims, liabilities, costs and expenses that may arise in consequence of a Default under the Lease including, but not limited to, the failure to pay the Rent to Landlord;

(c)     that this is a guaranty of payment and not of collection;

36

(d)    that, at the option of Landlord, Guarantor may be joined in any action or proceedings commenced by Landlord against Tenant in connection with or based upon the Lease or any provision thereof, and that recovery may be had against the undersigned jointly, severally and in the alternative with other parties, in any such action or proceeding, or in any independent action or proceeding against Guarantor without any requirement that Landlord or its respective successors or assigns first assert, prosecute or exhaust any remedy or claim against Tenant, its legal representatives, successors or assigns; all to the effect that the liability of the Guarantor hereunder shall be deemed joint and several;

(e)    that each Default under the Lease shall give rise to a separate cause of action, and separate suits may be brought hereunder as each cause of action arises;

(f)    that, in the event of any bankruptcy, liquidation, reorganization, winding-up, or similar proceeding with respect to Tenant, no limitation on Tenant's liability under the Lease may now or hereafter be imposed by any federal, state or other statute, law or regulation applicable to such proceedings shall in any way limit the Guarantor's obligation hereunder, which obligation is coextensive with Tenant's liability as set forth in the Lease, without regard to any such statutory limitation; and if at any time all or any part of any payment applied by Landlord to any of Tenant's liabilities is rescinded or returned by Landlord for any reason whatsoever (including, without limitation, the insolvency, bankruptcy, liquidation or reorganization of any other party), such liabilities shall, for the purposes of this Lease Guaranty, be deemed to have continued in existence to the extent of such payment, notwithstanding such application by Landlord, and this Lease Guaranty shall continue to be effective or be reinstated, as the case may be, as to such liabilities in addition to any legal fees incurred by Landlord associated therewith, all as though such application by Landlord had not been made;

(g)    that this continuing Lease Guaranty is absolute, present and unconditional and shall remain in full force and effect and shall extend to any renewal, extension, indulgence, modification or amendment of the Lease, to any Tenant holdover period, and to any assignment, subletting or other transfer of Tenant's interest under the Lease, whether or not Guarantor consented thereto and regardless of the materiality thereof;

(h)    that, without affecting, modifying, altering, releasing or limiting the liability of the Guarantor or any other person liable or who may become liable under the Lease, or who may have assumed or guaranteed the Lease, the following actions may be taken by Landlord without further notice to or consent of the Guarantor, either before or after a Default: (i) any one or more parties liable under the Lease or who may have guaranteed the Lease may be released; (ii) Landlord may fail to act with diligence or may delay in the collection of the Rent or in the enforcement of the terms, covenants and conditions of the Lease; and (iii) no action in seeking the consent of the Guarantor of any actions or modifications of the Lease shall be deemed a waiver of Landlord's right to take such actions without notice to the Guarantor;

(i)    that the validity of this Lease Guaranty and the obligations of the Guarantor hereunder shall in no way be terminated, limited, diminished, affected or impaired by reason of

Case 17-03469-TOM7    Doc 95-2    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit B    Page 38 of 44

any action which Landlord might take or be forced to take against Tenant, or by reason of any waiver of or failure to enforce any of the rights or remedies reserved to Landlord in the Lease, at law, in equity or otherwise, or by the repossession by Landlord of the premises leased to Tenant pursuant to the Lease (the "Leased Premises") or by reason of any defense, right of setoff or claim which Tenant or Guarantor may have against Landlord;

(j)     that the obligations of Guarantor, if more than one party, are joint and several and shall be fully valid and binding as against each signatory hereto individually whether or not any other party or parties hereto have executed this Lease Guaranty, it being specifically understood that said signatures are not mutually dependent;

(k)     that the interest of Landlord under this Lease Guaranty may be assigned by it, by way of security or otherwise, with or without notice to Guarantor;

(l)     that Guarantor waives notice of the acceptance of this Lease Guaranty. and of any and all defaults under the Lease, and waives any right to require that any action be brought against Tenant or against any other security for the Lease;

(m)     that Guarantor waives notice of any and all other notices or demands which may be given by Landlord to Tenant, whether or not required to be given to Tenant under this Lease;

