# Exhibit F

# LITTLE CAESAR ENTERPRISES, INC.

## FRANCHISE AGREEMENT

Approved Location:   950 Largo Center Dr.

Upper Marlboro, MD 20774

Effective Date:   _2 · 12 · 2016_

Expiration Date:   _2 · 12 · 2026_
[10 years from Opening Date]

Franchisee:   **MARYLAND LC VENTURES, LLC**

Ownership:   See Exhibit B

2015 Franchise Agreement/PK 89345

# LITTLE CAESAR ENTERPRISES, INC.

## FRANCHISE AGREEMENT

### TABLE OF CONTENTS

RECITALS ........................................................................................................................... 1

1. **GRANT** ....................................................................................................................... 2
   - 1.1. Franchise Grant ............................................................................................... 2
   - 1.2. Location of Restaurant ..................................................................................... 2
   - 1.3. Territorial Protection ........................................................................................ 2
   - 1.4. Exclusions from Territorial Protection ............................................................. 2
   - 1.5. No Customer Exclusivity .................................................................................. 3
   - 1.6. Modifications to System ................................................................................... 3

2. **TERM AND RENEWAL** ............................................................................................. 3
   - 2.1. Initial Term of Franchise .................................................................................. 3
   - 2.2. Renewal Term of Franchise ............................................................................. 3

3. **FEES** ......................................................................................................................... 4
   - 3.1. Franchise Fee ................................................................................................... 4
   - 3.2. Royalty Fee ...................................................................................................... 4
   - 3.3. Advertising Fee ................................................................................................ 4
   - 3.4. Time and Manner of Payment; Late Fee .......................................................... 4
   - 3.5. Reimbursement of Monies Paid on Behalf of Franchisee ................................ 5
   - 3.6. No Set-off; Application of Payments; Refundability ........................................ 5

4. **DUTIES OF LITTLE CAESAR** ................................................................................... 5
   - 4.1. Furnishing Prototype Plans .............................................................................. 5
   - 4.2. Site Selection Assistance ................................................................................. 5
   - 4.3. Loan of Confidential Operating Manuals .......................................................... 6
   - 4.4. Training ............................................................................................................ 6
   - 4.5. Marketing, Management, and Operational Assistance ...................................... 6
   - 4.6. Inspections and Evaluations ............................................................................ 6
   - 4.7. Relationship to Other Little Caesar Businesses ............................................... 6

5. **DUTIES OF FRANCHISEE** ........................................................................................ 7
   - 5.1. Importance of Compliance with System Standards .......................................... 7
   - 5.2. Use of Restaurant Premises ............................................................................. 7
   - 5.3. Conformance to System Standards ................................................................... 7
   - 5.4. Approved Suppliers .......................................................................................... 8
   - 5.5. Maintenance of Restaurant Premises ............................................................... 8
   - 5.6. Refurbishing the Restaurant ............................................................................. 8
   - 5.7. Access to Restaurant ........................................................................................ 8
   - 5.8. Franchisee Training .......................................................................................... 9
   - 5.9. Franchisee Employee Policy ............................................................................ 9
   - 5.10. Franchisee Lease Provisions .......................................................................... 10
   - 5.11. Furnishing Lease to Little Caesar .................................................................... 10
   - 5.12. Pricing ............................................................................................................. 10
   - 5.13. Promotional Activities ..................................................................................... 10
   - 5.14. Compliance with Governmental Requirements ................................................ 11
   - 5.15. Notification of Legal Proceedings ................................................................... 11
   - 5.16. Attendance at Meetings, Seminars and Conferences ....................................... 11

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 3 of 44

|  | 5.17. | Franchisee Developments | 11 |
|  | 5.18. | Participation in Franchisee Advisory or Other Committees | 12 |
|  | 5.19. | Computer System and Required Software | 12 |
|  | 5.20. | Payment Systems | 12 |
|  | 5.21. | Data Ownership | 12 |
|  | 5.22. | Data Security | 13 |
|  | 5.23. | Privacy | 13 |
|  | 5.24. | Extranet | 13 |
|  | 5.25. | Websites | 13 |
|  | 5.26. | Ownership of Domain Names | 14 |
|  | 5.27. | Electronic Marketing and Electronic Communications | 14 |
|  | 5.28. | No Outsourcing without Prior Written Approval | 15 |
|  | 5.29. | Changes to Technology | 15 |
| **6.** | **CONSTRUCTION OF LEASEHOLD IMPROVEMENTS** | | **15** |
|  | 6.1. | Obligation to Construct Leasehold Improvements | 15 |
|  | 6.2. | Securing Governmental Approvals | 15 |
|  | 6.3. | Employment of a Qualified Architect or Engineer | 15 |
|  | 6.4. | Employment of a Qualified Contractor | 15 |
|  | 6.5. | Franchisee Responsible | 16 |
|  | 6.6. | Construction of Leasehold Improvements and Securing Approval to Open | 16 |
|  | 6.7. | Opening Deadline; Time of the Essence | 16 |
|  | 6.8. | Relocation | 16 |
|  | 6.9. | Construction Insurance | 16 |
| **7.** | **PROPRIETARY MARKS** | | **17** |
|  | 7.1. | Little Caesar Representations Concerning Proprietary Marks | 17 |
|  | 7.2. | Franchisee Use of Proprietary Marks | 17 |
|  | 7.3. | Franchisee Representations Concerning Proprietary Marks | 18 |
| **8.** | **CONFIDENTIAL MANUALS AND INFORMATION** | | **19** |
|  | 8.1. | Keeping Manuals Confidential | 19 |
|  | 8.2. | Keeping Manuals Current | 19 |
|  | 8.3. | Protection of Confidential Information | 19 |
|  | 8.4. | Irreparable Injury from Disclosure of Confidential Information | 19 |
|  | 8.5. | Confidentiality Agreements from Associates of Franchisee | 20 |
| **9.** | **ADVERTISING** | | **20** |
|  | 9.1. | Amounts and Recipients of Advertising Contribution | 20 |
|  | 9.2. | CAESAR FUND | 20 |
|  | 9.3. | Advertising Cooperatives | 21 |
|  | 9.4. | Little Caesar Approval of Advertising | 22 |
|  | 9.5. | Grand Opening Advertising | 22 |
|  | 9.6. | Copyrights and Other Rights | 22 |
|  | 9.7. | Advertising for Prospective Franchisees | 23 |
|  | 9.8. | Little Caesar Advertising | 23 |
|  | 9.9. | Ownership of Advertising | 23 |
| **10.** | **INSURANCE** | | **23** |
|  | 10.1. | Franchisee's Insurance Obligation | 23 |
|  | 10.2. | Franchisee's Insurance Obligation Not Affected by Little Caesar's Insurance | 23 |
|  | 10.3. | Additional Required Endorsements | 23 |
|  | 10.4. | Certificates of Insurance | 24 |

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 4 of 44

|  | 10.5. | Little Caesar's Right to Secure Insurance on Behalf of Franchisee | 24 |
|---|---|---|---|
| **11.** | **ACCOUNTING AND RECORDS** | | **24** |
|  | 11.1. | Maintenance of Records | 24 |
|  | 11.2. | Submission of Financial Statements and Tax Returns | 24 |
|  | 11.3. | Submission of Periodic Reports | 24 |
|  | 11.4. | Submission of Additional Reports | 25 |
|  | 11.5. | Right to Audit Franchisee Records | 25 |
| **12.** | **TRANSFER OF INTEREST** | | **25** |
|  | 12.1. | Transfer by Little Caesar | 25 |
|  | 12.2. | Transfer by Franchisee | 25 |
|  | 12.3. | Prohibited Transfers | 27 |
|  | 12.4. | Execution of Covenants by Transferee | 27 |
|  | 12.5. | Little Caesar's Right of First Refusal | 28 |
|  | 12.6. | Death or Mental or Physical Incapacity | 28 |
|  | 12.7. | Approval of Sale Does Not Constitute Waiver of Rights | 28 |
|  | 12.8. | Private Sale of Securities | 29 |
|  | 12.9. | Transfer by Franchisee Bankruptcy - Right of First Refusal | 29 |
| **13.** | **DEFAULT AND TERMINATION** | | **30** |
|  | 13.1. | Termination Upon Occurrence of Bankruptcy or Insolvency | 30 |
|  | 13.2. | Termination with Notice and Without Right to Cure | 30 |
|  | 13.3. | Termination with Notice and Opportunity to Cure | 32 |
|  | 13.4. | Cross-Default | 32 |
|  | 13.5. | Cross-Guarantee | 32 |
|  | 13.6. | Extension of Cure Period by Operation of Law | 32 |
|  | 13.7. | Cumulative Remedies | 33 |
| **14.** | **OBLIGATIONS UPON TERMINATION OR EXPIRATION** | | **33** |
|  | 14.1. | Cessation of Restaurant Operations | 33 |
|  | 14.2. | Cessation of Use of Confidential Information and Proprietary Marks | 33 |
|  | 14.3. | Cancellation of Assumed Name Registration | 33 |
|  | 14.4. | Occupancy of Restaurant Premises | 33 |
|  | 14.5. | No Similar Marks | 34 |
|  | 14.6. | Franchisee Payment of Debts | 34 |
|  | 14.7. | Liquidated Damages for Non-Compliance; Payment of Little Caesar's Costs in Securing Compliance | 34 |
|  | 14.8. | Liquidated Damages Upon Termination Due to Franchisee's Default | 35 |
|  | 14.9. | Franchisee Return of Manuals and Other Materials | 35 |
|  | 14.10. | Little Caesar Right to Purchase Franchisee Assets | 35 |
|  | 14.11. | Future Communications | 36 |
| **15.** | **COVENANTS** | | **36** |
|  | 15.1. | Franchisee to Devote Full Time and Best Efforts to Restaurant | 36 |
|  | 15.2. | Non-Competition During Term of Agreement | 36 |
|  | 15.3. | Non-Competition After Term of Agreement | 36 |
|  | 15.4. | Breach of Covenants Cause Irreparable Injury | 37 |
|  | 15.5. | Little Caesar Right to Reduce Scope of Covenants | 37 |
|  | 15.6. | Covenants Reasonable | 37 |
|  | 15.7. | Enforceability of Covenants Not Affected by Franchisee Claims | 37 |
|  | 15.8. | Commitments from Individuals | 37 |
| **16.** | **FRANCHISEE AS A CORPORATION, PARTNERSHIP OR LLC** | | **37** |

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 5 of 44

| | | |
|---|---|---|
| **16.1.** | Corporate Franchisee | 37 |
| **16.2.** | Partnership Franchisee | 38 |
| **16.3.** | Limited Liability Company Franchisee | 38 |
| **16.4.** | Direct and Indirect Owners to Execute Personal Guarantees | 38 |
| **17.** | **TAXES** | **38** |
| **17.1.** | Payment of Taxes | 38 |
| **17.2.** | Challenging Tax Assessment | 38 |
| **18.** | **INDEPENDENT CONTRACTOR AND INDEMNIFICATION** | **38** |
| **18.1.** | No Fiduciary Relationship | 38 |
| **18.2.** | Public Notice of Independent Status | 39 |
| **18.3.** | Independent Contractor | 39 |
| **18.4.** | Indemnification | 39 |
| **19.** | **APPROVALS AND WAIVERS** | **39** |
| **19.1.** | No Guarantees or Waiver | 39 |
| **19.2.** | Requests for Waivers, Approvals or Consents | 40 |
| **19.3.** | Little Caesar's Reasonable Business Judgment | 40 |
| **19.4.** | Remedy for Non-Approval | 40 |
| **19.5.** | Atypical Modifications to System | 40 |
| **20.** | **NOTICES** | **40** |
| **21.** | **ENTIRE AGREEMENT; MODIFICATIONS** | **41** |
| **21.1.** | Entire Agreement | 41 |
| **21.2.** | Modification of Agreement Approved by Majority of Franchised Restaurants | 41 |
| **22.** | **SEVERABILITY AND CONSTRUCTION** | **42** |
| **22.1.** | Severability and Construction | 42 |
| **22.2.** | Survival of Modified Covenants | 42 |
| **22.3.** | Survival of Obligations After Expiration of Agreement | 42 |
| **22.4.** | Captions | 42 |
| **22.5.** | Affiliate and Principal Defined | 42 |
| **22.6.** | Time of the Essence | 42 |
| **23.** | **DISPUTE RESOLUTION; LIMITATION ON LEGAL RIGHTS** | **42** |
| **23.1.** | Choice of Law | 42 |
| **23.2.** | Venue | 43 |
| **23.3.** | Non-exclusivity of Remedy | 43 |
| **23.4.** | Right to Injunctive Relief | 43 |
| **23.5.** | WAIVER OF TRIAL BY JURY | 43 |
| **23.6.** | LIMITATION OF CLAIMS | 43 |
| **23.7.** | WAIVER OF PUNITIVE DAMAGES | 43 |
| **23.8.** | NO CLASS ACTIONS | 43 |
| **23.9.** | Costs and Legal Fees | 44 |
| **24.** | **ACKNOWLEDGMENTS AND REPRESENTATIONS** | **44** |
| **24.1.** | Recognition of Business Risks | 44 |
| **24.2.** | Receipt of Franchise Offering Materials | 44 |
| **24.3.** | Review of Franchise Offering Materials | 44 |
| **24.4.** | Uniformity of Agreements | 45 |
| **24.5.** | No False Statements | 45 |
| **24.6.** | No Conflicting Agreements | 45 |
| **24.7.** | No Other Beneficiaries | 45 |

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 6 of 44

| | 24.8. | Terrorist and Money Laundering Activities | 45 |
|---|---|---|---|
| **25.** | **AMENDMENT OF PRIOR AGREEMENTS** | | **46** |
| | 25.1. | California Material Modification for California Stores Only | 46 |
| | 25.2. | Amendment of Prior Agreements | 46 |

**Exhibits**

Exhibit A – Guarantee

Exhibit B – Ownership Information Form

Case 17-03469-TOM7     Doc 95-9     Filed 09/05/17     Entered 09/05/17 15:32:05     Desc
Exhibit Exhibit F     Pt. 1     Page 7 of 44

# LITTLE CAESAR ENTERPRISES, INC.

## FRANCHISE AGREEMENT

**THIS FRANCHISE AGREEMENT** ("**Agreement**") is made by and between **Little Caesar Enterprises, Inc.**, a Michigan corporation with its principal place of business at 2211 Woodward Avenue, Detroit, Michigan 48201 ("**Little Caesar**"), and **MARYLAND LC VENTURES, LLC** with its principal place of business at 1809 Harewood Lane Crofton, Maryland 21114 ("**Franchisee**"). The effective date of this Agreement ("**Effective Date**") is the date inserted on the cover page by Little Caesar upon Little Caesar's execution of this Agreement.

## RECITALS

A.      Little Caesar, as the result of the expenditure of time, skill, effort, and money, has developed several restaurant concepts, each of which offers to the public a wide variety of pizza and related items.

B.      Each restaurant concept includes technical information and expertise relating to the preparation and production of food products; the use of special spices, sauces, and pizza dough, all of which constitute trade secrets and are identified by the public with Little Caesar products; special recipes and menu items; prescribed exterior and interior design, decor, fixtures, and furnishings; standards and specifications for products and supplies; service standards; standards, specifications, and procedures for operations; training and assistance; and advertising and promotional programs (collectively, "**Operational Plans**"); all of which may be changed, improved, and further developed by Little Caesar from time to time.

C.      Each restaurant concept will utilize Little Caesar's Operational Plans, portions of which are the same or similar to the Operational Plans provided by Little Caesar to other restaurant concepts, and portions of which are used by Little Caesar only with the specific restaurant concept. The Operational Plans utilized by the specific restaurant concept to be licensed to Franchisee pursuant to this Agreement are hereinafter referred to as the "**System**."

D.      Little Caesar identifies its restaurant concepts by means of certain trade names, service marks, trademarks, trade dress, logos, emblems, and indicia of origin ("**Marks**") as are now or may hereinafter be designated by Little Caesar. Each restaurant concept will use certain Marks which are used only with that concept as well as share other such Marks with other restaurant concepts. The Marks to be utilized by the specific restaurant concept to be licensed to Franchisee pursuant to this Agreement are hereinafter referred to as "**Proprietary Marks**."

