# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE : | ) | **Chapter 11** |
| | ) | |
| **ALABAMA PARTNERS, LLC, *et al.*,** | ) | **Case No. 17–03469-TOM11** |
| | ) | |
| Debtors.[1] | ) | **(Jointly Administered)** |
| | ) | |

---

## NOTICE AND REPORT OF AUCTION AND SALE

---

**COME NOW** Alabama Partners, LLC and BamaChex, Inc. (collectively, the "Alabama Debtors") and files this Notice and Report of Auction and Sale (the "Report"). In support of this Report, the Alabama Debtors state as follows:

## BACKGROUND

1.      On August 11, 2017 (the "Petition Date"), the Alabama Debtors along with certain other affiliates[2] each filed a voluntary petition for protection under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), commencing this jointly-administered bankruptcy case (the "Bankruptcy Case").

2.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157 (b).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are §§ 105(a), 363(b), 363(f), 363(m) and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, if any, are: Alabama Partners, LLC (7131); BamaChex, Inc. (6953); Maryland LC Ventures, LLC (6974); Maryland Pizza, Inc. (6929); PG County Partners LLC (2811); and PG County Pizza, Inc. (3902). The service address for each of the Debtors is P.O. Box 551267, Jacksonville, FL 32255.

[2] See FN 1, supra.

1

4.      Prior to the Petition Date, the Alabama Debtors engaged in a substantive effort to market their respective assets (including their respective personal property, real property, permits, executory contracts and unexpired leases used in the operation of the Alabama Debtors' Checkers restaurants) (collectively, the "Checkers Assets") for sale.

5.      Pursuant to § 363 of the Bankruptcy Code, the Alabama Debtors have determined that a sale of substantially all of the Alabama Debtors' Checkers assets is in the best interest of the Alabama Debtors' estates and creditors, and that it is also in the best interest of their respective estates and all creditors to solicit competing bids and conduct an auction (the "Auction") of the Checkers Assets as further described below.

6.      On September 5, 2017, the Alabama Debtors filed a Sale Motion [Dkt. No. 94] that established a bidding procedure and mechanism to sell substantially all of their assets by auction (the "Sale Motion").

7.      The Sale Motion established a procedure to become a Qualified Bidder and submit a Qualified Bid.

8.      As of the Auction Date of October 18, 2017, the Debtors had one Qualified Bidder and subsequently received one Qualified Bid.

9.      A hearing on the Sale Motion was initially set for October 19th, but by agreement of all parties was continued to October 26, 2017.

10.     Attached hereto as Exhibit A is a copy of the Asset Purchase Agreement submitted by Rohan Management Services, Inc. ("Rohan") in support of their Qualified Bid.

11.     The undersigned counsel has received a $100,000.00 wire transfer in support of the Qualified Bid that is being held in Debtor's counsel client trust account.

2

## The Bid

12.     In support of and in furtherance of the bid and the APA submitted by Rohan, Rohan and the Debtors have further agreed as follows:

      a.     The price set forth in the APA is hereby reduced to $1.35 million and the conditions found in Paragraph 6.1 that require satisfaction of Checker's operating standard or reimaging are hereby waived.  Accordingly, the sale shall be for the assets ("As Is, Where Is") subject to the terms of the APA;

      b.     Further, Rohan desires to assume all real property leases (the "Leases") of the Alabama Debtors.  The deficiency in the Leases shall be cured from the proceeds of the sale contemplated by the APA.  A listing of those Leases and the pre-petition cure amounts is attached hereto as Exhibit B.

      c.     Finally, Rohan desires to assume the existing franchise agreements that existed prepetition (the "Franchise Agreements") with the Franchisor, Checkers Drive-In Restaurants, Inc. (the "Franchisor").  As part of closing and assignment of the Franchise Agreements, the proceeds of the sale contemplated by the APA shall cure the agreed monetary deficiencies the Alabama Debtors have with the Franchisor.

13.     As part of the Action, the Alabama Debtors, Rohan, and the Franchisor agreed to submit an agreed order approving the sale, provided the Court approves the sale at the hearing set for 1:30 p.m. on October 26, 2017.

3

Respectfully submitted,

/s/ R. Scott Williams
R. Scott Williams
Robert H. Adams
Frederick D. Clarke

Proposed Attorneys for Debtors
ALABAMA PARTNERS, LLC
BAMACHEX, INC.
MARYLAND LC VENTURES, LLC
MARYLAND PIZZA, INC.
PG COUNTY PARTNERS LLC
PG COUNTY PIZZA, INC.

Of Counsel:

**RUMBERGER, KIRK & CALDWELL, P.C.**
Renasant Place
Suite 1300
2001 Park Place North
Birmingham, AL 35203
Phone: (205) 327-5550
Facsimile: (205) 326-6786
swilliams@rumberger.com
radams@rumberger.com
fclarke@rumberger.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October, 2017, a true and correct copy of the foregoing was served via this Court's CM/ECF Noticing System on all parties receiving electronic notices in this bankruptcy case.

.

/s/ R. Scott Williams
Of Counsel

4

10589206.1

# Exhibit A

# PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (the "Agreement") is made and entered into as of the 29th day of September, 2017, by and among Rohan Management Services, Inc, or its assignee ("Purchaser"); and BamaChex Inc. ("BamaChex") and Alabama Partners LLC ("APL", and collectively with BamaChex, the "Sellers").