(n)     that, with respect to payments made by Guarantor hereunder, Guarantor shall not have any rights based on suretyship, subrogation or otherwise to stand in the place of Landlord as to compete with Landlord as a creditor of Tenant and Guarantor hereby waives all such rights to the fullest extent permitted by law;

(o)     that any indebtedness of Tenant to Guarantor (the "Subordinated Debt") now or hereafter existing is hereby subordinated to the liabilities of Guarantor to Landlord hereunder and until the full, final and unavoidable payment of all such liabilities, Guarantor will not seek, accept or retain for Guarantor's account any payment from Tenant on account of any Subordinated Debt, and payments to Guarantor on account of the Subordinated Debt shall be collected and received by Guarantor in trust for Landlord and shall be paid over to Landlord on account of such liabilities without impairing or releasing the obligations of Guarantor hereunder;

(p)     that Guarantor hereby submits to personal jurisdiction in the state where the Leased Premises are located for the enforcement of this Lease Guaranty, and waives any and all rights under the laws of any state or the United States to object to jurisdiction within the state where the Leased Premises are located for the purposes of litigation to enforce this Lease Guaranty. Guarantor agrees and consents that in addition to any methods of service of process provided by applicable law, all such service of process and any suit, action, or proceeding may be made by certified or registered mail, return receipt requested, directed to Guarantor at Guarantor's last known address, and service so made shall be complete upon receipt thereof; provided, however, that if Guarantor shall refuse to accept delivery thereof or if the notice is unclaimed, service shall be deemed complete five days after the same shall have been so mailed;

(q)     that, if any term or provision of this Guaranty, or the application thereof to any person or circumstance, shall be invalid or unenforceable, the remainder of this Lease Guaranty, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Guaranty shall be valid and enforced to the fullest extent permitted by law;

(r)     that any act of Landlord, or of the successors or assigns of Landlord, consisting of a waiver of any of the terms or conditions of the Lease, or the giving of any consent to any manner or thing relating to the Lease, or the granting of any indulgences or extensions of time to Tenant, may be done without notice to Guarantor and without releasing the obligations of Guarantor hereunder;

(s)     that the obligations of Guarantor hereunder shall not be released by Landlord's receipt, application or release of security given for the performance and observance of covenants and conditions in the Lease contained on Tenant's part to be performed or observed;

(t)     that this Lease Guaranty may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by the Guarantor and the Landlord;

(u)     THAT IN ANY ACTION OR PROCEEDING BROUGHT ON, UNDER OR BY VIRTUE OF THIS LEASE GUARANTY OR THE LEASE, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS GIVEN KNOWINGLY AND INTELLIGENTLY WITH THE FULL KNOWLEDGE AND UNDERSTANDING THAT ANY LEGAL ACTION BROUGHT WILL BE DECIDED BY A JUDGE AS OPPOSED TO A JURY; AND

(v)     that Guarantor hereby certifies it has read the Lease and understands the terms and conditions contained therein. The use of the singular herein shall include the plural. Each term used in this Lease Guaranty, unless otherwise defined herein, shall have the same meaning as when used in the Lease. This Lease Guaranty shall be construed, and all disputes, claims, and questions arising hereunder shall be determined, in accordance with the laws of the state within which the Shopping Center, as defined in the Lease, is located.

(w)     **Notwithstanding anything to the contrary contained herein, Guarantor's liability for Rent hereunder shall not exceed an amount equal to thirty six (36) full calendar months of Rent, ("Guarantor Cap Amount") and all reasonable costs of enforcement of this Guaranty. Provided that Tenant is not in Default in the performance of its obligations under the Lease at the end of the fifth (5th) Lease Year of the original Term, then commencing as of the first day of the sixth (6th) Lease Year and thereafter, the Guarantor Cap Amount shall be reduced to twelve (12) full calendar months of Rent and all reasonable costs of enforcement of this Guaranty**

(x)     **In the event of an Assignment (pursuant to Section 8.20 of the Lease that does not require Landlord's consent the liability of the Guarantors shall terminate upon the effective date of the Assignment, regardless of any liability of Tenant thereunder.**

Case 17-03469-TOM7    Doc 95-2    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit B    Page 40 of 44

(y)  Notwithstanding anything contained in this Guaranty or Lease to the contrary, in all events Guarantors shall be entitled to the same notice and, if applicable, cure periods as provided to the current or future assignee Tenant under the Lease or applicable law.