E.      Franchisee desires to enter into the business of operating a "Little Caesars" restaurant utilizing the System and using the Proprietary Marks, and wishes to enter into an agreement with Little Caesar for that purpose, and to receive the training and other assistance provided by Little Caesar in connection therewith.

F.      Franchisee acknowledges that Little Caesar franchises and operates other restaurant businesses, some of whose products are similar to those to be offered pursuant to this Agreement.

G.      Franchisee understands and acknowledges the importance of Little Caesar's high standards of quality, cleanliness, appearance, and service and of Little Caesar's proprietary products and ingredients (including without limitation spices, sauces, and dough), and the necessity of operating Franchisee's business in conformity with Little Caesar's standards and specifications.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 8 of 44

The parties agree as follows:

1.  **GRANT**

    **1.1.  Franchise Grant**.  Little Caesar hereby grants to Franchisee the right, and Franchisee accepts the obligation, to use the Proprietary Marks and System solely in connection with the operation of a "Little Caesars" restaurant ("**Restaurant**" or "**Franchised Business**") and any activities associated with the Restaurant.

    **1.2.  Location of Restaurant**.  The Restaurant shall be operated only at a single location approved by Little Caesar ("**Approved Location**").  The exact street address of the Approved Location is shown on the cover page.  If, at the time of execution of this Agreement, a location for the Restaurant has not been approved by Little Caesar, Franchisee shall lease or acquire a location approved by Little Caesar within sixty (60) days after the Effective Date of this Agreement and, upon Little Caesar's approval, the address of the location shall be inserted on the cover page as the Approved Location.  Any site selection assistance or approvals furnished by Little Caesar before or after executing this Agreement shall not be deemed to be a guarantee, assurance, or representation by Little Caesar that a Restaurant will be profitable or successful at the Approved Location.  Franchisee shall not relocate the Restaurant from the Approved Location except in accordance with Section 6.8 below.

    **1.3.  Territorial Protection**.  During the term of this Agreement, unless stated otherwise in an addendum to this Agreement and except as otherwise provided in Section 1.4, Little Caesar shall not establish or operate, or franchise others to establish or operate, a business using the Proprietary Marks and System at any location within the geographical area enclosed within a circle which: (a) is drawn around the Approved Location; (b) has the Approved Location at its center; and (c) has a radius of one (1) mile ("**Protected Territory**").  Notwithstanding the foregoing, if the Approved Location is within any of the five boroughs of the City of New York, New York, there is no Protected Territory.

    **1.4.  Exclusions from Territorial Protection**.  Franchisee expressly acknowledges and agrees that, except as provided in Section 1.3, the franchise is non-exclusive.  Little Caesar and any Little Caesar affiliate (as the term "**affiliate**" is defined in Section 22.5) retain the right, among others, in any manner and on any terms and conditions Little Caesar deems advisable, and without granting Franchisee any rights therein:

    1.4.1.  to own, acquire, establish, and/or operate, and license others to establish and operate, businesses using the Proprietary Marks and System (i) outside the Protected Territory, and (ii) inside the Protected Territory on food trucks and other mobile units and in arenas, sports stadiums, sports complexes, shopping malls, food courts, department stores, retail and convenience stores, hotels, casinos, amusement parks, arcades, theaters, bowling centers, festivals, fairs, schools, colleges, national parks, state and local parks, public beaches, convention centers, conference centers, factories, hospitals, penal institutions, airports, train stations, public transit stations, cruise ship ports, turnpikes, military bases, government buildings, office complexes, high-rise apartment buildings, senior living facilities, Indian reservations, and other premises where the primary activity conducted at the premises is other than the retail sale of food prepared for immediate consumption (**"Non-Traditional Restaurants"**).

    1.4.2.  to own, acquire, establish and/or operate, and license others to establish and operate, other restaurant concepts now or hereinafter offered by Little Caesar, as well as businesses under proprietary marks other than the Proprietary Marks or other systems, whether such restaurant concepts or businesses are similar to or different from the Restaurant, at any location within or outside the Protected Territory; and

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 9 of 44

1.4.3.    to sell or distribute, at retail or wholesale, directly or indirectly, or license others to sell or distribute, any products under the Proprietary Marks or any other marks, at or from any location within the Protected Territory (except from a Little Caesars restaurant) or any location outside the Protected Territory.

**1.5.    No Customer Exclusivity**.  Franchisee expressly acknowledges that Franchisee has no exclusive rights with respect to customers located in the Protected Territory or elsewhere.  Subject to the System standards established by Little Caesar from time to time under Section 5, all Restaurants (regardless of ownership) may solicit and sell products to customers without regard to the customers' geographic location.

**1.6.    Modifications to System**.  Franchisee acknowledges that the System and the products and services offered by the Restaurant may be modified (such as, but not limited to, by the addition, deletion, and modification of menu items, operating procedures, ingredients, recipes, products and services) from time to time by Little Caesar; and Franchisee agrees to comply, at its expense, with all such modifications, including without limitation the replacement or renovation of equipment, remodeling, redecoration, modifications to existing improvements, and structural changes.

## 2.    TERM AND RENEWAL

**2.1.    Initial Term of Franchise**.  Except as otherwise provided herein, the term of this Agreement shall commence on the Effective Date and shall expire at 11:59 p.m. on the date of the tenth (10th) anniversary of the Opening Date of the Restaurant.  The "**Opening Date**" of the Restaurant shall be established by Little Caesar pursuant to Section 6.6 of this Agreement.

**2.2.    Renewal Term of Franchise**.  Franchisee may, at its option, renew this franchise for one renewal term of ten (10) years, subject to the following prerequisites:

2.2.1.    Franchisee shall give Little Caesar written notice of Franchisee's election to renew no fewer than six (6) months nor more than twelve (12) months prior to the end of the initial term;

2.2.2.    Franchisee shall renovate and modernize the Restaurant to conform to the then-current standards and image of the System, including, without limitation, renovation, replacement, or installation of signs, furnishings, fixtures, equipment, and decor;

2.2.3.    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Little Caesar and its affiliates.  Franchisee shall not be in default, either at the time of giving notice under Section 2.2.1 or during the remainder of the expiring term, of any provision of this Agreement, any amendment hereof or successor hereto, or any other agreement between Franchisee and Little Caesar or its affiliates, and in the judgment of Little Caesar, Franchisee shall have substantially and timely complied with all of the terms, conditions, and obligations of such agreements (including the mandatory elements of the Manuals, as defined in Section 4.3) during the terms thereof;

2.2.4.    Franchisee shall present satisfactory evidence that it has the right to remain in possession of the Approved Location for the duration of the renewal term, or shall obtain Little Caesar's approval of a new location, in accordance with Section 1.2, within any Protected Territory granted by this Agreement provided, however, that the Protected Territory, if any, created pursuant to Section 1.3 for the new Approved Location shall not conflict with any protected territory of any Little Caesars restaurant, and regardless of whether the restaurant is owned by a franchisee or Little Caesar or an affiliate;

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 10 of 44

2.2.5. Franchisee shall execute Little Caesar's then-current form of renewal franchise agreement, which agreement shall supersede this Agreement in all respects, and the terms of which may differ from the terms hereof and be less advantageous to Franchisee, except that no initial franchise fee shall be payable by Franchisee.

2.2.6. In Little Caesar's judgment, Franchisee has substantially and timely complied with Little Caesar's operating standards as set forth in the Manuals or otherwise in writing and has fulfilled minimum financial and marketing requirements.

2.2.7. Franchisee and all guarantors and owners of Franchisee shall have executed a general release, in a form satisfactory to Little Caesar, of any and all claims which any of them may have against Little Caesar, its affiliates, and their respective shareholders, directors, employees and agents, including without limitation, claims arising under federal, state, and local laws and regulations.

2.2.8. Franchisee shall be current with respect to its obligations to its lessor, suppliers, and any other third parties with whom Franchisee does business.

2.2.9. Franchisee shall have paid Little Caesar a renewal fee of Five Thousand Dollars ($5,000).

3. **FEES**

3.1. **Franchise Fee**. Franchisee shall pay to Little Caesar an initial franchise fee of $15,000.00. An initial franchise fee deposit of $5,000 is due and payable to Little Caesar within thirty (30) days after Little Caesar approves Franchisee's application to become a Little Caesar franchisee. The balance of the initial franchise fee is due and payable to Little Caesar at the earlier of (i) the date Franchisee submits a site evaluation plan to Little Caesar, or (ii) the date Franchisee signs this Agreement. The initial franchise fee shall be deemed fully earned and non-refundable when paid, in consideration of administrative and other expenses incurred by Little Caesar in entering into this Agreement, and for Little Caesar's lost or deferred opportunity to enter into an Agreement with others.

3.2. **Royalty Fee.** During the term of this Agreement, Franchisee shall pay to Little Caesar a continuing royalty fee in an amount equal to the greater of (i) six percent (6%) of the Gross Sales for the Restaurant for each one (1) week period, or such other period as Little Caesar may specify from time to time, or (ii) One Hundred Dollars ($100) per each one (1) week period. "**Gross Sales**" means revenue from the sale of all products and services and all other income or consideration of every kind and nature received by the Restaurant, including, without limitation, all revenues associated with delivering and/or selling products or services off-premises to customers, and any proceeds from business interruption insurance, whether for cash or credit, and regardless of collection in the case of credit, less any sales taxes or other taxes collected by Franchisee from its customers and thereafter paid directly to the appropriate taxing authority.

3.3. **Advertising Fee**. Franchisee shall make continuing expenditures and contributions to advertising and promotion as specified in Section 9 hereof.

3.4. **Time and Manner of Payment; Late Fee**. The continuing royalty and advertising fees pursuant to Sections 3.2, 3.3 and 9 are due weekly, or such other time period as Little Caesar may specify, in the manner prescribed by Little Caesar. Little Caesar shall have the right to require Franchisee to pay all amounts due to Little Caesar and/or its affiliates by electronic fund transfer, pre-authorized auto-draft arrangement ("**EFT**"), or such other methods as Little Caesar shall specify from time to time. Franchisee shall execute Little Caesar's then-current EFT Authorization form. Any payment not made to Little

Case 17-03469-TOM7   Doc 95-9   Filed 09/05/17   Entered 09/05/17 15:32:05   Desc
Exhibit Exhibit F   Pt. 1   Page 11 of 44

Caesar or its affiliates on or before the due date shall be deemed to be overdue; in such event, Franchisee shall pay Little Caesar or such affiliate, in addition to the overdue amount, Little Caesar's or the affiliate's then-current late fee for each unpaid invoice, plus interest on such overdue amount from the date it was due until paid, at the rate of eighteen percent (18%) per annum or the maximum rate permitted by law, whichever is less, calculated on a daily basis. Franchisee shall also reimburse Little Caesar for any bank charges resulting from any dishonored check or other payment. If Franchisee's weekly Gross Sales report required by Section 11.3 below is not received when due, (i) all payments owed by Franchisee for such time period shall be deemed overdue until such reports are received by Little Caesar, regardless of whether payment was actually made, and Franchisee shall be responsible for the applicable interest described in this Section 3.4; and (ii) Little Caesar will have the right to estimate Gross Sales and to draft from Franchisee's bank account the estimated amount due for royalties, CAESAR FUND contributions and any other charges. Upon receipt of the delinquent Gross Sales report, Little Caesar will reconcile any difference between the estimated amount and the actual royalties, CAESAR FUND contributions and other charges due for the period. In addition, if Franchisee's financial statements, tax returns, or other reports required by Section 11.2 or Section 11.3 below are not received when due, Franchisee shall pay Little Caesar its then-current late fee for each 30 days (or portion thereof) the financial statement, tax return or other report is overdue. Little Caesar's entitlement to late fees and interest under this Section 3.4 shall be in addition to any other remedies Little Caesar or the applicable affiliate may have.

**3.5.    Reimbursement of Monies Paid on Behalf of Franchisee**, Franchisee shall pay to Little Caesar, within ten (10) days of any written request by Little Caesar which is accompanied by substantiating material, any monies which Little Caesar has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

**3.6.    No Set-off; Application of Payments; Refundability**. Franchisee's obligations for the full and timely payment of the fees described in this Agreement are absolute and unconditional. Franchisee must not delay or withhold the payment of all or part of those fees based on the alleged non-performance by Little Caesar or for any other reason or put the fees in escrow or setoff against any claims Franchisee may allege against Little Caesar. Little Caesar may apply any payments received from Franchisee for royalty, advertising fees, purchases from Little Caesar or its affiliates, interest, late charges or any other obligation of Franchisee to Little Caesar or its affiliates to the obligation and in the manner chosen by Little Caesar, regardless of any other designation by Franchisee. Payment of all fees, contributions and other amounts will be deemed fully earned and nonrefundable on payment.

## 4.    DUTIES OF LITTLE CAESAR

**4.1.    Furnishing Prototype Plans**. Little Caesar shall make available, at no charge to Franchisee, prototype plans and specifications for the construction of a Restaurant, including exterior and interior design and layout.

**4.2.    Site Selection Assistance**. If no Approved Location has been selected at the time the Agreement is executed, then, at Franchisee's request, Little Caesar shall offer such assistance to Franchisee as Little Caesar deems appropriate in selecting a site for the Approved Location. Franchisee acknowledges that: (a) the location, selection, procurement and development of a site for the Restaurant are Franchisee's responsibility; (b) Franchisee's acceptance of the Approved Location was, or will be, based on Franchisee's own independent investigation of the site's suitability for the Restaurant; and (c) Little Caesar will not be responsible if the Restaurant fails to meet Franchisee's expectations as to revenue or other criteria. Franchisee acknowledges that Little Caesar has relied, or will rely, on Franchisee's knowledge of the local real estate market and Franchisee's ability to find a suitable site for the Restaurant.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 12 of 44

**4.3. Loan of Confidential Operating Manuals**. In order to protect the reputation and goodwill of Little Caesar, to maintain the standards of the products, services, programs, and operations offered and sold under Little Caesar's Proprietary Marks, and to promote the goodwill of all Restaurants and the System, Little Caesar has prepared a Confidential Operating Manual, Marketing Manual, and other manuals and materials (collectively, "**Manuals**"). Little Caesar shall loan one copy of the Manuals to Franchisee during the term of this Agreement or, in the alternative, provide Franchisee with access to the Manuals via Internet, Extranet, or other electronic means. The Manuals may be in multiple parts and consist of, in whole or in part, computer disks, DVDs, CD-ROMs, video, audio, computer software, other electronic media, and/or written materials. Franchisee acknowledges and agrees that Little Caesar has the right to revise the Manuals to incorporate System changes. Franchisee shall promptly implement any System changes upon receipt of notice thereof from Little Caesar, and shall complete their implementation within such time as Little Caesar may specify.

**4.4. Training**. Little Caesar shall offer at the time(s) and location(s) selected by it, a pre-opening training program to Franchisee and to those employees of Franchisee whom Little Caesar deems appropriate and, during the term of this Agreement, at the time(s) and location(s) selected by it, make available such other required and optional training programs as Little Caesar deems necessary and appropriate.

**4.5. Marketing, Management, and Operational Assistance**. Little Caesar shall provide such initial and continuing advice and assistance to Franchisee in the marketing, management, and operation of the Restaurant as Little Caesar deems appropriate, at the time(s) and in the manner determined by Little Caesar. In the event that Franchisee requests assistance in addition to that customarily furnished to franchisees, and Little Caesar chooses to furnish such assistance, then, in such event, Little Caesar shall have the option to impose a fee, plus expenses, for providing such assistance.

**4.6. Inspections and Evaluations**. Little Caesar shall conduct, when and as frequently as it deems appropriate, without notice to Franchisee, inspections of Franchisee's business premises and evaluations of the Restaurant management and operations, in order to assist Franchisee and to maintain the System's standards. Little Caesar may use designated agents, representatives, and outside consultants and vendors (including "mystery" or "secret" shoppers) to conduct such inspections, who shall have the right to take photographs, take video, remove samples of products, interview employees and customers, and inspect books, records, register tapes, and other documents relating to the operation of the Restaurant. Franchisee shall fully cooperate with such representatives during any such inspection.