## RECITALS

A.    BamaChex is engaged in the operation of twelve (12) Checkers Restaurants pursuant to a franchise agreement with Checkers Drive-In Restaurants, Inc. ("CDR") listed and identified on **Schedule A** attached hereto (collectively, the "Checkers Restaurants").

B.    APL owns the respective buildings and improvements upon which the Checkers Restaurants are located (collectively, the "Owned Restaurants") pursuant to various ground leases for each of the parcels of real property, with the exception of one such Checkers Restaurant that is leased from CDR (the "Leased Restaurant", and collectively with the Owned Restaurants, the "Real Property") as identified in Schedule A;

C.    Sellers have each commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama (the "Bankruptcy Court") styled In re Alabama Partners, LLC, et al., Case No. 17-03469-TOM-11, which is pending before the Bankruptcy Court (the "Bankruptcy Case").

D.    Purchaser desires to purchase from Sellers and Sellers desire to sell to Purchaser, and/or assign to Purchaser, each of their respective right, title and interest in and to the assets and business of Sellers used or useful in connection with each of the Checkers Restaurants, including, but not limited to, (i) all personal property, furniture, fixtures, equipment, signage, supplies, smallwares, contracts, licenses, permits, intellectual property, computer software and hardware, point-of-sale hardware, telephone numbers, websites and website addresses, leases, Franchise Agreement, the franchise rights with CDR relating thereto, and, (ii) all right, title and interest of APL in and to the Real Property upon the terms and subject to the conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the Recitals set forth above, and the mutual covenants, agreements, representations and warranties herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby make this Agreement and set forth the terms and conditions of the sale and purchase of the assets comprising the Checkers Restaurants as follows:

Case 17-03469-TOM11    Doc 132    Filed 10/27/17    Entered 10/30/17 16:28:20    Desc Main
Document      Page 6 of 31

# ARTICLE I

## PURCHASE AND SALE OF CHECKERS RESTAURANTS

**1.01 Purchase and Sale of Assets.** At the Closing, Sellers agree to sell, transfer, convey, assign and deliver to Purchaser, or Purchaser's assignee, and Purchaser agrees to purchase and acquire from Sellers all of the rights, titles and interests of Sellers in and to the following assets (collectively, the "Purchased Assets"):

    (i)    Inventory. All inventories of food products, paper products, operational supplies and other items of consumable and/or expendable materials and supplies located in the Checkers Restaurants on the Closing Date (which Inventory shall be the average of the inventory available the prior ten (10) days prior to the Closing Date;

    (ii)    Fixed Assets. All machinery, equipment, furniture, fixtures, tools, signs, small wares and other items of tangible personal property (excluding inventory) which are a part of the Checkers Restaurants (the "Fixed Assets");

    (iii)    Permits and Licenses. All permits, licenses, consents and authorizations held by Sellers which are necessary or required for the operation or use of the Checkers Restaurants and/or ownership of the Purchased Assets, but only to the extent that the same are transferable or assignable to Purchaser (the "Permits and Licenses");

    (iv)    Store Leases. All right, title and interest of Sellers in and to the Real Property. Purchaser shall pay the cost of any owner and leasehold title policies, and will be responsible for the cost of any required surveys;

    (v)    CDR Franchise Rights. The franchise rights of the Sellers with CDR relating to the operation of the Checkers Restaurants, including, but not limited to, that certain franchise agreement with CDR or such other agreements that may be required by CDR (the "Franchise Agreement");

    (vi)    Other Assets. All other assets of Sellers used or useful in connection with the operation and business of each of the Checkers Restaurants, including, but not limited to, all point-of-sale hardware, telephone numbers, website addresses, and all third party agreements, including, but not limited to, those agreements relating to the construction, ownership, or purchase of any tangible personal property (including warranties or equipment) which is a part of the Purchased Assets and any other similar instruments or documents relating to the use of the Purchased Assets and the business of each of the Checkers Restaurants.



Case 17-03469-TOM7   Doc 133   Filed 10/24/17   Entered 10/24/17 16:28:20   Desc Main
Document   Page 7 of 31

**1.02** **Non-Assumption of Liabilities**. This Agreement is intended as and shall be deemed to be an agreement for the sale and purchase of assets, and none of the provisions hereof shall be deemed to create any obligation or liability of any party hereto to any person or entity that is not a party to this Agreement, whether under a third-party beneficiary theory, successor liability theory or otherwise, except as may be expressly stated herein. Except as expressly stated herein, none of the parties hereto shall, as a result of the execution and consummation of this Agreement, assume, discharge or become liable for any of the liabilities, obligations, debts, contracts or other commitments of any other party hereto of any kind or nature whatsoever, known or unknown, fixed, accrued, contingent or otherwise, existing on the Closing Date or arising out of any transaction entered into, or any state of facts existing, prior to, at or subsequent to the Closing Date. As of the close of business on the Closing Date, Purchaser shall assume and thereafter pay, perform, or discharge when due all of the following liabilities and obligations which arise or relate to activity occurring after the Closing Date (the "Assumed Liabilities") and no other liabilities or obligations:

    (i)   The liabilities as of the Closing under the contracts listed in **Schedule 1.02(i)** attached hereto (the "Assumed Contracts"); and

    (ii)   The trade accounts payable related to BamaChex's operation of the Checkers Restaurants listed in **Schedule 1.02(ii)** attached hereto; and

    (iii)   The Real Property listed in **Schedule 1.02(iii)** attached hereto; and

    (iv)   The Franchise Agreement listed in **Schedule 1.02(iv)** attached hereto; and,

    (v)   The liabilities under the Permits and Licenses listed on Schedule 1.02(v) attached hereto.