IN WITNESS WHEREOF, the undersigned has caused this Lease Guaranty to be executed under seal as of the 23rd day of July, 2014

GUARANTOR:

WITNESS:

_____
(SEAL)

_____

_____

_____

40

(y)  Notwithstanding anything contained in this Guaranty or Lease to the contrary, in all events Guarantors shall be entitled to the same notice and, if applicable, cure periods as provided to the current or future assignee Tenant under the Lease or applicable law.

IN WITNESS WHEREOF, the undersigned has caused this Lease Guaranty to be executed under seal as of the 23rd day of July, 2014

WITNESS:                                     GUARANTOR:

_____              _____
(SEAL)                                       _____
                                             _____

40

(y) Notwithstanding anything contained in this Guaranty or Lease to the contrary, in all events Guarantors shall be entitled to the same notice and, if applicable, cure periods as provided to the current or future assignee Tenant under the Lease or applicable law.

IN WITNESS WHEREOF, the undersigned has caused this Lease Guaranty to be executed under seal as of the _18th_ day of _July_____, 2014

WITNESS:                                    GUARANTOR:

_____            _____
(SEAL)

STEPHEN WADE COFFEY
Notary Public
Anne Arundel County
Maryland
My Commission Expires Mar. 21, 2018

                                            _____

                                            _____

# LANDLORD/LIENHOLDER WAIVER

The undersigned is the owner of, or has a mortgage lien or other interest in, the following real property (the "Premises"):

### 1918, 14th Street , SE, Washington DC 20020

Bank of the Ozarks P.O. Box 242208 Little Rock, AR 72223-2208 ("Secured Party") has or may, from time to time, extend credit to_____. ("Debtor"), secured by or relating to personal property which is or will be installed and/or located on the Premises (the "Personal Property").
With knowledge that Bank of the Ozarks or its assigns has extended or may extend credit to Debtor in reliance upon the existence of this Waiver, the undersigned: (a) disclaims any present  or future interest in the Personal Property, (b) waives all right to levy or distrain, at any time,  upon the Personal Property, (c) consents to entry by Bank of the Ozarks or its assigns upon the  Premises for the purpose of removing the Personal Property therefrom, and (d) agrees to cooperate with Bank of the Ozarks or its assigns in order to facilitate such removal.

Bank of the Ozarks shall be responsible for any damage to the Premises that Bank of the Ozarks causes in connection with its entry thereon and removal of the Personal Property. This Waiver  shall be binding upon the heirs, personal representatives, successors and assigns of the  undersigned and shall inure to the benefit of Bank of the Ozarks and its successors and assigns.

LANDLORD___X_____    or LIENHOLDER _____  (indicate one)


**Good Hope Investments, LLC, 9109 Leuky Estates Drive, Vienna, VA 22182**
Print Name and Address of Landlord or Lienholder on Above Line

By: _Mossadaq Chughtai_____

Name: _Mossadaq Chughtai_____

Title: _Managing Member_ Date: ___August 4, 2014_____

## NOTARY ACKNOWLEDGEMENT

STATE OR COMMONWEALTH OF: _Virginia_____

COUNTY OF: _Fairfax_____

Before me, a Notary Public in and for said County and State or Commonwealth, on this day  personally appeared, known to me to be the person whose name is subscribed to the foregoing  instrument, who acknowledged that he or she executed said instrument as his or her free and  voluntary act and, if subscribed as a partner of a partnership or an officer of a corporation, as the  free and voluntary act of such partnership or corporation.

Given under my hand and Notarial Seal this _4th_ day of _August_ _2014_

_Miriam Abbasi_  _8/4/14_
Notary Public

```
MIRIAM ABBASI
Notary Public
Commonwealth of Virginia
7209513
My Commission Expires Apr 30, 2017
```