**4.7. Relationship to Other Little Caesar Businesses**. In fulfilling its obligations to Franchisee, and in conducting any activities or exercising any rights pursuant to this Agreement, Little Caesar (and its affiliates) shall have the right (i) to take into account, as it sees fit, the effect on, and the interests of, other restaurants in which Little Caesar has an interest, and on Little Caesar's (and its affiliates') own activities; (ii) to share market and product research, and other proprietary and non-proprietary business information, with other restaurants in which Little Caesar has an interest, or with Little Caesar's affiliates; and/or (iii) to introduce products or operational equipment used by the System into other franchised systems in which Little Caesar has an interest, and to allocate new products and/or developments between and among systems, and/or Little Caesar's affiliates, as Little Caesar sees fit. Franchisee understands and agrees that all obligations of Little Caesar under this Agreement are subject to this Section 4.7, and that nothing in this Section 4.7 shall affect in any way Franchisee's obligations under this Agreement.

## 5. DUTIES OF FRANCHISEE

**5.1. Importance of Compliance with System Standards**. Franchisee understands and acknowledges that every detail of the System and the Restaurant is essential to Franchisee, Little Caesar, and other System franchisees in order to (i) develop and maintain quality and Little Caesar's operating standards, (ii) increase the demand for the products and services sold by all franchisees operating under the System, and (iii) protect Little Caesar's reputation and goodwill. Franchisee shall maintain Little Caesar's high standards with respect to facilities, services, products, and operations. The obligations of Franchisee under this Agreement shall also apply to affiliates and principals of Franchisee.

**5.2. Use of Restaurant Premises; Delivery and Off-Premises Sales**. Franchisee shall use and occupy the Restaurant premises solely for the operation of the business franchised hereunder, shall refrain from using or permitting the use of the premises for any other purpose or activity; and shall keep the Restaurant open and in normal operation for at least such minimum hours and days as Little Caesar may specify in the Manuals or otherwise in writing, and as may be required by the lease for the Restaurant premises. Franchisee shall not engage in delivery and/or off-premises sales of products or services to customers except as expressly permitted by the Manual or as otherwise expressly authorized in writing by Little Caesar.

**5.3. Conformance to System Standards**. To insure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, procedures, and specifications as Little Caesar may from time to time prescribe in the Manuals or otherwise in writing. Franchisee shall refrain from (a) deviating from such methods, standards, procedures, and specifications without Little Caesar's prior written consent, and (b) otherwise operating in any manner which reflects adversely on the Proprietary Marks or the System. Among other things:

5.3.1. Franchisee shall maintain in sufficient supply, and use at all times, only such products, equipment, materials, signs, menu items, ingredients, supplies, and paper goods, as conform to Little Caesar standards and specifications; and shall refrain from using non-conforming items;

5.3.2. Franchisee shall sell or offer for sale only such products and services as (a) meet Little Caesar's standards of quality, (b) have been expressly approved for sale in writing by Little Caesar, and (c) have been prepared in accordance with Little Caesar's methods and techniques for product preparation. Franchisee shall sell or offer for sale all products and services required by Little Caesar in the Manuals or otherwise in writing as being part of the System. Franchisee shall not deviate from Little Caesar's methods, standards, procedures, and specifications regarding, without limitation, ingredients, recipes, methods of preparation and service, and weight and quality of products served. Franchisee shall discontinue selling and offering for sale any products or services which Little Caesar disapproves in writing at any time.

5.3.3. Franchisee shall purchase and install, at Franchisee's expense, all fixtures, furnishings, equipment, decor, signs, and other items as Little Caesar may direct from time to time in the Manuals or otherwise in writing; and shall refrain from installing or permitting to be installed on or about the Restaurant premises, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Little Caesar's standards and specifications.

5.3.4. Franchisee shall display promotional signs or other written promotional materials or participate in other promotions, in the manner requested by Little Caesar. Franchisee agrees to participate in any gift card, electronic gift or money card (E-card), loyalty programs, frequency card programs, or other programs specified by Little Caesar, and to honor all such cards issued by Little Caesar or a third party designated by Little Caesar.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 14 of 44

**5.4.    Approved Suppliers**.  Franchisee shall purchase all current and future products, ingredients, equipment, supplies, and materials used or sold by the Restaurant (including without limitation the proprietary Little Caesars spice blend, dough mix and vegetable seasonings) solely from Little Caesar's affiliate Blue Line Foodservice Distribution ("**Blue Line**"), or from such other entity as Little Caesar designates in writing.

5.4.1.    Franchisee agrees to pay Blue Line directly for all purchases from Blue Line. Franchisee's purchases from Blue Line or other entities will be at the price in effect at that time.  Franchisee acknowledges and agrees that Blue Line has the right to change its prices from time to time without notice. Franchisee agrees to pay Blue Line in accordance with Blue Line's then-current payment terms and conditions.  Franchisee acknowledges and agrees that if Franchisee fails to make any payment required under this Agreement in full to Little Caesar, Blue Line, or their affiliates when due under this Agreement, Little Caesar and Blue Line reserve the right, among other remedies, to (a) suspend or refuse shipment to Franchisee of additional Blue Line products until such payment has been made in full, and/or (b) require payment for any or all future shipments of Blue Line products to be made on a cash-on-delivery (COD) basis.

5.4.2.    Notwithstanding Section 5.4.1 above, Franchisee shall purchase all beverage products from the supplier(s) or source(s) that Little Caesar designates in the Manuals or otherwise in writing.

5.4.3.    Franchisee acknowledges that Little Caesar and/or its affiliates may make a profit on goods, products and/or services sold to Franchisee, and that such profit may vary from time-to-time.  Franchisee also acknowledges that Little Caesar and/or its affiliates may receive consideration from suppliers and/or manufacturers with respect to sales of goods, products or services to Franchisee or in consideration of services rendered or rights licensed to such person.  The consideration may or may not be related to services performed by Little Caesar and/or its affiliates.  Subject to applicable law, Little Caesar and its affiliates will be entitled to retain such profits and/or consideration.

**5.5.    Maintenance of Restaurant Premises**.  Franchisee shall maintain the Restaurant premises and adjacent public areas in a clean, orderly, and excellent condition and in excellent appearance to the public.  Franchisee shall, at its expense, make such additions, alterations, repairs, and replacements (but no others without Little Caesar's prior written consent) as may be required for that purpose, including, without limitation, such periodic repainting, repairing, and replacing of obsolete or deteriorated signs, furnishings, fixtures, equipment, and decor as Little Caesar may direct by written notice to Franchisee.  Franchisee shall complete all work specified in the notice within sixty (60) days after receipt of such notice.

**5.6.    Refurbishing the Restaurant**.  Unless sooner required by Franchisee's lease, at any time after the fifth (5th) year of the term, Franchisee shall, at Little Caesar's request, refurbish the Restaurant premises at Franchisee's expense, to conform to the building design, trade dress, color schemes, and presentation of the Proprietary Marks in a manner consistent with the then-current public image for new or remodeled Restaurants, including, without limitation, replacement or renovation of fixtures; remodeling, redecoration, and modifications to existing improvements and structural changes, provided, however, that the cost to Franchisee for such refurbishment shall not exceed Seventy-Five Thousand Dollars ($75,000).

**5.7.    Access to Restaurant**.  Franchisee shall grant Little Caesar and its agents entry at normal business hours on the Restaurant premises for the purpose of conducting inspections and testing products; shall cooperate with Little Caesar's representatives in such inspections and testing by rendering such assistance as they may request; and, upon written notice from Little Caesar or its agents

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 15 of 44

and without limiting Little Caesar's other rights hereunder, shall promptly correct such deficiencies discovered during any such inspection.

**5.8.    Franchisee Training**.  Prior to the opening of the Restaurant, Franchisee (or, if Franchisee is a corporation or other entity, a principal of Franchisee acceptable to Little Caesar) and those employees of Franchisee specified by Little Caesar, shall attend and complete, to Little Caesar's satisfaction, the pre-opening training program offered by Little Caesar.  Pursuant to Section 13.2.17, Little Caesar shall have the right to terminate this Agreement if any person required to attend the pre-opening training program fails, in Little Caesar's sole judgment, to successfully complete the training program.

5.8.1.    Little Caesar shall provide training instructors, a training manual, and other materials without charge; and Franchisee shall be responsible for any and all other expenses incurred by its trainees during the pre-opening training program, including without limitation the costs of transportation, lodging, meals, and any wages.

5.8.2.    If, at any time during the term of this Agreement, Franchisee chooses to send additional employees for the pre-opening training program (with Little Caesar's prior consent), Franchisee shall pay Little Caesar a fee to be determined by Little Caesar, which fee shall not exceed Two Hundred Fifty Dollars ($250) for each attendee.

5.8.3.    Little Caesar shall have the right to terminate this Agreement if, at any time during the pre-opening training program, it concludes (in its sole judgment) that Franchisee or its principal does not appear to possess the skills necessary to properly fulfill and discharge the demands and responsibilities required by the System or this Agreement.

5.8.4.    Franchisee and other employees designated by Little Caesar also shall attend such additional training programs as Little Caesar may require from time to time and at any time. Little Caesar shall not charge any fees for those attending required additional training programs, but may charge a fee for optional training.  Franchisee shall be responsible for any and all other expenses incurred by its trainees in connection with additional training programs, including without limitation the costs of transportation, lodging, meals, and any wages.  Franchisee acknowledges and agrees that no compensation or other benefits will be paid to Franchisee, its principals, owners, managers or employees for any services performed by Franchisee or its principals, owners, managers or employees during training at any Restaurant operated by Little Caesar or any other person.  Franchisee assumes all responsibility for any injuries sustained by Franchisee, its principals, owners, managers or employees while attending training.

**5.9.    Franchisee Employee Policy**.  Franchisee acknowledges and agrees that, except as otherwise provided in this Agreement, Little Caesar does not have authority to exercise control over the means or manner in which Franchisee operates the Restaurant.  All Restaurant operations will be determined by Franchisee in its own judgment, subject only to legal requirements, the terms of this Agreement, and the standards, procedures, and policies Little Caesar prescribes for the preservation of the goodwill associated with the Proprietary Marks.  Franchisee shall take such steps as are necessary to ensure that its employees are trained in product preparation; preserve good customer relations; render competent, prompt, courteous, and knowledgeable service; and meet required governmental health standards.  Franchisee shall take such steps as are necessary to ensure that its employees do not violate the provisions of this Agreement relating to the use of electronic media, including, but not limited to, Little Caesar's policies prohibiting the posting of any information relating to Little Caesar, the System, the Proprietary Marks, or the Franchised Business without Little Caesar's prior written approval. Franchisee shall be solely responsible for all employment decisions of the Restaurant, including, without limitation, those related to hiring, firing, remuneration, personnel policies, benefits, record keeping,

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 16 of 44

supervision, safety, security, and discipline, and regardless of whether Franchisee received advice or recommendations from Little Caesar on such subjects.

**5.10.  Franchisee Lease Provisions**.  Franchisee shall comply with all terms of its lease, and shall refrain from any activity which may jeopardize Franchisee's right to remain in possession of, or to renew the lease for the Restaurant premises.  Franchisee shall, prior to the execution of any lease or renewal lease, submit it to Little Caesar for its written approval.  Little Caesar's approval, which shall not be deemed to be an endorsement of the legal or business terms of the lease, may be conditioned upon the inclusion of any one or more the following terms and conditions:

5.10.1.  That the initial term of the lease, or the initial term together with renewal terms, shall be for at least ten (10) years;

5.10.2.  That the lessor consents to Franchisee's use of such Proprietary Marks and signage as Little Caesar may now or hereinafter prescribe for the Restaurant;

5.10.3.  That the use of the leased premises be restricted solely to the operation of the Restaurant;

5.10.4.  That Franchisee be prohibited from subleasing or assigning all or any part of its occupancy rights or extending the term of or renewing the lease without Little Caesar's prior written consent;

5.10.5.  The lessor will furnish to Little Caesar written notice specifying any default and the method of curing any such default under any such lease, and shall allow Little Caesar thirty (30) days after receipt thereof to cure such defaults (except that if such default involves non-payment of rent, Little Caesar shall have fifteen (15) days from receipt of such notice to cure such default);

5.10.6.  That Little Caesar have the right to enter the premises to make modifications necessary to protect the Proprietary Marks or the System or to cure any default under the Agreement or under the lease or sublease;

5.10.7.  That, in the event of a default, expiration, or termination of this Agreement or the lease, Little Caesar (or Little Caesar's designee) shall have the option, upon notice to the lessor, to assume all of Franchisee's rights under the lease terms, including if applicable the right to assign or sublease; and

5.10.8.  No amendment to the lease may be made without Little Caesar's prior written consent.

**5.11.  Furnishing Lease to Little Caesar**.  Franchisee shall furnish Little Caesar with a copy of any executed lease or amendment within ten (10) days after execution thereof.

**5.12.  Pricing**. To the extent permitted by applicable law, Little Caesar has the right to establish maximum and/or minimum prices that Franchisee must follow for products and services sold in the Restaurant. Little Caesar may also provide suggested prices that Franchisee is not required to follow. In the case of suggested prices, Franchisee is responsible for any additional costs incurred by Franchisee or Little Caesar to produce marketing and promotional materials for Franchisee containing prices deviating from those suggested by Little Caesar. **Promotional Activities**. Franchisee must participate in and comply with the terms of special promotional activities that Little Caesar prescribes for Little Caesars Restaurants generally or in specific geographic areas. Franchisee acknowledges that

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 17 of 44

these activities may include special offer, limited time offer, free giveaway, and other pricing promotions and that the featured price(s) may be less than Franchisee's cost for the promoted item(s). Franchisee must display promotional signs and materials and otherwise participate in the manner Little Caesar requests.

**5.14.** **Compliance with Governmental Requirements**. Franchisee must meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including but not limited to OSHA, USDA and other food safety regulations, labor laws, and laws governing telephonic and electronic communications. Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant including, without limitation, licenses to do business, fictitious name registrations, sales tax permits, certificates of occupancy, and fire clearances. Franchisee shall notify Little Caesar by telephone and facsimile within twenty-four (24) hours after receipt of any notice alleging a possible health or safety problem, and also shall furnish to Little Caesar, within three (3) days after receipt thereof, a copy of any notice alleging non-compliance with the requirements of this Section.

**5.15.** **Notification of Legal Proceedings**. Franchisee must notify Little Caesar in writing within five (5) days of the commencement of any action, suit, notice of violation, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, which may adversely affect the operation or financial condition of the Restaurant.

**5.16.** **Attendance at Meetings, Seminars and Conferences**. Franchisee, a principal of Franchisee or an individual designated by Franchisee and approved by Little Caesar pursuant to Section 15.1, at Franchisee's expense, must attend all meetings, seminars and conferences Little Caesar may specify as mandatory, including, without limitation, all DMA or other marketing area meetings for the marketing area in which the Restaurant is located, all meetings related to new products or product preparation procedures, new System programs, new operations procedures or programs, training, restaurant management, financial management, sales or sales promotion, or similar topics and annual conferences. If none of Franchisee, a principal of Franchisee or an individual designated by Franchisee and approved by Little Caesar pursuant to Section 15.1 is able to attend any such meeting, seminar or conference, Franchisee must so notify Little Caesar before the meeting, seminar or conference and must cause a substitute person from Franchisee's operations to attend and represent Franchisee at the meeting, seminar or conference. If none of Franchisee, a principal of Franchisee or an individual designated by Franchisee attends a required meeting, seminar or conference, Little Caesar reserves the right to charge Franchisee a reasonable fee.