Specifically excluded from the purchase of the Purchased Assets are all of the liabilities and obligations associated with or arising from the operation of any of the Checkers Restaurants on or prior to the date of the Closing other than the Assumed Liabilities.

Sellers shall continue to be responsible for all the liabilities and obligations of the Checkers Restaurants existing on the Closing Date, or resulting from or arising from events or matters occurring on or prior to the Closing Date, not expressly assumed by Purchaser hereunder.

**1.03** **Purchase Price.** The purchase price for the Purchased Assets (the "Purchased Assets Purchase Price") shall be One Million Eight Hundred Thousand Dollars ($1,800,000.00), paid in cash at the Closing (as hereinafter defined). Cash in cash registers to be transferred at the Closing shall be paid for at cost at the Closing.

**1.04** **Deposit.** On the date of this Agreement, Purchaser will pay to American Legal Abstarct, LLC (the "Escrow Agent") a deposit in the amount of $100,000.00 (the "Deposit"). At the Closing, the Parties shall cause _____ to release the Deposit to Sellers, and the Deposit shall be credited against the amount required to be paid by Purchaser to Sellers at Closing. If this Agreement is duly terminated by Sellers prior to Closing, or the conditions to the obligations of Purchaser to consummate the Closing shall have been satisfied by Sellers or waived by Purchaser, but Purchaser shall have failed to perform its obligations under this Agreement, then



Case 17-03469-TOM7   Doc 133   Filed 10/24/17   Entered 10/24/17 16:28:30   Desc Main
Document     Page 8 of 31

the Parties shall cause the Escrow Agent to release the Deposit to Sellers within two Business Days of such termination, and such amount shall constitute liquidated damages (and not a penalty) due to the difficulty of ascertaining actual damages with any certainty, and to the fullest extent permitted by applicable laws, the Deposit shall be Sellers' sole and exclusive remedy with respect to such breach or any other breach by Purchaser notwithstanding any provision to the contrary contained in this Agreement. If this Agreement is terminated prior to Closing for any other reason, then the Parties shall cause the Escrow Agent to release the Deposit, together with any interest and other earnings therein, to Purchaser within two Business Days of such termination, free of any claims by Sellers with respect thereto.

    **1.05   Allocation of Purchase Price.** Sellers and Purchaser agree that for U.S. federal income tax purposes, the applicable Purchase Prices shall be allocated among the Purchased Assets as agreed to by both Purchaser and Sellers no later than five (5) days prior to the Closing. Sellers and Purchaser agree that said allocation of the Purchase Price shall be used by Sellers and Purchaser in reporting the transactions covered by this Agreement for income tax purposes. In the event the parties do not reach an agreement within prescribed time, such allocation shall be that which is customary and commercially reasonable for casual dining restaurant businesses of the type that is the subject of this Agreement, as determined by an independent third party chosen by the parties.

    **1.06   Due Diligence.** Sellers shall provide full disclosure to Purchaser immediately upon acceptance of this Agreement regarding the financial and business operations of each of the Checkers Restaurants, including, but not limited to, a listing of all the Purchased Assets; complete and accurate financial statements for each of the Checkers Restaurants, including a cash flow statement and balance sheet; a list and copy of all contracts; a list and copy of all leases for equipment and for the real property; and a list of all employees and their respective salaries, and the information and documents listed on the Initial Due Diligence Check List attached hereto as **Schedule B**. In the event Purchaser desires to inspect the Checkers Restaurants, Purchaser shall provide Sellers with prior notice and Purchaser and Sellers shall agree to a mutually acceptable time and day for each such inspection.

**ARTICLE II**

**REPRESENTATIONS AND WARRANTIES OF SELLERS**

    **2.01   Sellers.** Sellers, jointly and severally, represent and warrant to Purchaser (each of which shall be deemed material and independently relied upon by Purchaser) as follows:

        (i)   <u>Organization and Standing</u>. Sellers are each limited liability companies and or incorporated companies duly organized, validly existing and in good standing under the laws of the States of Alabama with full power and authority to own their respective properties and assets and to conduct its business in the jurisdictions as now conducted or proposed to be conducted.

---

Case 17-03469-TOM7   Doc 133   Filed 10/24/17   Entered 10/24/17 16:28:20   Desc Main
Document   Page 9 of 31

(ii)  _Company Authority_.  Sellers have the full power and authority to enter into and perform this Agreement and to consummate the transactions contemplated herein in accordance with the terms of this Agreement.

(iii)  _Company Authorization_.  Sellers have taken all necessary company actions to authorize and approve the execution, delivery and performance of this Agreement and the transactions contemplated hereby.  This Agreement constitutes a legal, valid and binding obligation of Sellers, enforceable against Sellers in accordance with its terms.