**5.17.** **Franchisee Developments**. If Franchisee or its principals, agents or employees develops any new concept, advertising idea, promotional concept, product, process, improvement, slogan, or technology (including without limitation any hardware, software, texting system, accounting system, inventory tracking system, or electronic menu board) (collectively, "**New Developments**") for use in the operation or promotion of the Restaurant, Franchisee must promptly notify Little Caesar and provide Little Caesar with all necessary related information, without compensation. Franchisee and its principals, agents and employees acknowledge and agree that any such New Developments are the property of Little Caesar, and Franchisee and its principals, agents or employees must sign all documents necessary to evidence the assignment of any New Developments to Little Caesar. Franchisee acknowledges and agrees that Little Caesar may use this information and disclose and/or license the information for use by others. Franchisee must not introduce any New Developments or any additions or modifications of or to the System into the Restaurant without the prior written consent of Little Caesar.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 18 of 44

**5.18.     Participation in Franchisee Advisory or Other Committees**.  Little Caesar may establish, from time to time, committees of franchisees to advise Little Caesar on various matters involving the System.  Franchisee will be eligible to participate on such committees, in accordance with the rules established by Little Caesar and each committee, but only if Franchisee is a franchisee-in-good-standing at that time and has been a franchisee-in-good-standing for the six month period before serving on the committee.  In order to be a franchisee-in-good-standing, Franchisee must be: (a) current in all obligations to Little Caesar and its affiliates; and (b) operating in accordance with all requirements of the Franchise Agreement or the System, including without limitation, requirements relating to quality, cleanliness and service.

**5.19.     Computer System and Required Software**.

5.19.1.     Little Caesar shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, and hardware be used by Franchisee, including without limitation:  (a) back office and point of sale systems, data, audio, and video systems for use at the Restaurant; (b) printers and other peripheral hardware or devices; (c) archival back-up systems; (d) Internet access mode and speed; and (e) physical, electronic, and other security systems (collectively, the "**Computer System**").

5.19.2.     Little Caesar shall have the right, but not the obligation, to develop or have developed for it, or to designate: (a) computer software programs that Franchisee must use in connection with the Computer System (the "**Required Software**"), which Franchisee shall install at its expense; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee shall install at its expense; (c) the tangible media upon which Franchisee shall record data; and (d) the database file structure of the Computer System.

5.19.3.     At Little Caesar's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System and, if applicable, the Required Software.  Little Caesar shall have the right at any time to remotely retrieve and use such data and information from Franchisee's Computer System or Required Software that Little Caesar deems necessary or desirable.  Franchisee expressly agrees to strictly comply with Little Caesar's standards and specifications for all items associated with Franchisee's Computer System and any Required Software in accordance with Little Caesar's standards and specifications.  Franchisee agrees, at its own expense, to keep the Computer System in good maintenance and repair, to purchase a support contract, and to install such additions, changes, modifications, substitutions, and/or replacements to the Computer System or Required Software as Little Caesar directs from time to time in writing.  Franchisee agrees that its compliance with this Section shall be at Franchisee's sole cost and expense.

**5.20.     Payment Systems**.  Franchisee agrees to honor all credit, charge, courtesy or cash cards or other credit devices and mobile payment systems required or approved by Little Caesar in writing.  Franchisee shall comply with all Little Caesar policies regarding acceptance of payment by credit and/or debit cards and mobile payment systems, including, for example, minimum purchase requirements and/or surcharges for use of a card.  Franchisee acknowledges that payment systems may require Franchisee to obtain new hardware, software, equipment and training at Franchisee's expense.**Data Ownership**.  All data provided by Franchisee, uploaded to Little Caesar's system from Franchisee's system, and/or downloaded to Franchisee's system from Little Caesar's system, is and will be owned exclusively by Little Caesar, and Little Caesar will have the right to use such data in any manner that Little Caesar deems appropriate without compensation to Franchisee.  In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the Restaurant (including but not limited to consumer and transaction data), is and will be owned exclusively by Little Caesar during the term of, and following termination or expiration of, this

Case 17-03469-TOM7     Doc 95-9     Filed 09/05/17     Entered 09/05/17 15:32:05     Desc
Exhibit Exhibit F     Pt. 1     Page 19 of 44

Agreement. Copies and/or originals of such data must be provided to Little Caesar upon Little Caesar's request. Little Caesar hereby grants a non-exclusive license back to Franchisee to use such data, at no additional cost, solely for the term of this Agreement and solely in connection with the establishment and operation of the Restaurant pursuant to this Agreement.

**5.22.   Data Security**.  Franchisee agrees to install and maintain industry-standard security measures and devices to protect data from unauthorized access or disclosure. Without limiting the foregoing, Franchisee agrees to comply with the then-current Payment Card Industry Data Security Standards (PCI/DSS), as those standards may be revised by the PCI Security Standards Council, LLC (see *www.pcisecuritystandards.org*) or successor organization; to implement the security requirements that the Council (or its successor) requires of a merchant that accepts payment by credit and/or debit cards; and to complete PCI/DSS audits as and when required by the standards. Franchisee acknowledges that compliance with PCI/DSS is a minimum requirement, that compliance does not guarantee that no security breach will occur, and that any losses or expenses incurred by Little Caesar as a result of a security breach will be subject to indemnification under Section 18.4.  In the event of a security breach, Franchisee agrees to comply promptly with applicable laws and any instructions from Little Caesar regarding response to the breach. Little Caesar may offer to Franchisee, and if offered Franchisee must purchase from Little Caesar or its affiliate, a package of services for internet access, PCI/DSS compliance and data security.

**5.23.   Privacy**. Little Caesar may, from time-to-time, specify in the Manuals (or otherwise in writing) the information that Franchisee must collect and maintain on the Computer System installed at the Restaurant, and Franchisee shall provide to Little Caesar such reports as Little Caesar may request from the data so collected and maintained. Franchisee shall abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information.  Franchisee shall not publish, disseminate, implement, revise, or rescind a data privacy policy without Little Caesar's prior written consent.

**5.24.   Extranet**. Little Caesar may, but is not obligated to, establish an Extranet.  The term "**Extranet**" means a private network based upon Internet protocols that will allow users inside and outside of Little Caesar's headquarters to access certain parts of Little Caesar's computer network via the Internet.  If Little Caesar does establish an Extranet, then Franchisee shall comply with Little Caesar's requirements (as set forth in the Manuals or otherwise in writing) with respect to connecting to the Extranet and utilizing the Extranet in connection with the operation of the Restaurant, including, but not limited to, reporting sales and ordering products from Blue Line and other affiliates. The Extranet may include, without limitation, the Manuals, training and other assistance materials, and management reporting solutions (both upstream and downstream, as Little Caesar may direct).  Franchisee shall purchase and maintain such computer software and hardware (including, but not limited to, telecommunications capacity) as may be required to connect to and utilize the Extranet.  Little Caesar shall have the right to require Franchisee to install a video, voice and data system that is accessible by both Little Caesar and Franchisee on a secure Internet website, in real-time, all in accordance with Little Caesar's then-current written standards as set forth in the Manuals or otherwise in writing.  Franchisee shall comply with Little Caesar's requirements (as set forth in the Manuals or otherwise in writing) with respect to establishing and maintaining telecommunications connections between Franchisee's Computer System and Little Caesar's Extranet and/or such other computer systems as Little Caesar may require.

**5.25.   Websites**. Except as approved in advance in writing by Little Caesar, Franchisee shall not establish or maintain a separate website. However, Little Caesar shall have the right to require that Franchisee have one or more references or webpage(s), as designated and approved in advance by Little Caesar, within Little Caesar's primary consumer website(s), including, but not limited to, *www.littlecaesars.com*. Little Caesar shall have the right to require that Franchisee not have any website

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 20 of 44

other than the webpage(s), if any, made available on Little Caesar's website(s). If Little Caesar approves a separate website for Franchisee (which Little Caesar is not obligated to approve; and, which approval, if granted, may later be revoked by Little Caesar), such approval will be conditioned upon Franchisee's compliance with Little Caesar's requirements, including, but not limited to, the requirements of this Section and Sections 5.26 and 5.27. Before establishing any website, Franchisee shall submit to Little Caesar, for Little Caesar's prior written approval, a sample of the proposed domain name, format, visible content (including, without limitation, proposed screen shots), non-visible content (including, without limitation, meta tags), and such other information as Little Caesar may request, all in the form and manner Little Caesar may require.

      **5.26.** **Ownership of Domain Names**. Franchisee acknowledges and agrees that Little Caesar owns all internet domain names, URLs, user names, and internet page names that include any of the Proprietary Marks. Franchisee further acknowledges and agrees that if Little Caesar grants its approval for Franchisee's use of a generic, national, and/or regionalized domain name, Little Caesar shall have the right to own and control said domain name at all times and may license it to Franchisee for the term of this Agreement on such terms and conditions as Little Caesar may require (including, but not limited to, the requirement that Franchisee reimburse Little Caesar's costs for doing so). If Franchisee already owns any domain names, or hereafter registers any domain names, then Franchisee agrees that it shall notify Little Caesar in writing and assign said domain names to Little Caesar and/or a designee that Little Caesar specifies in writing.

      **5.27.** **Electronic Marketing and Electronic Communications**. Unless agreed to in writing by Little Caesar, Franchisee shall not use, register, maintain, or sponsor any social networking channel, blog, messaging system, email account, user name, text address, mobile application, or other electronic, mobile or Internet presence that uses or displays any of the Proprietary Marks (or any derivative thereof) or that promotes any products or services of the Restaurant. Franchisee acknowledges that the use of any electronic medium constitutes advertising and promotion subject to Little Caesar's approval under Section 9.4 of this Agreement. Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, e-mail, text message, instant message, social networking website, VoIP, streaming media, or other electronic media without first obtaining Little Caesar's written consent as to: (a) the content of such advertisements or solicitations; and (b) the type of media intended to be used. All telephone answering messages, email auto-signatures, and other identifiers of the Restaurant must be in the form prescribed by Little Caesar. If Little Caesar approves the use of an electronic medium (which Little Caesar is not obligated to approve, and which approval, if granted, may later be revoked by Little Caesar), such approval will be conditioned upon Franchisee's compliance with any standards and procedures issued by Little Caesar with respect to that type of electronic medium, as well as compliance with the following requirements:

      5.27.1.    Franchisee shall not substantially modify its use of the approved electronic medium without first obtaining Little Caesar's written approval of the proposed modification;

      5.27.2.    Franchisee's use of the approved electronic medium shall contain such disclaimers, warnings, and other statements as Little Caesar may periodically prescribe in the Manuals or otherwise in writing, including, but not limited to, a clear and obvious statement that the use of the electronic medium is for a local restaurant operated by Franchisee and is not operated, sponsored or endorsed by Little Caesar;

      5.27.3.    If required by Little Caesar, Franchisee shall establish such hyperlinks to Little Caesar's website(s) and other websites as Little Caesar may request in writing; and

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 21 of 44

5.27.4. Franchisee shall not use any electronic medium to post any information relating to Little Caesar, the System, the Proprietary Marks, or the Franchised Business without Little Caesar's prior written approval; and Franchisee shall not make any posting or other contribution that (a) is derogatory, disparaging, or critical of Little Caesar, (b) is offensive, inflammatory, or indecent, or (c) harms the goodwill and public image of the System and/or the Proprietary Marks.

**5.28.** **No Outsourcing without Prior Written Approval**. Franchisee shall not hire third party or outside vendors to perform any services or obligations in connection with the Computer System, Required Software, or any other of Franchisee's obligations without Little Caesar's prior written approval. Little Caesar's consideration of any proposed outsourcing vendor(s) may be conditioned upon, among other things, such third party or outside vendor's entry into a confidentiality agreement with Little Caesar and Franchisee in a form that is provided by Little Caesar. The provisions of this Section are in addition to and not instead of any other provision of this Agreement.

**5.29.** **Changes to Technology**. Franchisee acknowledges and agrees that changes to technology are dynamic and not predictable within the term of this Agreement. In order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees that Little Caesar shall have the right to establish, in writing, new standards for the implementation of technology in the System; and Franchisee agrees that it shall abide by those new standards established by Little Caesar as if this Agreement were periodically revised by Little Caesar for that purpose.

## 6. CONSTRUCTION OF LEASEHOLD IMPROVEMENTS

**6.1.** **Obligation to Construct Leasehold Improvements**. Franchisee shall, at its expense, construct all leasehold improvements to the Restaurant premises in conformance with the prototype or specific design plans and specifications furnished by Little Caesar pursuant to Section 4.1 of this Agreement.

**6.2.** **Securing Governmental Approvals**. Franchisee shall be responsible for obtaining all zoning classifications and clearances which may be required by state or local laws, ordinances or regulations, or which may be necessary or advisable owing to any restrictive covenants relating to the location of the Restaurant. Franchisee shall obtain all permits, licenses, and certifications required for the lawful construction, occupancy, and operation of the Restaurant (including, but not limited to, compliance with the provisions of the Americans With Disabilities Act ("**ADA**")). Franchisee agrees and acknowledges that the Restaurant and its adjacent areas shall at all times during the term of this Agreement comply with all applicable federal, state and local accessibility laws, statutes, codes, rules, regulations and standards, including, but not limited to, the ADA.

**6.3.** **Employment of a Qualified Architect or Engineer**. Franchisee shall employ a qualified architect or engineer, if requested by Little Caesar, to prepare final plans and specifications for constructing the leasehold improvements based upon the plans and specifications furnished by Little Caesar, shall submit such final plans to Little Caesar, and shall not proceed with any construction until Little Caesar's written approval of such plans has been received. Franchisee shall not deviate from any approved plans and specifications without Little Caesar's prior written approval.

**6.4.** **Employment of a Qualified Contractor**. Franchisee shall employ a qualified, licensed general contractor to perform all construction, and Franchisee shall provide to Little Caesar such periodic progress reports as Little Caesar may require. During construction, Little Caesar shall have the right to inspect the premises at all times for the purpose of ascertaining that all work complies with the final plans approved by Little Caesar, and Franchisee shall cooperate and cause its employees and agents to cooperate fully with Little Caesar's inspections.

Case 17-03469-TOM7     Doc 95-9     Filed 09/05/17     Entered 09/05/17 15:32:05     Desc
Exhibit Exhibit F     Pt. 1     Page 22 of 44

**6.5. Franchisee Responsible**. Franchisee is responsible for the performance of all architects, engineers, contractors, and subcontractors hired by Franchisee in connection with the design, construction and maintenance of the Restaurant and for ensuring that sufficient insurance coverage is in place during the construction process. Little Caesar shall have the right, in its sole discretion, to oversee any renovation or construction and visit the construction site at any time to ensure compliance with its standard plans and specifications. Little Caesar also has the right to require Franchisee to submit periodic progress reports in such form and at such times as Little Caesar requests.

**6.6. Construction of Leasehold Improvements and Securing Approval to Open**. Construction shall commence promptly after Little Caesar's written approval of Franchisee's final plans is received, and continue uninterrupted until all necessary work is completed in accordance with the approved plans. Within five (5) days after work is completed, Franchisee shall submit a written request to Little Caesar to conduct a final inspection of the Restaurant premises and, upon receipt of such request, Little Caesar shall promptly conduct such inspection. Franchisee shall not open the Restaurant for business without the express written authorization of Little Caesar, which authorization shall specify the Opening Date of the Restaurant and may be conditioned upon Franchisee's strict compliance with the specifications of the approved final plans and System standards and completion of any pre-opening training required by Little Caesar.

**6.7. Opening Deadline; Time of the Essence**. If the Approved Location has been determined prior to the execution of this Agreement, Franchisee shall commence construction of the Restaurant not later than six (6) months after the Effective Date of this Agreement and shall open the Restaurant to the public not later than nine (9) months after the Effective Date of this Agreement. If the Approved Location has not been determined prior to the execution of this Agreement, Franchisee shall commence construction of the Restaurant not later than six (6) months after Little Caesar has issued its written approval of the Approved Location and shall open the Restaurant to the public not later than nine (9) months after Little Caesar has issued its written approval of the Approved Location. Franchisee acknowledges and agrees that time is of the essence in connection with the construction and opening of the Restaurant.

**6.8. Relocation**. Franchisee shall not relocate the Restaurant without the prior written approval of Little Caesar, which approval may be subject to, among other requirements, refurbishing the Restaurant as set forth in Section 5.6. In order to be considered for a relocation under the terms of this Agreement, the new location must be within a one mile radius of the original location and must re-open within six (6) months of the original location's closure. Any approvals furnished by Little Caesar pursuant to this Section 6.8 shall not be deemed to be a guarantee or assurance by Little Caesar that the Restaurant shall be profitable or successful. Franchisee shall pay Little Caesar a relocation fee of Two Thousand Five Hundred Dollars ($2,500) at the time Franchisee submits its relocation request package to Little Caesar. The relocation fee is refundable only if Little Caesar does not approve Franchisee's relocation request.