(iv)  _Required Consents_.  Except for the consent of CDR, no other consents or approvals of any public body or authority and no consents or waivers from any other parties to leases, licenses, franchises, permits, indentures, agreements or other instruments are required for the lawful consummation by Sellers of the transactions contemplated by this Agreement. Consummation of the transactions contemplated by this Agreement will not violate any federal statute or local law, ordinance, rule or regulation or any articles of organization, bylaws, or resolution of Sellers.

(v)  _Title to Assets_.  Sellers now have good, and by virtue of the deliveries made at the Closing, Purchaser will obtain, good and marketable title to the Purchased Assets, free and clear of all liens, encumbrances and charges.

(vi)  _Financial Information_.  All financial information and information furnished to Purchaser relating to the operations and businesses of the Checkers Restaurants shall have been, and shall be as of the date hereof and the date of the Closing, are accurate to the best of the Sellers' knowledge and not misleading with respect to the status and condition of the Purchased Assets and the operations of each of the Checkers Restaurants.

(vii)  _Restaurant Operations_.  To the best knowledge and belief of each of Sellers each of the Checkers Restaurants has been and shall continue to be operated in accordance with all federal, state and local laws affecting such business, including without limitation antipollution, environmental protection, toxic and/or hazardous waste laws, taxing laws, and employee labor and benefit laws.

(vii)  _No Additional Actions, Suits or Proceedings_.  To the best knowledge and belief of each of Sellers, the Bankruptcy Case eliminates other actions, suits or proceedings which are pending or threatened against Sellers or any of the Checkers Restaurants or any of the Purchased Assets and there are no additional current or imminent investigations or inspections relating in any way to the operation of any of the Checkers Restaurants before any court, governmental department, commission, board, bureau, agency, mediator, arbiter or other person or instrumentality.

(ix)  _Execution, Delivery and Performance Not a Violation_.  Neither the execution and delivery nor the performance of this Agreement will (i) violate any provision of law, or any judgment, writ, injunction, decree, or order of any court or other governmental authority relating to Sellers; or (ii) violate any will, deed, mortgage, instrument, indenture, or material agreement, contract, other commitment, or restriction to which Sellers are a party or by which they are

---

bound; or (iii) be in conflict with, or result in, or constitute a breach or default (or an occurrence which by lapse of time and/or the giving of notice would constitute a breach or default), on the part of Sellers, under any such will, deed, mortgage, instrument, indenture, agreement, contract, other commitment, or restriction; or (iv) result in the creation or imposition of any lien, charge, or encumbrance of any nature upon the Purchased Assets.

   (x) <u>No Employment Agreements Not Terminable</u>. Sellers are not a party to any written or oral contract for the employment of any officer or individual employee of any of the Checkers Restaurants not terminable by it without liability.

   (xi) <u>Conduct of Business</u>. Each of the Checkers Restaurants has been conducted by Sellers in all material respects in accordance with all applicable laws, governmental regulations, and judicial and administrative decisions.

   (xii) <u>Information to Purchaser</u>. Purchaser has been informed by Sellers of all facts material and adverse to the conditions, properties, assets, indebtedness, liability, agreements, commitments, operations and prospects of the business of each of the Checkers Restaurants.

   (xiii) To the best of the Sellers knowledge, the assets identified as part of Seller's schedules filed in the Bankruptcy Case are true and correct.


# ARTICLE III

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

 **3.01** Purchaser represents and warrants to Sellers (each of which shall be deemed material and independently relied upon by Sellers as follows:

   (i) <u>Organization and Standing</u>. Purchaser is a _____ duly organized, validly existing and in good standing under the laws of the State of _____ with full power and authority to own its properties and assets and to conduct its business as now conducted or proposed to be conducted.

   (ii) <u>Company Authority</u>. Purchaser has the full power and authority to enter into and perform this Agreement and to consummate the transactions contemplated herein in accordance with the terms of this Agreement.

   (iii) <u>Company Authorization</u>. Purchaser has taken all necessary company actions to authorize and approve the execution, delivery and performance of this Agreement and the transactions contemplated hereby. This Agreement constitutes a legal, valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms.

   (iv) <u>Required Consents</u>. Except for the consent of CDR, no other consents or approvals of any public body or authority and no consents or waivers from any other parties to

Case 17-03469-TOM7 Doc 133 Filed 10/24/17 Entered 10/24/17 16:28:20 Desc Main
Document  Page 11 of 31

leases, licenses, franchises, permits, indentures, agreements or other instruments are required for the lawful consummation by Purchaser of the transactions contemplated by this Agreement. Consummation of the transactions contemplated by this Agreement will not violate any federal statute or local law, ordinance, rule or regulation or any articles of organization, operating agreement, bylaws, or resolution of Purchaser.

## ARTICLE V

## COVENANTS OF PURCHASER

Purchaser covenant to Sellers as follows:

**4.01    Assumption of Contracts by Purchaser.**  Purchaser agrees to execute and deliver to Sellers agreements providing for the assignment by Sellers of all of their respective rights under the Assumed Contracts and the assumption by Purchaser of all of the obligations of Sellers under the Assumed Contracts ("Assignment and Assumption Agreements") at the Closing.  To the extent that the consent of any other party to each of the Assumed Contracts has not provided their express consent to the assignment of the contract to Purchaser and the release of Sellers from all future obligations under the contract, Purchaser shall promptly contact each of the parties to such contracts, as well as any other vendors, suppliers or service providers who supply goods or services to the Checkers Restaurants, and have the Assumed Contracts and any other applicable contracts or agreements with such vendors, suppliers and service providers transferred into the name of Purchaser.