**6.9. Construction Insurance**. Franchisee shall procure, prior to the commencement of any construction, and shall maintain in full force and effect at all times during any construction, at Franchisee's expense, an insurance policy or policies protecting Franchisee, Little Caesar, and its affiliates, and their respective shareholders, directors, employees, and agents, against any demand or claim with respect to personal and bodily injury, death, or property damage, or any loss, liability, or expense whatsoever arising or occurring upon or in connection with the construction of the Restaurant. Such policy or policies shall be written by an insurer or insurers acceptable to Little Caesar, and shall comply with the requirements prescribed by Little Caesar in the Manuals or otherwise in writing.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc Exhibit Exhibit F    Pt. 1    Page 23 of 44

## 7. PROPRIETARY MARKS

**7.1. Little Caesar Representations Concerning Proprietary Marks**. Little Caesar represents with respect to the Proprietary Marks that:

7.1.1. Little Caesar owns, or has obtained a license to use and to license others to use, the Proprietary Marks;

7.1.2. Little Caesar shall take all steps reasonably necessary to preserve and protect the validity of the Proprietary Marks; and

7.1.3. Little Caesar shall permit Franchisee to use the Proprietary Marks only in accordance with the System and the standards and specifications attendant thereto which underlie the goodwill associated with and symbolized by the Proprietary Marks.

**7.2. Franchisee Use of Proprietary Marks**. With respect to Franchisee's use of the Proprietary Marks pursuant to this Agreement:

7.2.1. Franchisee shall use only the Proprietary Marks designated by Little Caesar, and shall use them only in the manner authorized and permitted by Little Caesar;

7.2.2. Franchisee shall use the Proprietary Marks only for the operation of the Restaurant, and only at the Approved Location or in Little Caesar approved advertising for the Restaurant;

7.2.3. Unless otherwise authorized or required by Little Caesar, Franchisee shall operate and advertise the Restaurant only under the Proprietary Marks authorized for use for a Little Caesars Restaurant;

7.2.4. Franchisee shall identify itself as an independent franchisee-owner of the Restaurant in conjunction with any use of the Proprietary Marks or the operation of the Restaurant, and shall place a written notice to such effect, in a form approved by Little Caesar, in a conspicuous location on the Restaurant premises and as otherwise required by Little Caesar pursuant to Section 18.2;

7.2.5. Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement;

7.2.6. Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Little Caesar;

7.2.7. Franchisee shall execute any documents deemed necessary by Little Caesar or its affiliates to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability;

7.2.8. Franchisee shall promptly notify Little Caesar of any suspected unauthorized use of, or any challenge to the validity or use of the Proprietary Marks. Little Caesar (or its affiliate) shall have the sole right to determine whether any action should be taken, and, if any action is taken, Little Caesar (or its affiliate) shall have the right to direct and control any such action, including without limitation the prosecution, defense or settlement of any administrative proceeding or litigation or other adjudicative proceeding involving the Proprietary Marks. Franchisee shall have no right, independent of Little Caesar, to make any demand against any such user or challenger or to prosecute any claim of any kind or nature whatsoever relating to Little Caesar's Proprietary Marks;

Case 17-03469-TOM7   Doc 95-9   Filed 09/05/17   Entered 09/05/17 15:32:05   Desc
Exhibit Exhibit F   Pt. 1   Page 24 of 44

7.2.9.    Little Caesar (or its affiliate) shall defend Franchisee against any third-party claim, suit, or demand arising out of Franchisee's use of the Proprietary Marks.  If Little Caesar determines that Franchisee has used the Proprietary Marks in accordance with this Agreement, the cost of such defense, including the cost of any judgment or settlement, shall be borne by Little Caesar.  If Little Caesar determines that Franchisee has not used the Proprietary Marks in accordance with this Agreement, the cost of such defense, including the cost of any judgment or settlement, shall be borne by Franchisee.  In the event of any litigation relating to Franchisee's use of the Proprietary Marks, Franchisee shall execute any and all documents and do such acts as may, in the opinion of Little Caesar, be necessary to carry out such defense or prosecution, including, but not limited to, becoming a party to any legal action.  Except to the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Little Caesar agrees to reimburse Franchisee for its out-of-pocket litigation costs in cooperating with Little Caesar with respect to the litigation; and

7.2.10.    Franchisee shall not use as part of its corporate or other legal name, or as an internet domain name or URL, any of the Proprietary Marks or any portion or derivative of any Proprietary Marks, including without limitation "Caesar," "Caesars" or any other name that is likely, in the judgment of Little Caesar, to cause third parties to be confused or mistaken with respect to the separate identities of Little Caesar and Franchisee.

**7.3.    Franchisee Representations Concerning Proprietary Marks**.  Franchisee expressly understands and acknowledges that:

7.3.1.    The Proprietary Marks are valid and serve to identify the System and those who are franchised under the System;

7.3.2.    During the term of this Agreement and after its expiration or termination, Franchisee shall not directly or indirectly contest the validity or ownership of the Proprietary Marks, nor take any other action which may tend to derogate or jeopardize Little Caesar's interest therein, or Little Caesar's right to use and to license others to use, the Proprietary Marks;

7.3.3.    Franchisee's use of the Proprietary Marks pursuant to this Agreement does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks other than the license granted by this Agreement;

7.3.4.    Any and all goodwill arising from Franchisee's use of the Proprietary Marks during the term of this Agreement shall inure solely and exclusively to the benefit of Little Caesar and its affiliates, and upon expiration or termination of this Agreement no monetary amount shall be assigned as attributable to any goodwill associated with Franchisee's use of the System or the Proprietary Marks;

7.3.5.    Except as specified in Section 1.3 hereof, Little Caesar and its affiliates shall have and retain the rights, among others:  (a) to use the Proprietary Marks themselves in connection with selling products and services; (b) to grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees; and (c) to develop and establish other systems using the Proprietary Marks, similar proprietary marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee; and

7.3.6.    Little Caesar reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Little Caesar determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, the use of the substituted proprietary marks shall be governed by the

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 25 of 44

terms of this Agreement, and Little Caesar shall not compensate Franchisee for such substitution. Franchisee shall implement promptly any such substitution.

## 8. CONFIDENTIAL MANUALS AND INFORMATION

**8.1. Keeping Manuals Confidential**. Franchisee shall treat the Manuals, and the information contained therein, as confidential, and shall use all reasonable efforts to maintain such information as secret and confidential. Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person. The Manuals shall at all times remain the sole property of Little Caesar.

**8.2. Keeping Manuals Current**. Franchisee acknowledges and agrees that the Manuals may be modified from time to time in Little Caesar's sole discretion to reflect changes in the System and its standards and specifications. All modifications to the Manuals shall be binding on Franchisee upon Franchisee's receipt of notice of such modifications. Franchisee shall accept, implement, and adopt all such modifications at Franchisee's own cost. In the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Little Caesar shall be controlling. In the event the Manuals are lost, destroyed or otherwise misplaced, Franchisee shall immediately notify Little Caesar. Franchisee shall pay Little Caesar its then-current fee for each updated version of the Manuals and for replacement of any lost or destroyed copies of the Manuals.

**8.3. Protection of Confidential Information**. Franchisee shall not, during or after the term hereof, communicate, divulge, or use for the benefit of any other person, persons, partnership, association, or corporation any confidential information, knowledge, or know-how of Little Caesar which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation hereunder, including, but not limited to, information concerning the marketing, management, or operations plans of the Restaurant, Little Caesar recipes, products, ingredients or product development, the Manuals and other training manuals, policy manuals, and operations manuals, sales promotion aids, business forms, operational procedures, accounting procedures, proprietary computer software and programs, password-protected Internet or extranet information, marketing reports, advertising programs and materials, supplier information, purchasing or distribution procedures, inventory systems, demographic information, site selection criteria, accounting or sales information, past, present and future projects and proposals, customer, prospective customer and vendor information and relationships, marketing techniques, research processes, and financial and economic information ("**Confidential Information**"). Franchisee shall divulge such Confidential Information only to those employees who must have access to it in order to perform their employment responsibilities, and who shall keep such information confidential. Any and all information, knowledge, know-how, and techniques which Little Caesar designates as confidential shall be deemed confidential for purposes hereof. Franchisee will not: (i) modify, translate, decompile, disassemble, or create derivative works based on any Confidential Information; (ii) reverse engineer any products embodying Confidential Information; (iii) attempt to sell, sublicense, rent, lease, grant a security interest in, or otherwise purport to transfer rights to any Confidential Information; or (iv) remove or alter any trademark, logo, copyright or other proprietary notices, legends, or symbols on Confidential Information.

**8.4. Irreparable Injury from Disclosure of Confidential Information**. Franchisee acknowledges that any failure to comply with the requirements of this Section 8 will cause Little Caesar irreparable injury for which no adequate remedy at law may be available; and Franchisee agrees that Little Caesar may seek, and agrees to pay all court costs and attorneys' fees incurred by Little Caesar in obtaining, without posting a bond, an *ex parte* or other order for injunctive or other legal or equitable relief with respect to the requirements of this Section 8.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 26 of 44

**8.5.    Confidentiality Agreements from Associates of Franchisee**. Franchisee shall ensure that each owner, officer, employee, crew member, vendor, service provider, professional advisor, and other person associated with Franchisee shall keep confidential all Confidential Information as defined in Section 8.3 above.  Franchisee shall require anyone who may have access to the Confidential Information (including but not limited to the persons and entities covered by Sections 12.4, 15.7 and 16.4 below) to execute an agreement to maintain the confidentiality of the Confidential Information that he or she may receive in connection with his or her association with Franchisee.  Little Caesar has the right to approve the form of the agreements required by this Section 8.5, each of which must identify Little Caesar as a third party beneficiary with the independent right to enforce the agreement.  At Little Caesar's request, Franchisee will furnish copies of the confidentiality agreements by which persons associated with Franchisee are bound.

# 9.    ADVERTISING

Recognizing the value of advertising and promotion, and the importance of the standardization of advertising and promotional programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

**9.1.    Amounts and Recipients of Advertising Contribution**.  Franchisee, and Little Caesar (on behalf of any Restaurant (other than a Non-Traditional Restaurant) owned or operated by it or an affiliate), shall spend on advertising an amount specified by Little Caesar for a time period specified by Little Caesar; provided, however, that such amount shall not exceed seven percent (7%) of Franchisee's Gross Sales for the applicable time period.  The time period specified may be weekly, every four (4) weeks, monthly, quarterly, annually or such other period as Little Caesar may specify.  Little Caesar shall allocate such specified amount among: (a) contributions to a fund currently administered by Caesar Fund, Inc., a Michigan corporation, or another successor advertising fund (collectively "**CAESAR FUND**") that will administer a nationwide advertising program and/or provide collection, administrative and other services for the advertising program, as described in Section 9.2; (b) contributions to an advertising cooperative ("**Cooperative**"), as described in Section 9.3; and (c) Franchisee's expenditures on local advertising.  Little Caesar may from time to time, at any time, modify both the allocation and amount of each Franchisee's expenditures among CAESAR FUND, the Cooperative, and Franchisee's local advertising.  Little Caesar has the right to determine which types of expenditures count toward the local advertising requirement.  Franchisee must show proof of required local advertising expenditures in the manner and at the times specified by Little Caesar.  Little Caesar may grant any Little Caesars restaurant an exemption for any length of time (which may be in the form of a reduction, deferral or waiver) from advertising requirements, including but not limited to contributions to CAESAR FUND, contributions to a Cooperative, or required local advertising expenditures.

**9.2.    CAESAR FUND**.  The following provisions shall apply to CAESAR FUND, or any successor thereof:

9.2.1.    Franchisee irrevocably appoints Little Caesar to make advertising decisions for the benefit of Franchisee with respect to monies allocated to CAESAR FUND, including the power to negotiate advertising arrangements with advertising agencies and to authorize the expenditure of funds held by CAESAR FUND to pay for third party advertising services and marketing campaigns. Franchisee acknowledges that (i) the contributions to CAESAR FUND are being made for advertising services and marketing campaigns that benefit Franchisee; and (ii) CAESAR FUND holds the funds received from Franchisee and serves as a conduit to pay Little Caesar and other third parties who will provide the actual services that benefit Franchisee.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 27 of 44

9.2.2.    All CAESAR FUND contributions not retained by Little Caesar for its services, and any earnings thereon, shall be used exclusively to meet costs of maintaining, administering, directing, conducting and developing the preparation of advertising, marketing, public relations, and/or promotional programs and materials that promote the Little Caesars brand, and any other activities which Little Caesar believes will benefit the System, including, among other things, the costs of preparing and executing advertising campaigns in various media; utilizing any electronic media (as described in Sections 5.25 through 5.27 above) and other emerging media or promotional tactics; distribution of marketing materials; preparation of direct mail advertising; market research; employing advertising, sales promotion, and/or public relations agencies to assist therein; hiring consultants or experts (including law firm or in-house counsel to review advertising and related materials); purchasing promotional items; executing and administering in-store promotions; and providing promotional and other marketing materials and services for Restaurants.

9.2.3.    Little Caesar shall direct all advertising and promotional programs, with the right to control the creative concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that one of CAESAR FUND's objectives is to maximize general public recognition and acceptance of the Proprietary Marks for the benefit of the System, and that CAESAR FUND is not obligated to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that Franchisee benefits directly or pro rata from the advertising or promotion conducted by CAESAR FUND.

9.2.4.    As set forth in Section 3.4, Little Caesar shall have the right to require Franchisee to make all CAESAR FUND payments by electronic fund transfer, pre-authorized auto-draft arrangement, or such other methods as Little Caesar shall specify from time to time. All sums paid to CAESAR FUND shall be maintained in an account separate from the monies of Little Caesar and shall not be used to defray any expenses of Little Caesar, except for such costs and overhead, if any, as Little Caesar may incur in activities related to the administration of CAESAR FUND and direction of advertising programs, including, among other things, costs of personnel for creating and/or implementing advertising, promotional, marketing programs, collection of receipts, budgets, and similar types of expenditures. Any monies collected by CAESAR FUND, and any earnings thereon, shall not otherwise inure to the benefit of Little Caesar.

9.2.5.    A financial statement of CAESAR FUND shall be prepared annually using generally accepted accounting principles and made available to Franchisee. CAESAR FUND's books and records shall be audited annually and such audit shall be made available to Franchisee.

9.2.6.    Little Caesar shall have the right to coordinate activities and/or allocate expenses between CAESAR FUND and (i) any Cooperative established pursuant to Section 9.3 of this Agreement; or (ii) any other national or regional advertising fund that may be established with respect to any other Little Caesars restaurant concept. Any such coordination and allocation shall be performed in a fair and equitable manner. Little Caesar also shall have the right, but not the obligation, to simultaneously perform the activities set forth in this Section 9.2 on behalf of other Little Caesars restaurant concepts and to co-mingle contributions and disbursements of the different restaurant concepts.

9.2.7.    Little Caesar retains the right to terminate CAESAR FUND and/or replace it with another advertising fund at any time; provided, however, that CAESAR FUND shall not be terminated until all monies in it have been expended for purposes authorized by this Section 9.2 or returned to contributors on the basis of their respective contributions.

9.3.    **Advertising Cooperatives**. Little Caesar shall have the right, but not the obligation, to designate any geographical area or set of common characteristics for purposes of establishing a

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 28 of 44

Cooperative, and to determine whether a Cooperative is applicable to the Restaurant. Franchisee and Little Caesar (on behalf of each Restaurant (other than a Non-Traditional Restaurant) owned by it or an affiliate) shall become a member of and contribute to any Cooperative that Little Caesar determines is applicable to the Restaurant. The following provisions will apply to each Cooperative:

9.3.1. Each Cooperative shall adopt a cooperative agreement governing the organization and operation of the Cooperative, subject to Little Caesar's approval of such agreement. In the event that the members of the Cooperative do not sign an agreement within a reasonable time, Franchisee shall sign Little Caesar's recommended Cooperative Agreement. Little Caesar reserves the right to change the form of organization, governing documents, and manner of operation of any Cooperative, and Franchisee and the other members agree to implement any such change immediately upon notice from Little Caesar. No changes in the bylaws or other governing documents of a Cooperative shall be made without Little Caesar's prior written consent.