**4.02    Employment of BamaChex's Employees.**  Purchaser will consider offering, but is not required to offer, employment to some or all of BamaChex's employees involved with the operation of the Checkers Restaurants, upon review of each employee's respective background and negotiation of mutually acceptable employment agreements.

## ARTICLE VI

## MUTUAL COVENANTS OF PURCHASER AND SELLERs

Purchaser and Sellers covenant with each other as follows:

**5.01    Assignment of the Store Leases underlying the Real Property.**  Sellers shall assign the leases underlying the Real Property to Purchaser and Purchaser shall accept such assignment of the leases underlying the Real Property from Sellers.  Sellers are responsible for obtaining the consents of the landlords to each of the leases underlying the Real Property to the assignment of the respective leases underlying the Real Property to Purchaser, as well as all estoppel certificates from each such landlord and sub-landlord on such form or format as may be required by Purchaser's lenders or reasonably requested by Purchaser.

Case 17-03469-TOM7    Doc 133    Filed 10/24/17    Entered 10/24/17 16:28:20    Desc Main
Document      Page 12 of 31

**5.02 Assignment of the Franchise Agreement.** Subject to CDR's consent, Sellers shall assign the Franchise Agreement to Purchaser and Purchaser shall accept such assignment of the Franchise Agreement from Sellers.

**5.03 Cooperation.** From and after the date of this Agreement, each of the parties hereto will cooperate fully with the others to facilitate the consummation of the transactions provided for herein.

**5.04 The Closing.** The closing of the purchase and sale of the Purchased Assets (the "Closing") will take place on the time and date identified by the Bankruptcy Court (the "Closing Date"), at such business location as acceptable to Sellers.

## ARTICLE VI

### CONDITIONS PRECEDENT TO THE OBLIGATIONS OF ALL PARTIES

The respective obligations of each party to effect the transactions contemplated herein shall be subject to the fulfillment or waiver at or prior to the Closing Date of the following conditions:

**6.01 Approval by CDR.** The purchase and sale of the Purchased Assets by Purchaser from Sellers and the operation of the Checkers Restaurants by Purchaser shall be approved by CDR, and if CDR shall assess any assignment fee or other cost or expense incidental to the approval or consent. Restaurants will be delivered to Purchaser in compliance with current Checkers Operating Standards & Requirements. Purchaser shall be responsible for reimaging pay for all such costs. Purchasers shall be responsible for securing satisfactory approvals and franchise transfers and/or assignments from CDR and shall be responsible for providing such guarantees as needed to obtain the full release of Sellers and any of Sellers' guarantors from the Franchise Agreement.

## ARTICLE VII

### CONDITIONS PRECEDENT TO OBLIGATION OF PURCHASER

The obligations of Purchaser to effect the transactions contemplated herein shall be subject to the fulfillment or waiver at or prior to the Closing Date of the following conditions:

**7.01 Representations and Warranties.** The representations and warranties of Sellers set forth herein shall be true and correct in all material respects as of the date of this Agreement and as of the Closing Date (as through made on and as of the Closing Date) except (i) to the extent such representations and warranties are by their expressed provisions made as of a specified date and (ii) for the effect of transactions contemplated by this Agreement.

Case 17-03469-TOM7   Doc 133   Filed 10/24/17   Entered 10/24/17 16:28:20   Desc Main Document   Page 13 of 31

**7.02   Performance of Obligations.**   Sellers shall have performed in all material respects all obligations required to be performed by them under this Agreement at or prior to the Closing Date.

**7.03   Officers' Certificate.**   Sellers shall have furnished to Purchaser a certificate dated the Closing Date, signed on behalf of Sellers by their senior executive officer, to the effect that, to the best of their respective knowledge and belief, the conditions set forth herein have been satisfied.

**7.04   Documents.**   Purchaser shall have received, in form and substance satisfactory to it, the documents specified in this Agreement.

**7.05   Assignment of Store Leases.**   Purchaser shall approve the form and substance of each of the Store Leases underlying the Real Property and the assignment thereof to Purchaser, and shall have received the consent of the lessor to the assignment of the Store Leases.

**7.06   Operation of Restaurant to Closing.**   Each of the Checkers Restaurants shall have continued to be operated from the date hereof through the Closing Date in the same manner and quality and at the same level of revenues as existed during the immediately preceding twelve months prior to the date of the Closing.

**7.07   Receipt of Approvals and Consents.**   Purchaser and Sellers shall have received such approvals of governmental authorities, the Bankruptcy Court, and third parties as are necessary to consummate the transactions contemplated hereby, including, but not limited to, the consent and approval by CDR of (i) the sale of the Purchased Assets to Purchaser and (ii) Purchaser or Purchaser's designee becoming a franchisee of CDR.

**7.08   Agreement of CDR to Reinstate Term of Franchise.**   Prior to the Closing, Purchaser shall have received, with the assistance and cooperation of Sellers, the consent of CDR to the reinstatement and assignment of the Franchise Agreement of Sellers, or a new successor agreement, to Purchaser.