9.3.2. Each Cooperative shall be organized for the exclusive purpose of developing, executing and administering advertising programs and developing promotional materials for use by the members of the Cooperative.

9.3.3. No advertising or promotional programs or materials may be used by a Cooperative or furnished to its members without prior approval of Little Caesar pursuant to Section 9.4.

**9.4. Little Caesar Approval of Advertising**. All advertising and promotion by Franchisee and the Cooperative shall be in such media and of such type and format as Little Caesar may approve, shall be conducted in a dignified manner, and shall conform to such standards and requirements as Little Caesar may specify Franchisee or the Cooperative shall submit samples of all proposed advertising and promotional plans and materials to Little Caesar for its approval, in the manner prescribed in Section 20, unless such plans and materials were prepared by Little Caesar or have been approved by Little Caesar within the last six (6) months. No advertising or promotional materials shall be used unless and until Little Caesar shall have furnished written notice authorizing such use. Little Caesar will attempt to provide notice of its approval or rejection of advertising materials within 30 days of receipt of the materials, although in some cases it may take longer. Little Caesar also shall have the right at any time after use of such materials commences, to prohibit further use, effective upon receipt of written notice from it to Franchisee or the Cooperative.

**9.5. Grand Opening Advertising**. Franchisee will conduct a grand opening advertising and promotion program prepared by Franchisee and approved by Little Caesar in writing. Franchisee will spend at least Twelve Thousand Dollars ($12,000) to implement the approved grand opening advertising and promotion program. This amount is in addition to Franchisee's other financial obligations in this Section 9. The grand opening advertising and promotion program must take place within the period beginning 30 days before the opening of the Restaurant and ending 90 days after the opening of the Restaurant. Franchisee will furnish to Little Caesar, within 180 days after the opening of the Restaurant, such evidence as Little Caesar may require to verify Franchisee's fulfillment of its obligations in this Section.

**9.6. Copyrights and Other Rights**. Franchisee acknowledges and agrees that Little Caesar owns all copyrights and other rights to all existing and future advertising and promotional materials that contain any of the Proprietary Marks or that otherwise relate to the Restaurant, regardless of the party that created such materials. Franchisee shall (and shall cause its employees and agents to) sign all documents required by Little Caesar to confirm this ownership.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 29 of 44

**9.7. Advertising for Prospective Franchisees**. Franchisee must display and maintain franchisee recruiting materials in the manner specified by Little Caesar. Little Caesar will be responsible for providing those materials at its cost.

**9.8. Little Caesar Advertising**. Little Caesar may, from time to time in its sole discretion, expend its own funds and resources to produce and purchase marketing and promotional materials and conduct such advertising as Little Caesar deems necessary or desirable. In any discretionary advertising, marketing, or promotional effort conducted solely by or on behalf of Little Caesar, Little Caesar shall have sole discretion over the content, form, and geographic distribution of such efforts and materials, and Little Caesar shall have no obligation to expend any funds or resources in your Territory or to provide or sell to you any advertising, marketing, or promotional materials produced by or on behalf of Little Caesar.

**9.9. Ownership of Advertising**. Little Caesar shall retain ownership over all products, materials, and rights that result from any advertising, marketing, and promotional programs created, purchased, produced or conducted by or on behalf of Franchisee, Little Caesar, the CAESAR FUND, or any Cooperative. No copyrights or other rights or interest in any tangible or intangible materials or in the Proprietary Marks shall vest in Franchisee as a result of any contribution to, or participation in, any advertising, marketing, or promotional program. If notwithstanding this provision Franchisee is deemed to have acquired any copyrights, contractual rights or common law rights in any advertising programs or materials, Franchisee shall execute such documents or instruments as Little Caesar requests to effect an assignment of such rights to Little Caesar or its affiliate.

## 10. INSURANCE

**10.1. Franchisee's Insurance Obligation**. Franchisee shall procure, prior to the opening of the Restaurant, and shall maintain in full force and effect at all times during the term of this Agreement, at Franchisee's expense, an insurance policy or policies protecting Franchisee, Little Caesar and its affiliates, and their respective shareholders, directors, employees, and agents against any demand or claim with respect to personal and bodily injury, death, or property damage, or any loss, liability, or expense whatsoever arising or occurring at or in connection with the Restaurant. Such policy or policies shall: (i) be written by insurer(s) acceptable to Little Caesar; (ii) name Little Caesar, and its shareholders, directors, employees, and agents as additional insureds; (iii) comply with the requirements prescribed by Little Caesar at the time such policies are obtained; (iv) provide at least the types and minimum amounts of coverage specified in the Manuals, the Franchise Disclosure Document or such other documentation or materials (including, without limitation, general commercial liability, automobile liability and business interruption insurance); and (v) contain a waiver by Franchisee and its insurers of their subrogation rights against Little Caesar and its affiliates, and their respective shareholders, directors, employees and agents.

**10.2. Franchisee's Insurance Obligation Not Affected by Little Caesar's Insurance**. Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Little Caesar, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 18.4 of this Agreement.

**10.3. Additional Required Endorsements**. All public liability and property damage policies shall contain a provision that Little Caesar, although named as an additional insured, shall nevertheless be entitled to recover under such policies on any loss occasioned to Little Caesar or its shareholders, directors, employees, and agents by reason of their negligence.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc Exhibit Exhibit F    Pt. 1    Page 30 of 44

**10.4.    Certificates of Insurance**.  At least ten (10) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any policy, Franchisee shall deliver to Little Caesar Certificates of Insurance evidencing the proper types and minimum amounts of coverage.  All Certificates shall expressly provide that no fewer than thirty (30) days' prior written notice shall be given Little Caesar in the event of material alteration to or cancellation or non-renewal of the coverages evidenced by such Certificates.  Certificates evidencing the insurance required by this Section shall name Little Caesar, and each of its affiliates, shareholders, directors, employees, and agents as additional insureds, and shall expressly provide that any interest of each shall not be affected by any breach by Franchisee of any policy provisions for which such Certificates evidence coverage.

**10.5.    Little Caesar's Right to Secure Insurance on Behalf of Franchisee**.  Should Franchisee, for any reason, fail to procure or maintain the insurance required by this Agreement, as such requirements may be revised from time to time by Little Caesar in the Manuals or otherwise in writing, Little Caesar shall have the right and authority (but not the obligation) to immediately procure such insurance and to charge the premium on such insurance to Franchisee, which charges, together with a fee for Little Caesar's expenses in so acting, shall be payable by Franchisee immediately upon notice. The foregoing remedies shall be in addition to any other remedies Little Caesar may have.

**11.    ACCOUNTING AND RECORDS**

**11.1.    Maintenance of Records**.  Franchisee shall prepare, during the term of this Agreement, and shall preserve for at least four (4) years from the dates of their preparation, complete and accurate books, records, and accounts in accordance with generally accepted accounting principles and in the form and manner prescribed by Little Caesar from time to time in the Manuals or otherwise in writing. Notwithstanding anything contained herein to the contrary, Franchisee is responsible for maintaining and preserving records for longer periods if required by any applicable Federal, State or local laws or regulations.

**11.2.    Submission of Financial Statements and Tax Returns**.  Franchisee shall, at its expense, provide Little Caesar with a copy of Franchisee's financial statements showing the results of operations of the Restaurant for each fiscal year during the term of this Agreement.  The statements shall include a consolidated income statement, individual income statement for each Restaurant, balance sheet, and a statement of cash flows accompanied by a review report, prepared by an independent certified public accountant using generally accepted accounting principles and the accrual method of accounting, and shall be furnished within sixty (60) days after the end of each fiscal year of the Restaurant.  Franchisee also shall submit, within five (5) days of their filing, its federal and state tax returns for each year during the term of this Agreement; provided, however, that if Franchisee is not a corporation or partnership, Franchisee may, at its option, submit only those schedules to its personal tax filings which reflect the revenues and expenses of the Restaurant.

**11.3.    Submission of Periodic Reports**.  Franchisee shall, at its expense, provide Little Caesar, on forms and in the manner prescribed by Little Caesar, with (i) weekly reports of Gross Sales; (ii) financial statements on a quarterly basis which include a consolidated income statement, individual income statements for each Restaurant owned by Franchisee, and balance sheets and statements of cash flows; and (iii) such other data and information regarding the operation of the Restaurant as Little Caesar may require, within the time frames established by Little Caesar.  The weekly report of Gross Sales shall be due by noon Wednesday of the following week, or such other time as Little Caesar may specify.  The quarterly statements shall be due within thirty (30) days after the end of each quarter.  Each statement shall be signed by Franchisee's principal officer attesting that it is true and correct.  In addition, on or before the date specified by Little Caesar each year, Franchisee must deliver to Little Caesar an annual

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 31 of 44

business plan that includes forecasts and such other information about the Restaurant as Little Caesar specifies.

**11.4.    Submission of Additional Reports**.  Franchisee also shall provide to Little Caesar, for review or auditing, such other forms, sales reports, cash register receipts, records, information, and data as Little Caesar may request, on the forms and in the manner as are requested by Little Caesar.

**11.5.    Right to Audit Franchisee Records**.  Little Caesar or its designated agents shall have the right at any time to examine and copy, at Little Caesar's expense, the books, records, accounts, and business tax returns of Franchisee, and the personal tax returns of Franchisee's owners.  Little Caesar shall also have the right, at any time, to have an independent audit made of the books and records of Franchisee.  If an inspection or audit reveals that any payments due to Little Caesar have been understated in any report to Little Caesar, then Franchisee shall immediately pay to Little Caesar the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of eighteen percent (18%) per annum calculated monthly, or the maximum rate permitted by law, whichever is less.  If an inspection or audit discloses an understatement in any report of two percent (2%) or more, Franchisee shall, in addition to repayment of monies owed with interest, reimburse Little Caesar for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and accounting and legal costs).  The foregoing remedies shall be in addition to any other remedies Little Caesar may have because of such under-reporting.

## 12.    TRANSFER OF INTEREST

**12.1.    Transfer by Little Caesar**.  Little Caesar shall have the right to transfer or assign all or any part of its rights or obligations under this Agreement to any person or legal entity.  With respect to any assignment which results in the subsequent performance by the assignee of all of Little Caesar's obligations under this Agreement, the assignee shall expressly assume and agree to perform such obligations, and shall become solely responsible for all obligations of Little Caesar under this Agreement from the date of assignment.  In addition, and without limitation to the foregoing, Franchisee expressly affirms and agrees that Little Caesar may sell its assets, its Proprietary Marks, or its System; may sell its securities in a public offering or in a private placement; may merge, acquire other corporations, or be acquired by another corporation; and may undertake a refinancing, recapitalization, leveraged buy-out, or other economic or financial restructuring.

**12.2.    Transfer by Franchisee**.  Franchisee understands and acknowledges that Little Caesar has granted this franchise in reliance on the business skill, financial capacity, and personal character of Franchisee (or of the direct and indirect owners of Franchisee, if Franchisee is a corporation or other entity).  Accordingly, neither Franchisee nor any immediate or remote successor to any part of Franchisee's interest in this Agreement, nor any individual, partnership, corporation, or other legal entity which directly or indirectly owns any interest in Franchisee shall, without the prior written consent of Little Caesar, transfer, pledge or otherwise encumber this Agreement, any of the rights or obligations of Franchisee under this Agreement, any interest in Franchisee, any material assets of Franchisee, or all or substantially all of the assets of the Restaurant.  Any purported assignment or transfer, by operation of law or otherwise, not having the written consent of Little Caesar required by this Section 12.2, shall be null and void and shall constitute a material breach hereof, for which Little Caesar may then terminate without an opportunity to cure pursuant to Section 13.2.4 hereof.

If the proposed transfer, alone or together with other previous, simultaneous, or proposed transfers, would effect a change of control of Franchisee or the Restaurant, Little Caesar shall have the right to require that any or all of the following conditions are satisfied, as determined by Little Caesar in its sole discretion, in addition to any other conditions imposed by Little Caesar:

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 32 of 44

12.2.1.	All of the transferor's accrued monetary obligations and all other outstanding obligations to Little Caesar, Little Caesar's affiliates; any payments required by Section 3.3 of this Agreement; all obligations to Franchisee's landlord, suppliers and other creditors; and taxes, have been satisfied;

12.2.2.	The transferor is not in default of any provision of this Agreement, or any other agreement between Franchisee and Little Caesar or Little Caesar's affiliates;

12.2.3.	The transferor shall have executed a general release, in a form satisfactory to Little Caesar, of any and all claims which it may have against Little Caesar and its affiliates, shareholders, directors, employees, and agents, including without limitation, claims arising under federal, state, and local laws and regulations;

12.2.4.	At Little Caesar's option, the transferee shall either (i) enter into a written assignment, in a form satisfactory to Little Caesar, assuming and agreeing to fulfill all of Franchisee's obligations hereunder, or (ii) execute, for a term ending on the expiration of this Agreement and with such renewal term as may be provided in this Agreement, the standard form franchise agreement and any ancillary documents then being offered to new System franchisees, the terms of which may differ from the terms of this Agreement, including but not limited to higher royalty fees, advertising contributions and other fees; provided, however, that the transferee shall not be required to pay any initial franchise fee. If the transferee is other than an individual, all owners of a direct or indirect beneficial interest in the transferee shall execute guarantees of the transferee's obligations as provided in Section 16.4;

12.2.5.	The transferee (and, if the transferee is other than an individual, such owners of a direct or indirect beneficial interest in the transferee as Little Caesar may request) shall demonstrate to Little Caesar's satisfaction that it meets Little Caesar's educational, managerial, and business standards; possesses a good moral character (if an individual), business reputation, and credit rating; has the aptitude, ability, and requisite financial resources and capital to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; and that the terms of the proposed assignment do not place an unreasonable financial or operational burden on the transferee;

12.2.6.	If the proposed transferee is another Little Caesars franchisee, the transferee must not be in default under any agreement with Little Caesar and/or its affiliates and must have a good record of customer service and compliance with Little Caesar's operating standards;

12.2.7.	The transferee, at its expense, shall within the time specified by Little Caesar, refurbish, remodel, or otherwise change the Restaurant premises to conform to the then-current standards and specifications of the System;

12.2.8.	The transferor shall remain liable for all of the obligations to Little Caesar in connection with the Restaurant that arose prior to the effective date of the transfer and shall execute any and all instruments requested by Little Caesar to evidence such liability;

12.2.9.	At transferee's expense, the transferee and those of its employees selected by Little Caesar, shall successfully complete the pre-opening training program described in Section 5.8, and shall pay the then-current training fee charged by Little Caesar in those circumstances where Franchisee is required to pay a fee for attendees at the initial training program;

12.2.10.	The transferor shall pay a transfer fee of Five Thousand Dollars ($5,000) per Restaurant; provided, however, that, (i) no transfer fee will be required in connection with a transfer from a sole proprietorship or a partnership to a corporation or limited liability company in which the former

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 33 of 44

proprietor or partners own all of the outstanding stock or membership interests, or a transfer pursuant to Section 12.6; and (ii) the transfer fee shall be One Thousand Dollars ($1,000) per Restaurant for a transfer to an existing Little Caesar franchisee;

12.2.11.    The transferor shall provide written evidence that the transferee has the right to remain at the Approved Location for the duration of the then-current term of this Agreement;

12.2.12.    Franchisee shall provide Little Caesar with a copy of the proposed purchase/sale agreement and such other information regarding the terms of the transfer as Little Caesar may request, including, but not limited to, the purchase price and payment terms. Little Caesar shall have the right to review and approve the terms of the sale, including, but not limited to, the purchase price and payment terms;

12.2.13.    Any financing (secured or unsecured) obtained by the transferee in connection with the transfer shall be subordinate to any current or future obligations to Little Caesar or its affiliate; and

12.2.14.    Unless expressly authorized by Little Caesar in writing, the transferee and its affiliates collectively shall not directly or indirectly own more than one hundred (100) Little Caesars restaurants, including the Restaurant being transferred hereunder, and no two Little Caesars restaurants owned by the transferee and its affiliates, including the Restaurant being transferred hereunder, shall be more than one hundred (100) miles apart. Franchisee acknowledges that Little Caesar shall have the right to make exceptions to this condition in its sole discretion.