# ARTICLE VIII

## CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLERS

The obligations of Sellers to effect the transactions contemplated herein shall be subject to fulfillment at or prior to the Closing Date of the following conditions:

**8.01   Representations and Warranties.**   The representations and warranties of Purchaser set forth in this Agreement shall be true and correct in all material respects as of the date of this Agreement and as of the Closing Date (as though made on and as of the Closing Date) except (i) in the extent such representations and warranties are by their expressed

Case 17-03469-TOM7    Doc 133   Filed 10/24/17   Entered 10/24/17 16:28:20   Desc Main
Document      Page 14 of 31

provisions made as of a specified date and (ii) for the effect of transaction contemplated by this Agreement.

**8.02    Performance of Obligations.** Purchaser shall have performed in all material respects all obligations required to be performed by it under this Agreement at or prior to the Closing Date.

**8.03    Officers' Certificate.** Purchaser shall have furnished to Sellers a certificate dated the Closing Date, signed on behalf of Purchaser by its senior executive officer to the effect that to the best his knowledge and belief, the conditions set forth in this Agreement been satisfied.

**8.04    Documents.** Sellers shall have received, in form and substance satisfactory to it, the documents specified in this Agreement.

**8.05    Release from CDR.** Unless waived by Sellers, CDR shall have agreed to release Sellers from liability with respect to the Franchise Agreement resulting from or arising out of or in connection with events or matters after the date of Closing. In the event CDR does not provide the release described in the preceding sentence, Purchaser agrees to provide Sellers with financial documentation, representations and warranties, reasonably requested by Sellers, and to which Purchaser agrees, for the purpose of Sellers, in their sole discretion, waiving the contingency created in this Section 8.05.

**8.06    Release from leases underlying the Real Property.** Unless waived by Sellers, the landlords and ground lessors with respect to each of the leases underlying the Real Property shall have agreed to release Sellers from liability with respect to the respective leases underlying the Real Property resulting from or arising out of or in connection with events or matters after the date of Closing. In the event one or more landlords does not provide the release described in the preceding sentence, Purchaser agrees to provide Sellers with financial documentation, representations and warranties, reasonably requested by Sellers, and to which Purchaser agrees, for the purpose of Sellers, in its sole discretion, waiving the contingency created in this Section 8.06.

## ARTICLE IX

## DOCUMENTS TO BE DELIVERED AT THE CLOSING
## BY PURCHASER

Purchaser shall deliver to Sellers the following documents at the Closing:

**9.01    Officer's Certificate.** The certificate referred to in Section 8.03 of this Agreement.

**9.02    Certificate of Secretarial Officer.** Certificates of the Secretary of Purchaser, dated on the Closing Date, with respect to the incumbency of officers and their signatures, good

Case 17-03469-TOM7    Doc 133    Filed 10/24/17    Entered 10/24/17 16:28:20    Desc Main
Document      Page 15 of 31

standing, and the member or director resolutions authorizing the transactions contemplated by this Agreement.

**9.03 Assumption Agreements.** The Assignment and Assumption Agreements, pursuant to which Purchaser agrees to assume the obligations of Sellers under the Assumed Contracts after the Closing Date.

**9.04 Assignment of Lease Agreement.** An Assignment of Lease Agreement in a form reasonably satisfactory to Purchaser pursuant to which Sellers will assign to Purchaser the leases underlying the Real Property.

**9.05 Other Documents.** Such other documents as shall be reasonably requested by Sellers or required to be delivered pursuant to this Agreement.

## ARTICLE X

## DOCUMENTS TO BE DELIVERED AT THE CLOSING BY SELLERS

Sellers shall deliver to Purchaser the following documents at the Closing:

**10.01 Officer's Certificate.** The certificates referred to in Section 8.02 of this Agreement.

**10.02 Certificate of Secretarial Officer.** The Certificate of the Secretary or Assistant Secretary of Sellers, dated the Closing Date, with respect to the incumbency of company officers and their signatures, company good standing, and the authorizing resolutions authorizing the transactions contemplated by this Agreement.

**10.03 Bill of Sale.** A bill of sale conveying good and marketable title to the Fixed Assets and the Inventory.

**10.04 Assignment of Warranties.** An assignment of all existing manufacturer's or third party warranties or guaranties relating to any of the Purchase Assets, if any.

**10.05 Assignment and Transfers.** Good and sufficient assignments and such other instruments of transfer as shall be necessary to assign and transfer to Purchaser all of the rights, titles and interests of Sellers in and to the remaining Purchased Assets not conveyed by the bill of sale described in Section 10.03 above.

**10.06 Other Instruments of Transfer.** Such other instruments of transfer or assignment as shall be reasonably requested by Purchaser to confirm and vest in Purchaser good, complete and marketable title to all of the Purchased Assets and other documents and instruments as required by the terms and conditions of this Agreement.

Case 17-03469-TOM7    Doc 133    Filed 10/24/17    Entered 10/24/17 16:28:20    Desc Main
Document      Page 16 of 31

**10.07 Assumption Agreements.**  The Assignment and Assumption Agreements, pursuant to which Purchaser agrees to assume the obligations of Sellers under the Assumed Contracts after the Closing Date.