**12.3.    Prohibited Transfers**. Notwithstanding any other provision of this Section 12:

12.3.1.    Franchisee shall not transfer its rights under this Agreement until Franchisee has operated the Restaurant for a period of not less than six (6) months.

12.3.2.    Neither this Agreement, nor any ownership interest in Franchisee, nor material assets of Franchisee, nor all or substantially all of the assets of the Restaurant shall be transferred to any Publicly-Traded Entity, as defined below, or to any entity whose direct or indirect parent is a Publicly-Traded Entity. "**Publicly-Traded Entity**" means an entity whose securities trade on any securities exchange or are quoted in any publication or electronic reporting service maintained by the National Association of Securities Dealers, Inc. or its successor.

12.3.3.    Neither Franchisee nor any direct or indirect owner of Franchisee shall offer securities of Franchisee in a public offering or, except as provided in Section 12.8, in a private offering.

12.3.4.    If any direct or indirect owner of Franchisee offers its securities in a public offering or, except as provided in Section 12.8, in a private offering, Little Caesar shall have the right to terminate this Agreement without opportunity to cure in accordance with Section 13.2.4.

12.3.5.    It shall be reasonable for Little Caesar to disapprove any proposed transfer if, as a result of the transfer, the beneficial ownership of Franchisee would be, in Little Caesar's business judgment, so widely held by different persons as to materially compromise the financial stake and dedication of those persons in whose individual or collective character, skill, attitude, and business ability Little Caesar relies on in granting a franchise.

**12.4.    Execution of Covenants by Transferee**. Little Caesar shall have the right to require as a further condition pre-requisite to its consent to any transfer of interest pursuant to Section 12.2, that the transferee (and all officers, directors, and direct and indirect owners of the transferee, if the transferee

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 34 of 44

is a corporation or other entity) execute the covenants concerning confidentiality, as set forth in Section 8.5, and non-competition, as set forth in Section 15.7 hereof.

**12.5.    Little Caesar's Right of First Refusal**.  If any party holding any direct or indirect interest in this Agreement, in Franchisee, or in all or substantially all of the assets of the Restaurant desires to accept any *bona fide* offer from a third party to purchase such interest, Franchisee shall notify Little Caesar of such offer at least forty-five (45) days before such transfer is proposed to take place, and shall provide such information and documentation relating to the offer as Little Caesar may require. Little Caesar shall have the right and option, exercisable within forty-five (45) days after receipt of such written notification and any background materials concerning the proposed transfer that Little Caesar shall request, to send written notice to the seller that Little Caesar intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Little Caesar elects to purchase the seller's interest, the closing on such purchase shall occur within forty-five (45) days from the date of notice to the seller of the election to purchase by Little Caesar.  In addition to accepting the terms of the third party offer, Little Caesar shall be entitled to all of the customary representations and warranties given by a seller of assets of a business, including, without limitation, representations and warranties as to ownership, condition of and title to assets, liens and encumbrances on the assets, validity of contracts and agreements, and seller's contingent and other liabilities affecting the assets.  If Little Caesar declines to purchase the seller's interest, Franchisee shall have ninety (90) days from the earlier of (i) receipt of a notice from Little Caesar declining to exercise its right of first refusal, or (ii) forty-five (45) days after Little Caesar's receipt of the transferor's written notification of the proposed transfer, to close on the transfer of such interest, subject to Little Caesar's approval pursuant to this Section 12.  Failure to effect a transfer with the third party within the ninety (90) day period, or any material change thereafter in the terms of the offer prior to closing, shall constitute a new offer subject to the same rights of first refusal by Little Caesar as in the case of the third party's initial offer.  Failure of Little Caesar to exercise the option afforded by this Section 12.5 shall not constitute a waiver of any requirement in this Section 12 or any other provision of this Agreement with respect to a proposed transfer.  In the event the consideration, terms, and/or conditions offered by a third party are such that Little Caesar may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Little Caesar may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, an independent appraiser shall be jointly designated, at Little Caesar's expense, and the appraiser's determination shall be binding.

**12.6.    Death or Mental or Physical Incapacity**.  Upon the death or mental or physical incapacity of Franchisee (if an individual) or of any person with an interest in Franchisee, the executor or administrator of the estate of such person, or the personal representative of such person, shall transfer within six (6) months after such death or mental or physical incapacity, such interest to a third party approved by Little Caesar.  Such transfers, including, without limitation, transfers by devise or inheritance, shall be subject to the same conditions as any *inter vivos* transfer, except that the transfer fee shall be waived.  However, in the case of a transfer by devise or inheritance, if the heirs or beneficiaries are unable to meet the conditions in Section 12.2 hereof, Little Caesar shall establish a time frame within which the executor or administrator of the deceased must dispose of the deceased's interest in Franchisee, which disposition shall be subject to all the terms and conditions for transfers contained herein.  If the interest is not disposed within the time frame established by Little Caesar, Little Caesar may terminate this Agreement pursuant to Section 13.2.7 hereof.

**12.7.    Approval of Sale Does Not Constitute Waiver of Rights**.  Little Caesar's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims it may have against the transferring party, nor shall it be deemed a waiver of Little Caesar's right to demand exact compliance with any of the terms hereof by any transferee.

**12.8. Private Sale of Securities**. The sale of securities of Franchisee or of any direct or indirect owner of Franchisee (including, without limitation, common or preferred stock, bonds, debentures, general or limited partnership interests, or membership units, whether certificated or uncertificated), is subject to all of the conditions and prohibitions set out in Sections 12.2 and 12.3 hereof. For any proposed securities offering approved in principle by Little Caesar, Franchisee shall submit to Little Caesar for its review all materials required by federal or state law for the offering and/or intended to be used in any exempt offering. No such materials shall be submitted to a government agency or to prospective investors unless and until Little Caesar has furnished its written approval. No offering materials shall imply, by use of the Proprietary Marks or otherwise, that Little Caesar is participating as an underwriter, issuer, or offeror of securities of either Franchisee or Little Caesar, or that Little Caesar has approved the offering prospectus or any other aspect of the offering. Any review by Little Caesar of the offering materials or the information included therein shall be conducted solely for Little Caesar's benefit to determine their conformance with Little Caesar's internal policies, and not to benefit or protect any other person. No investor should interpret such review by Little Caesar, nor shall Franchisee or anyone acting on Franchisee's behalf suggest, that Little Caesar's review constitutes an approval, endorsement, acceptance, or adoption of any representation, warranty, covenant, or projection contained in the materials reviewed; and the offering documents shall include legends and statements, in the form and manner specified by Little Caesar, disclaiming Little Caesar's liability for, or involvement in, the transaction described in the offering documents. Should Little Caesar object to any reference to it or its business in such offering literature or prospectus, such literature or prospectus shall not be used unless and until Little Caesar's objections are withdrawn. Franchisee and other participants in the offering, must fully indemnify, defend and hold harmless Little Caesar, its affiliates and their respective directors, officers, employees, shareholders, and agents from any and all losses and expenses (as defined in Section 18.4) that arise directly or indirectly from, as a result of, or in connection with the offering. Franchisee agrees that any such indemnification shall be subject to the same terms and conditions as described in Section 18.4 of this Agreement. For each proposed offering, Franchisee shall pay to Little Caesar a non-refundable fee of Twenty-Five Thousand Dollars ($25,000), at the time that Franchisee submits materials for review by Little Caesar and shall pay additional sums to cover Little Caesar's out-of-pocket costs to review the materials when incurred if greater than Twenty-Five Thousand Dollars ($25,000). Franchisee shall give Little Caesar written notice at least forty five (45) business days prior to the date of commencement of any offering or other transaction covered by this Section 12.8. Any such offering shall be subject to Little Caesar's right of first refusal as provided in Section 12.5 hereof.

**12.9. Transfer by Franchisee Bankruptcy - Right of First Refusal**. If, for any reason, this Agreement is not terminated pursuant to Section 13.1 and this Agreement is assumed or assignment of the same to any person or entity who has made a *bona fide* offer to accept an assignment of this Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth (a) the name and address of the proposed assignee, and (b) all of the terms and conditions of the proposed assignment and assumption, shall be given to Little Caesar within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date that the application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Little Caesar shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Little Caesar itself, upon the same terms and conditions and for the same consideration, if any, as in the *bona fide* offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 36 of 44

## 13.  DEFAULT AND TERMINATION

**13.1.  Termination Upon Occurrence of Bankruptcy or Insolvency**.  Franchisee shall be deemed to be in default hereunder, and all rights granted herein shall automatically terminate without notice to Franchisee or opportunity to cure, if the total of Franchisee's debts is greater than the fair value of Franchisee's assets, or if Franchisee is generally not paying its debts as those debts become due, or if Franchisee admits in writing its inability to pay its debts or Franchisee otherwise becomes insolvent or makes a general assignment for the benefit of creditors; or, if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or, if Franchisee is adjudicated as bankrupt or insolvent; or, if a bill in equity or other proceeding for the appointment of a receiver of Franchisee or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or, if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or, if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or, if a final judgment remains unsatisfied or of record for thirty (30) days or longer (unless a *supersedeas* bond is filed); or, if Franchisee is dissolved; or, if execution is levied against Franchisee's business or property; or, if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

**13.2.  Termination with Notice and Without Right to Cure**.  Upon the occurrence of any of the following events, Franchisee shall be deemed to be in default and Little Caesar may terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon receipt of notice by Franchisee:

13.2.1.    If Franchisee fails to execute a lease for the Restaurant premises, or otherwise acquire the right to do business at the Approved Location, within the time-frame provided in Section 6.7 of this Agreement; or if Franchisee fails to open the Restaurant within the time-frame provided in Section 6.7 of this Agreement;

13.2.2.    If Franchisee at any time ceases to operate or abandons the Restaurant for a period of three (3) consecutive days, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if through no fault of Franchisee, the premises are damaged or destroyed, then Franchisee shall have thirty (30) days within which to apply for Little Caesar's approval to relocate or reconstruct the premises, which approval shall not be unreasonably withheld.  It shall be reasonable for Little Caesar to withhold approval for any relocation or reconstruction if the Restaurant will not be able to re-open within ninety (90) days of the closing of the previous location;

13.2.3.    If Franchisee, or any officer, director, or partner of Franchisee, commits a felony, a crime involving moral turpitude, or any other crime or offense that Little Caesar believes is likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Little Caesar's interest therein;

13.2.4.    Any transfer occurs of any rights or obligations hereunder, or of any direct or indirect ownership interest in Franchisee, or of the assets of the Restaurant, that does not comply with the terms of Section 12 hereof;

13.2.5.    If Franchisee fails to comply with the covenants in Section 15.2 hereof or fails to deliver to Little Caesar executed covenants required under Sections 8.5, 12.4 or 15.8 hereof;

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 37 of 44

13.2.6.　　If, contrary to the terms of Section 8, Franchisee or any principal of Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Little Caesar;

13.2.7.　　If an approved transfer of a person's interest is not effected following death or mental or physical incapacity as required by Section 12.6 hereof;

13.2.8.　　If Franchisee knowingly maintains false books or records, or knowingly submits any false reports to Little Caesar;

13.2.9.　　If the lease for the Restaurant premises (i) expires without being renewed; (ii) for any reason is terminated; or (iii) is assumed by Little Caesar pursuant to Section 5.10.7 of this Agreement, unless any such event occurs in connection with a previously approved change in the Restaurant location;

13.2.10.　　If Franchisee receives 3 or more notices of default within any 12-month period, whether the defaults are similar or different and whether or not any of them is cured after notice, or if Franchisee receives 3 or more notices of default for the same default during the term of this Agreement, whether or not cured after notice;

13.2.11.　　If, within ten (10) days after receipt of written notice from Little Caesar that any required payment is overdue, Franchisee does not make such payment to Little Caesar, Little Caesar's affiliates, or to Franchisee's landlord, suppliers, or creditors, unless, with respect to Franchisee's suppliers or creditors, Franchisee notifies Little Caesar of the existence of a *bona fide* dispute and takes immediate action to resolve it;

13.2.12.　　If Franchisee or any principal of Franchisee has made any material misrepresentations in connection with Franchisee's application to Little Caesar for the franchise granted herein or in connection with the operation of Franchisee's Restaurant or Franchisee's performance under this Agreement;

13.2.13.　　The perpetration by Franchisee of common law fraud against Little Caesar or any customer or supplier of Franchisee;

13.2.14.　　The willful or repeated failure of Franchisee to meet any requirements or specifications established by Little Caesar with respect to product quality, physical property, condition of equipment or materials used, products manufactured, menu, or the use of products, packaging or promotional materials that have not been specified or approved by Little Caesar. Little Caesar may terminate for repeated failures even if Franchisee did not receive written notice of prior failures and/or cured the prior failures;

13.2.15.　　If Franchisee knowingly underreports Gross Sales on any occasion or if an inspection or audit reveals that any payment(s) due to Little Caesar have been understated in any report to Little Caesar (i) by five percent (5%) or more, or (ii) twice in any one year period;

13.2.16.　　If Franchisee fails to obtain or maintain required insurance coverage;

13.2.17.　　If Franchisee or any principal of Franchisee fails to successfully complete the initial training program required by Section 5.8;

Case 17-03469-TOM7　　Doc 95-9　　Filed 09/05/17　　Entered 09/05/17 15:32:05　　Desc
Exhibit Exhibit F　　Pt. 1　　Page 38 of 44

13.2.18.    If Franchisee takes, withholds, misdirects or appropriates for Franchisee's own use any funds withheld from Franchisee's employees' wages for employees' taxes, FICA, insurance or benefits; generally fails to deal fairly and honestly with Franchisee's employees or customers; or knowingly permits or, having discovered the facts, fails to take any action against or to discharge any agent, or employee who has embezzled any funds or property of any customers, Little Caesar, Franchisee, or others;

13.2.19.    If Franchisee refuses to permit Little Caesar to inspect Franchisee's Restaurant, books, records, and other documents pursuant to Little Caesar's right to do so under this Agreement;

13.2.20.    If Franchisee fails to cure any default under this Agreement which materially impairs the goodwill associated with the Proprietary Marks or presents a health or safety hazard to Restaurant employees or customers, following delivery of a written notice to cure at least twenty-four (24) hours in advance thereof;

13.2.21.    If any other franchise agreement between Little Caesar or any of its affiliates (regardless of the type of restaurant established by the franchise agreement) and Franchisee or an affiliate of Franchisee is terminated by Little Caesar or its affiliates for a default under the franchise agreement;

13.2.22.    If Little Caesar determines, in its reasonable business judgment, that Franchisee has breached a material provision of this Agreement that is not, by its nature, curable or that goes to the essence of the Agreement.

**13.3.    Termination with Notice and Opportunity to Cure.**  Except as provided in Sections 13.1 and 13.2 hereof, Franchisee shall have thirty (30) days after its receipt from Little Caesar of a written notice of default within which to remedy any default hereunder and to provide evidence thereof to Little Caesar.  If any such default is not cured within such time, or such longer period as applicable law may require, Little Caesar may immediately terminate this Agreement.  Franchisee shall be in default hereunder for any failure substantially to comply with any of the requirements imposed by this Agreement, as they may from time to time be supplemented in writing as permitted herein, or to carry out the terms hereof in good faith.

**13.4.    Cross-Default.**  Any default by Franchisee under any other agreement between Little Caesar or its affiliates as one party, and Franchisee or any of Franchisee's owners or affiliates as the other party that is so material as to permit Little Caesar to terminate such other agreement, shall be deemed to be a default of this Agreement, and Little Caesar shall have the right, at its option, to terminate this Agreement, effective immediately upon notice to you.

**13.5.    Cross-Guarantee.**  In the event Franchisee or any owner of Franchisee now holds or later acquires any interest in a Little Caesars restaurant other than the Restaurant franchised under this Agreement, Franchisee and its owners shall unconditionally guarantee full performance and discharge by the franchisee of all of the franchisee's obligations under the franchise agreement for such Little Caesars restaurant, including without limitation the payment of all royalty fees, advertising fees, and other obligations.