**10.08 Assignment of Store Leases.**  The assignment of the leases underlying the Real Property pursuant to which Sellers will assign to Purchaser such leases.

**10.09 Other Documents.**  Such other documents as shall be reasonably requested by the Purchaser or required to be delivered pursuant to this Agreement.

# ARTICLE XI

## TERMINATION AND ABANDONMENT

**11.01 Events of Termination.**  This Agreement may be terminated, without liability on the part of any party to the other, at any time before the Closing Date: (i) by mutual consent of Purchaser and Sellers, (ii) by Purchaser if any of the conditions precedent found in Articles VI and VII of this Agreement have not been met and have not been waived in writing by Purchaser, (iii) by Sellers if any of the conditions precedent found in Articles VI or VIII of this Agreement have not been met and have not been waived in writing by Sellers; (iv) by Purchaser if there is a breach of or failure by either of the Sellers to perform in any material respect any of the representations, warranties, commitments, covenants or conditions under this Agreement, which breach or failure is not cured after written notice thereof is given to Sellers and prior to the Closing Date; or (v) by Sellers if there is a breach of or failure by Purchaser to perform in any material respect any of the representations, warranties, commitments, covenants or conditions under this Agreement, which breach or failure is not cured after written notice thereof is given to the party committing such breach and prior to the Closing Date.  In the event of termination and abandonment by any party as above provided in clauses (ii), (iii), (iv) or (v) of this Section, written notice shall forthwith be given to the other party, which notice shall clearly specify the reason of such party for terminating this Agreement, and both parties shall be released from any further liability with respect to this Agreement.

# ARTICLE XII

## MISCELLANEOUS

**12.01 Binding Effect.**  This Agreement shall be binding upon and shall inure to the benefit of the organizational parties hereto and their respective successors and permitted assigns, and of the individual parties hereto and their respective heirs, personal representatives and permitted assigns.

---

**12.02 Headings.** The headings in this Agreement have been inserted solely for ease of reference and shall not be considered in the interpretation or construction of this Agreement.

**12.03 Counterparts.** This Agreement may be executed by facsimile or e-mail signatures and in any number of counterparts, each of which shall be an original, but all of which shall constitute one and the same Agreement.

**12.04 Governing Law.** This Agreement shall be construed in accordance with the laws of the State of Alabama without regard to any applicable conflicts of law.

**12.05 Expenses.** Except as otherwise herein provided, each of the parties hereto shall pay its respective costs and expenses incurred or to be incurred by it in connection with the negotiations respecting this Agreement and the transactions contemplated by this Agreement, including preparation of documents, obtaining any necessary regulatory approvals and the consummation of the other transactions contemplated in this Agreement.

**12.06 Entire Agreement.** This Agreement contains the entire agreement between the parties hereto with respect to the transactions contemplated herein and supersedes all other prior agreements, understandings and letters related hereto.

**12.07 Singular and Plural.** Unless the context of this Agreement otherwise clearly requires, references to the plural include the singular and the singular includes the plural. Wherever the context so requires, the masculine shall refer to the feminine, the neuter shall refer to the masculine or the feminine, the singular shall refer to the plural, and vice versa.

**12.08 Notices.** Any notice or other communications required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given (i) on the date sent if delivered personally or by cable, telecopy, electronic mail (e-mail), telegram, or telex (which is confirmed), or (ii) on the date received if mailed by overnight courier or registered or certified mail (return receipt requested) to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

(a)     If to Sellers, to:

R. Scott Williams
Rumberger, Kirk & Caldwell, PC
Renasant Place, Suite 1300
2001 Park Place North
Birmingham, AL 35203

Case 17-03469-TOM7    Doc 133    Filed 10/24/17    Entered 10/24/17 16:28:20    Desc Main
Document        Page 18 of 31

with a copy to:

Melissa S. Hayward
Hayward & Associates PLLC
10501 N. Central Expressway, Suite 106
Dallas, TX 75231
E-Mail: MHayward@HaywardFirm.com
Fax: 972-755-7114

(b)      If to Purchaser, to:

Rohan Managements Services, Inc.
210 East Street Rd,
Suite 3B
Feasterville, PA 19053
Office: 215-322-3972


with a copy to:

Vishal S. Petigara Esq.
One Commerce Square
2005 Market Street
Suite 2900
Philadelphia, PA 19103
E-Mail: vpetigara@grsm.com
Fax: 215-253-5116

**12.11  Rights of Third Parties.**  This Agreement shall not create any legal rights in any person or entity other than the parties to this Agreement.

**12.12  Remedies.**  Nothing contained in this Agreement shall be construed to restrict or limit in any manner the remedies which the parties might have at law or in equity for any breach of the covenants, representations, or warranties contained in this Agreement.

**12.13  Amendment.**  This Agreement may be amended or supplemented by the parties hereto.  The parties hereto shall make such technical changes to this Agreement, not inconsistent with the purposes hereof, as may be required to effect or facilitate any governmental approval or acceptance of this Agreement or to effect or facilitate any filing or recording required for the consummation of any of the transactions contemplated hereby.  This Agreement may not be amended except by an instrument in writing signed on behalf of each of the parties hereto.