**13.6.    Extension of Cure Period by Operation of Law.**  Notwithstanding the termination provisions set forth above, in the event that any valid, applicable law or regulation of a competent governmental authority having jurisdiction over this Agreement or the parties hereto limits Little Caesar's rights of termination hereunder or shall require longer notice or cure periods than those set forth above, this Agreement shall be deemed amended to conform to the minimum notice or cure periods or restrictions upon termination required by such laws and regulations.  Little Caesar shall not, however,

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 39 of 44

be precluded from contesting the validity, enforceability, or application of such laws or regulations in any action, proceeding, hearing, or dispute relating to this Agreement or the termination thereof.

**13.7. Cumulative Remedies**. The rights and remedies granted to Little Caesar by this Agreement will not be deemed to prohibit Little Caesar from exercising any other right or remedy provided under this Agreement or permitted by law or equity. Little Caesar's right to terminate this Agreement in accordance with Section 13 shall be deemed to permit Little Caesar to elect remedies other than termination.

## 14. OBLIGATIONS UPON TERMINATION OR EXPIRATION

Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and Franchisee shall comply with each of the provisions below.

**14.1. Cessation of Restaurant Operations**. Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Little Caesar.

**14.2. Cessation of Use of Confidential Information and Proprietary Marks**. Franchisee shall immediately and permanently cease to use, in any manner whatsoever: (a) any products or ingredients which incorporate trade secrets, any confidential methods, procedures, and techniques associated with the System; and (b) the Proprietary Marks and all other proprietary marks and distinctive forms, slogans, signs, symbols, and devices associated with the System. At Little Caesar's option, any sign bearing the Little Caesars name will be deemed to be the property of Little Caesar even though Franchisee may have paid a third party to make the sign.

**14.3. Cancellation of Assumed Name Registration**. Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains any of the Proprietary Marks or any derivative thereof, and Franchisee shall furnish Little Caesar with evidence satisfactory to Little Caesar of compliance with this obligation within thirty (30) days after termination or expiration hereof. If Franchisee fails or refuses to do so, Little Caesar may, in Franchisee's name, on Franchisee's behalf, and at Franchisee's expense, execute any and all necessary documents; and Little Caesar is hereby irrevocably appointed by Franchisee as Franchisee's attorney-in-fact to effectuate the foregoing obligation.

**14.4. Occupancy of Restaurant Premises; Modification of Premises**.

14.4.1. If Franchisee or any affiliate, owner, or officer of Franchisee, or any of their respective family members, leases the Restaurant premises from a landlord who is not affiliated with Franchisee, Franchisee or its affiliate, owner or officer shall, at Little Caesar's request, immediately assign to Little Caesar, effective on the date specified by Little Caesar, Franchisee's or its affiliate's, owner's or officer's interest in the lease for the Restaurant premises. Franchisee must provide a current copy of the lease for Little Caesar's review in determining whether to request assignment of the lease. Franchisee shall also provide any landlord consent requested by Little Caesar. Little Caesar will have the right to further assign the lease, without recourse, to any affiliate or approved franchisee of Little Caesar.

14.4.2. If Franchisee or any affiliate, owner, or officer of Franchisee, or any of their respective family members, owns the Restaurant premises, that owner shall offer to sell or lease the premises to Little Caesar, at Little Caesar's option. Little Caesar will designate a reputable, independent commercial real estate appraiser to determine the fair market purchase price and fair market rental rate for the premises based on comparisons with recent sale and lease transactions for similar buildings in the area.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 40 of 44

Little Caesar will have thirty (30) days after receipt of the appraiser's determination of the fair market purchase price and fair market rental rate to accept the offer to purchase the premises, accept the offer to lease the premises, or decline both offers. If Little Caesar elects to purchase or lease, the parties will sign Little Caesar's then-current form purchase agreement or then-current form lease, as applicable. In the case of a lease, the initial lease term and the number and length of renewal options must be commercially reasonable when compared to leases for similar space in buildings in the area. Little Caesar will have the right to assign the purchase agreement or lease, without recourse, to any affiliate or approved franchisee of Little Caesar.

14.4.3.    If Little Caesar elects to assume Franchisee's lease or to enter into a purchase agreement or lease for the premises, Franchisee shall promptly vacate the premises, rendering all necessary assistance to Little Caesar to enable it to take prompt possession thereof.

14.4.4.    If Little Caesar does not assume Franchisee's lease or enter into a purchase agreement or lease for the Restaurant premises, Franchisee shall make such modifications or alterations to the premises (including but not limited to changing signs, color scheme, configuration, layout, wall tiles and floor tiles) immediately upon termination or expiration hereof as may be necessary to distinguish the appearance of the premises from that of a Little Caesars Restaurant. Franchisee shall make such specific additional changes as Little Caesar may request to dissociate the location from the System (including but not limited to, at Little Caesar's option, the assignment of the Restaurant's telephone number(s) to Little Caesar).

**14.5.    No Similar Marks**. Franchisee agrees not to use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks in connection with any other business or the promotion thereof which is likely to cause confusion, mistake, or deception, or which is likely to dilute the rights of the Little Caesar or its affiliate in and to the Proprietary Marks. Franchisee further agrees not to use any designation of origin or description or representation which falsely suggests or represents an association or connection with Little Caesar.

**14.6.    Franchisee Payment of Debts**. Franchisee shall promptly pay all sums owing to Little Caesar and its affiliates, which obligation shall give rise to and remain, until paid in full, a lien in favor of Little Caesar and its affiliates against any and all of the personal property, furnishings, equipment, signs, fixtures, and inventory owned by Franchisee and on the Restaurant premises at the time of default.

**14.7.    Liquidated Damages for Non-Compliance; Payment of Little Caesar's Costs in Securing Compliance**. If Franchisee fails to comply promptly with any of its obligations in this Section 14: (a) Franchisee agrees to pay Little Caesar $250 per day for each day that Franchisee is in default, as a reasonable estimate of the damages suffered by Little Caesar; and (b) to prevent further injury, Little Caesar may hire a third party or use its own personnel to de-identify the Restaurant and/or carry out any other obligations of Franchisee on Franchisee's behalf. Franchisee's obligation for liquidated damages shall not affect Little Caesar's right to obtain appropriate injunctive relief and other remedies to enforce this Section 14, its trademark rights under Section 7 above, and the covenants set forth in Sections 8 and 15. In addition to the liquidated damages provided above, Franchisee shall pay to Little Caesar: (a) the amount of expenses reasonably incurred by Little Caesar to perform any obligations that Franchisee has failed to perform (using reasonable hourly rates for Little Caesar personnel, and including (if applicable) travel and lodging expenses); and (b) all damages, costs, and expenses, including without limitation attorneys' fees, incurred by Little Caesar subsequent to the termination or expiration hereof in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14. Little Caesar will have the right to transfer from Franchisee's account by EFT, as provided in Section 3.4, a payment of $10,000 in respect of the liquidated damages and expenses referred to in this Section 14.7. Upon completion of de-identification of the Restaurant to Little Caesar's reasonable satisfaction and payment

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 41 of 44

of the expenses provided for in this section, Little Caesar will refund to Franchisee any unused portion of the $10,000 remaining. If the $10,000 payment is insufficient to satisfy Franchisee's obligations under this section, Franchisee shall pay any balance due within 30 days after presentation of appropriate invoices by Little Caesar.

**14.8.    Liquidated Damages Upon Termination Due to Franchisee's Default**.  In the event this Agreement is terminated prior to the end of its term due to Franchisee's default hereunder, in addition to the amounts set forth in Section 14.6 and 14.7 above, Franchisee shall promptly pay to Little Caesar a lump sum payment (as damages and not as a penalty) for breaching this Agreement and for Little Caesar's lost future revenue as a result of such breach in an amount equal to:  (a) the average royalty fees and advertising fees payable by Franchisee under Sections 3.2 and 9.1 above each month over the twelve (12) month period immediately preceding the date of termination (or, if the Restaurant has been open less than twelve (12) months, the average royalty fees and advertising fees payable by Franchisee each month the Restaurant was open); (b) multiplied by the lesser of (i) thirty-six (36) months, or (ii) the number of months then remaining in the then-current term of this Agreement. Franchisee acknowledges that a precise calculation of the full extent of the damages Little Caesar will incur in the event of termination of this Agreement as a result of Franchisee's default is difficult to determine and that this lump sum payment is reasonable in light of the damages Little Caesar will incur for Franchisee's material default causing the premature termination of this Agreement.  This lump sum payment shall be in lieu of any damages for Little Caesar's lost future revenue that Little Caesar may incur as a result of Franchisee's default, but it shall be in addition to all amounts provided above in Sections 14.6 and 14.7 and other costs and expenses to which Little Caesar is entitled under the terms of this Agreement.  Franchisee's payment of this lump sum shall not affect Little Caesar's right to recover damages other than lost future revenue and to obtain appropriate injunctive relief and other remedies to enforce this Section 14, its trademark rights under Section 7 above, and the covenants set forth in Sections 8 and 15.

**14.9.    Franchisee Return of Manuals and Other Materials**.  Franchisee shall immediately return the Manuals and all other documents which contain Confidential Information relating to the operation of the Restaurant, and furnish Little Caesar with the name and address of all past and current Restaurant suppliers together with the amount(s) due, if any.  Franchisee also shall return, at Little Caesar's request, all unused products and ingredients which contain trade secrets, and Little Caesar shall refund the purchase price thereof plus shipping charges.

**14.10.    Little Caesar Right to Purchase Franchisee Assets**.  Little Caesar shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the furnishings, equipment, signs, fixtures, or supplies related to the operation of the Restaurant, at the fair market value for use in a restaurant operation, and all inventory at Franchisee's cost (excluding shipping, insurance, and any other ancillary charges).  Such thirty (30) day period will be extended for any period of time in which Franchisee fails to provide a current copy of the Restaurant lease to Little Caesar or otherwise cooperate with Little Caesar with its evaluation of the possible purchase of the above assets.  If the parties cannot agree on the price of any such items within fifteen (15) days after the exercise of the option, an independent appraiser shall be jointly designated, and the appraiser's determination shall be final and binding.  If Little Caesar elects to exercise any option to purchase herein provided, closing shall take place within fifteen (15) days after the purchase price shall have been established.  Little Caesar shall have the right to set off all amounts due from Franchisee, or due from Franchisee to any creditor, and the cost of the appraisal, if any, against the payment price of such items.

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 42 of 44

**14.11. Future Communications**. For three years following the termination or expiration of this Agreement, Franchisee agrees to advise Little Caesar of its current business and residential addresses and telephone numbers.

## 15. COVENANTS

**15.1. Franchisee to Devote Full Time and Best Efforts to Restaurant**. Franchisee covenants that during the term hereof, except as otherwise approved in writing by Little Caesar, Franchisee (or if Franchisee is a corporation or other entity, a principal of Franchisee) or an individual designated by Franchisee and approved by Little Caesar (which approval shall be subject to Little Caesar's determination, after review of such background information which it requests, that the designated individual is qualified to assume the responsibility to operate and manage the Restaurant, and, at Little Caesar's option, that the individual acquire an equity interest in the Franchised Business) shall devote its full time and best efforts to the management and operation of the Restaurant.

**15.2. Non-Competition During Term of Agreement**. Franchisee acknowledges that it shall receive valuable specialized training and Confidential Information, including, without limitation, information regarding the operational, sales, promotional, and marketing methods and techniques of Little Caesar and the System, which together constitute trade secrets of Little Caesar. Franchisee covenants that during the term hereof it shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with, any person, persons, or legal entity:

15.2.1. Divert or attempt to divert any business or customer of the Restaurant to any competitor by inducement or otherwise, or do or perform any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System;

15.2.2. Own, maintain, advise, operate, engage in, be employed by, make loans to, have any interest in or relationship or association with, a business which is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products; or

15.2.3. Employ or seek to employ, directly or indirectly, any person serving in a managerial position who is at the time or was at any time during the prior six (6) months employed by Little Caesar or its affiliates, or a franchisee of any restaurant concept franchised by Little Caesar or its affiliates, without the prior written consent of the then-current or prior employer. If Little Caesar or its affiliate was the prior employer, a violation of this Section shall entitle Little Caesar to liquidated damages equal to twice the annual salary of the employee (while employed by the prior employer), plus reimbursement of all costs and attorney fees incurred in enforcing this provision.

**15.3. Non-Competition After Term of Agreement**. Commencing upon the date of: (a) a transfer permitted under Section 12 of this Agreement; (b) expiration of this Agreement; (c) termination of this Agreement (regardless of the cause for termination); or (d) a final arbitration or court order (after all appeals have been taken) with respect to any of the foregoing events or with respect to enforcement of this Section 15.3, Franchisee and each owner of Franchisee shall not, during the time frame and in the geographic areas described below, without Little Caesar's prior written consent, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products. The prohibitions set forth in this Section 15.3 shall apply: (i) for a continuous uninterrupted one (1) year period with respect to the Designated Market Area, as defined by Nielsen, of any Little Caesars restaurant, regardless of concept, and regardless of whether the restaurant is owned by a franchisee of Little Caesar or by Little Caesar or

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 43 of 44

an affiliate; and (ii) for a continuous uninterrupted two (2) year period with respect to the Designated Market Area in which Franchisee's Restaurant was located. Such time periods shall be tolled for any period of time during which Franchisee or any owner of Franchisee is in breach of this Section 15.3 and shall resume only when such person begins or resumes compliance.

**15.4. Breach of Covenants Cause Irreparable Injury**. Franchisee acknowledges that Franchisee's violation of the terms of this Section 15 would result in irreparable injury to Little Caesar for which no adequate remedy at law may be available, and agrees to pay all court costs and attorneys' fees incurred by Little Caesar in obtaining any injunctive or other equitable or legal relief with respect to such conduct or action.

**15.5. Little Caesar Right to Reduce Scope of Covenants**. Franchisee agrees and acknowledges that Little Caesar shall have the right to reduce the scope of any covenant or any portion thereof set forth in Sections 15.2 and 15.3 hereof, without Franchisee's consent, effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 21 hereof.

**15.6. Covenants Reasonable.** Franchisee agrees that the covenants contained in Sections 15.2 and 15.3 above are reasonable with respect to the activities covered, duration, and geographic scope, and that Franchisee shall not raise any issue of the reasonableness of the terms of such covenants in any proceeding to enforce those covenants. Franchisee agrees and acknowledges that it and each of its owners possess skills and abilities of a general nature that provide them with other opportunities for employment and, therefore, Little Caesar's enforcement of the non-competition covenant under Section 15.3 will not deprive Franchisee or any of its owners of their personal goodwill or ability to earn a living through alternative means.

**15.7. Enforceability of Covenants Not Affected by Franchisee Claims**. Franchisee expressly agrees that the existence of any claims it may have against Little Caesar, whether or not arising hereunder, shall not constitute a defense to the enforcement by Little Caesar of the covenants in this Section 15.

**15.8. Commitments from Individuals**. Franchisee shall obtain signed agreements containing restrictions similar to those set forth in this Section 15 (including restrictions applicable upon the termination of a person's relationship with Franchisee) from the following persons: (1) all officers, directors, and store supervisors of Franchisee; and (2) all persons and entities from which Little Caesar may require a Guarantee pursuant to Section 16.4 below. Franchisee shall furnish copies of the executed agreements required by this Section to Little Caesar upon request. Little Caesar has the right to approve the form of the agreements required by this Section 15.8, each of which must identify Little Caesar as a third party beneficiary with the independent right to enforce the agreement.

## 16. FRANCHISEE AS A CORPORATION, PARTNERSHIP OR LLC

**16.1. Corporate Franchise**. Except as otherwise approved in writing by Little Caesar, if Franchisee is a corporation, it shall: (i) confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) maintain stop transfer instructions on its records against the transfer of any equity securities and only issue securities upon the face of which a legend appears, in a form satisfactory to Little Caesar, which references the transfer restrictions imposed by this Agreement; (iii) not issue any voting securities or securities convertible into voting securities other than with Little Caesar's consent and in compliance with all other

Case 17-03469-TOM7    Doc 95-9    Filed 09/05/17    Entered 09/05/17 15:32:05    Desc
Exhibit Exhibit F    Pt. 1    Page 44 of 44