**12.14  Waiver.**  Any party hereto may, by written notice to the other parties hereto, (i) extend the time for the performance of any of the obligations or other actions of such other party under this Agreement, (ii) waive any inaccuracies in the representations or warranties of such other party contained in this Agreement or in any document delivered pursuant to this Agreement, or (iii) waive

Case 17-03469-JMM   Doc 133   Filed 10/24/17   Entered 10/24/17 16:23:20   Desc Main
Document      Page 19 of 31

representations, warranties, covenants, conditions, or agreements contained in the Agreement. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach. If, prior to the Closing, any party provides all of the other parties with written notice, which refers specifically to this Section 14.14, that a representation or warranty made by such party in or pursuant to this Agreement is not true, correct and complete and the Closing is consummated notwithstanding such disclosure, such other parties shall be deemed to have waived any claims for indemnification under this Agreement as a result of the inaccuracy of such representation or warranty.

**12.15 Severability.** The invalidity or unenforceability of any provision of this Agreement, whether in whole or in part, shall not in any way affect the validity and/or enforceability of any other provision of this Agreement. Any invalid or unenforceable provisions shall be deemed severable to the extent of any such invalidity or unenforceability.

**12.16 Brokers.** Sellers and Purchaser shall be responsible for the compensation and payment of any broker it has engaged or retained in connection with the transaction contemplated by this Agreement.

**12.17 Bankruptcy Court Approval.** The obligations of Sellers and Purchaser under this Agreement are subject to entry of an order by the Bankruptcy Court, pursuant to sections 105, 363, and 365 of the Bankruptcy Code authorizing and approving, *inter alia*, the sale of the Purchased Assets to Purchaser on the terms and conditions set forth herein, free and clear of all Encumbrances (the "Sale Order").

(signatures on next page)

Case 17-03469-TOM7    Doc 133    Filed 10/24/17    Entered 10/24/17 16:28:20    Desc Main
Document    Page 20 of 31

**IN WITNESS WHEREOF**, the parties executed this Agreement as of the day and year first above written.

ALABAMA PARTNERS, LLC

By: _____

Name: _____

Title: _____

BAMACHEX, INC.

By: _____

Name: _____

Title: _____

[PURCHASER]

By: _____

Rohan Management Services, Inc.
Name: Jignesh Pandya
Title: President

Case 17-03469-TOM7    Doc 133    Filed 10/24/17    Entered 10/24/17 16:28:20    Desc Main
Document      Page 21 of 31

**LIST OF CHECKERS RESTAURANTS**

Case 17-03469-TOM7    Doc 133    Filed 10/24/17    Entered 10/24/17 16:28:20    Desc Main
Document      Page 23 of 31

**INITIAL DUE DILIGENCE CHECK LIST**

1) Consolidated Historical Financial P&Ls for FYE 2015, 2016, and YTD 2017 including G&A Schedule for these years.

2) Individual Restaurant P&Ls for FYE 2015, 2016, and YTD 2017.

3) Lease Summaries or Abstract for leased properties and copies of all leases for leased properties.

4) Sales Tax Returns for FYE 2015, 2016 and 2017.

5) Fixed Asset Listing

6) Register of Restaurant Employees.

7) Vendor Rebate Agreement.

Case 17-03469-TOM7    Doc 133    Filed 10/24/17    Entered 10/24/17 16:28:20    Desc Main
Document        Page 24 of 31

## ASSUMED CONTRACTS

NONE

Case 17-03469-TOM7    Doc 133    Filed 10/24/17    Entered 10/24/17 16:28:20    Desc Main
Document      Page 26 of 31

## TRADE ACCOUNTS PAYABLE

NONE

## STORE LEASES

1.     Lease or Sublease Agreement among _____ ("Landlord") and _____, dated _____, for the Checkers Restaurant located at _____.

2.

Case 17-03469-TOM7    Doc 133    Filed 10/24/17    Entered 10/24/17 16:28:20    Desc Main
Document     Page 29 of 31

# Exhibit B

| Store Number | Location | Landlord | Monthly Rent | Pre-Petition Cure Amount |
|---|---|---|---|---|
| 4174 | 4030 First Avenue Birmingham, AL | HJK, LLC | $4,300.00 | $184,100.00 |
| 4175 | 1420 31st Street SW Birmingham, AL | | $4,400.00 | |
| 4176 | 2400 Center Point Parkway Center Point, AL | | $3,850.00 | |
| 4177 | 402 Hwy 78 Jasper, AL | | $4,235.00 | |
| 4182 | 400 S. Quintard Avenue Anniston, AL | | $4,125.00 | |
| 4186 | 1601 9th Avenue Bessemer, AL | | $4,975.00 | |
| 4178 | 724 Second Avenue NW Cullman, AL | Haynes Family | $2,100.00 | $3,192.00 |
| 4183 | 636 Lomb Avenue Birmingham, AL | Checkers Corporate | $2,750.00 | |
| 4185 | 2520 12th Avenue North Birmingham, AL | ERDA | $2,750.00 | $2,750.00 |
| 4187 | 7736 First Avenue North Birmingham, AL | Liz Whidden | $2,300.00 | |
| 4188 | 86 Weibel Drive Midfield, AL | WHP, LLC | $2,375.00 | |
| 4189 | 303 East Meighan Gadsden, AL | Martha Sams Kelly Pruitt Elizabeth Jelks | $2,750.00 | $2,749.98 |