



## Equipment Finance Agreement

*A Leader In Franchise Finance*

**AGREEMENT #**

Send Account Inquiries to: 1310 Madrid Street · Marshall, MN 56258
Send Payments to: PO Box 790448 · St. Louis MO 63179-0448

The words Debtor, you and your refer to Customer. The words Secured Party, we, us and our refer to IRH CAPITAL LLC.

### CUSTOMER INFORMATION

| FULL LEGAL NAME | STREET ADDRESS |
|---|---|
| MARYLAND LC VENTURES LLC / LITTLE CAESARS | 226 CROWNE WOOD DR |

| CITY STATE | ZIP | PHONE | FAX |
|---|---|---|---|
| BIRMINGHAM, AL 35244 | | (407) 227-7010 | (407) 227-7010 |

| EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE) | E-MAIL |
|---|---|
| 950 Largo Center Drive, Upper Marlboro, MD 20744 | |

| BILLING STREET ADDRESS (IF DIFFERENT FROM CUSTOMER ADDRESS ABOVE) | CITY STATE | ZIP |
|---|---|---|
| 819 FOREST PKWY E | FOREST PARK, GA 30297 | |

### EQUIPMENT | SERIAL NO

SEE ATTACHED SCHEDULE

together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries.

### PAYMENTS & TERMS

| Advance Payment: $3,388.69 | **60** Payments of **$3388.69** |
|---|---|
| If no Advance Payment is required, the first Payment is due _____ days after the Agreement start date. | The payment ("Payment") period is monthly unless otherwise indicated. Interim due date adjustments will be in an amount equal to 1/30th of the Payment, multiplied by the number of days between the Agreement start date and the first Payment due date. |
| Amount Financed: $150,000.00 | |

**Upon acceptance of the Equipment, THIS AGREEMENT IS NONCANCELABLE, IRREVOCABLE AND CANNOT BE TERMINATED.**

1. **AGREEMENT:** For business purposes only, you have requested that we finance the purchase price of the goods and/or to finance certain licensed software and services, all as described on this Agreement, as it may be supplemented from time to time (the "Equipment"). You agree to all of the terms and conditions contained in this Agreement and any supplement, which (with the acceptance certification) is the entire agreement regarding the Equipment ("Agreement") and which supersedes any purchase order or invoice. You authorize us to correct or insert missing Equipment identification information and to make corrections to your proper legal name and address. This Agreement becomes valid upon execution by us and will start on the date we pay the supplier. If any provision of this Agreement is declared unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in that jurisdiction and all others. This Agreement may not be prepaid.

2. **PAYMENTS, TAXES AND FEES:** You will pay the Payments (as adjusted) when due. The base Payment and the Amount Financed may be adjusted proportionately upward or downward: (1) by up to 10% to accommodate changes in the actual Equipment cost; (2) if the shipping charges differ from the estimate given to you; and/or (3) if a down payment or deposit is deducted. You are the owner of the Equipment, and you agree to pay when due all taxes (including personal property taxes), assessments, levies, imposts, duties and charges, of any kind or nature, imposed upon the Equipment or for its use or operation or upon this Agreement. At our option, we may discharge taxes, liens or other encumbrances at any time levied or placed on the Equipment, may pay for insurance on the Equipment and may pay for the maintenance and preservation of the Equipment, and you agree to reimburse us when we request and to pay us a processing fee for each expense or charge we pay on your behalf. We may charge you a fee for filing, searching and/or titling costs required by the Uniform Commercial Code (UCC) or other laws. By the date the first Payment is due, you agree to pay us an origination fee in the amount of ____ to cover us for all closing costs. We will have the right to apply all sums received from you to any amounts due and owed to us under the terms of this Agreement. If for any reason your check is returned for nonpayment, you will pay us a bad check charge of $30 or, if less, the maximum charge allowed by law. We may make a profit on any fees and other charges paid under this Agreement.

### CUSTOMER ACCEPTANCE

By signing below, you certify that you have reviewed and do agree to all terms and conditions of this Agreement on this page and on page 2 attached hereto.

| MARYLAND LC VENTURES LLC | X *Wazir Kaisani* (signature) | MEMBER |
|---|---|---|
| CUSTOMER (AS REFERENCED ABOVE) | SIGNATURE WAZIR KAISANI | TITLE |
| | X WAZIR ALI KAISANI | 7/19/2015 |
| FEDERAL TAX IDENTIFICATION NUMBER | PRINT NAME | DATED |

### SECURED PARTY ACCEPTANCE

| IRH CAPITAL LLC | | Authorized Signatory |
|---|---|---|
| SECURED PARTY | SIGNATURE | TITLE | DATED |

10098 REV 08/12 | Page 1 of 2 | 1

3. **MAINTENANCE AND LOCATION OF EQUIPMENT; SECURITY INTEREST:** At your expense, you agree to keep the Equipment: (1) in good repair, condition and working order, in compliance with applicable manufacturers' and regulatory standards; (2) free and clear of all liens and claims; and (3) only at your address shown on page 1, and you agree not to move it unless we agree in writing. In the event the Equipment is transferred, you are solely responsible for removing any data that may reside in the Equipment, including but not limited to hard drives, disk drives or any other form of memory. You grant us a security interest in the Equipment to secure all amounts you owe us under any agreement with us, and you authorize us to file a financing statement (UCC-1) or be named on the vehicle title to show our interest. You will notify us within 30 days if your state of organization revokes or terminates your existence.

4. **COLLATERAL PROTECTION; INSURANCE; INDEMNITY; LOSS OR DAMAGE:** You agree to keep the Equipment fully insured against risk and loss, with us as lender's loss payee, in an amount not less than the original Equipment cost until this Agreement is terminated. You will provide 10 days advance written notice to us of any modification or cancellation of your insurance policy(s). You agree to provide us certificates or other evidence of insurance acceptable to us. If you fail to comply with this requirement within 30 days after the start of this Agreement, we may charge you a monthly property damage surcharge of up to .0035 of the Equipment cost as a result of our credit risk and administrative and other costs, as would be further described on a letter from us to you. We may make a profit on this program. We are not responsible for, and you agree to hold us harmless and reimburse us for and to defend on our behalf against, any claim for any loss, expense, liability or injury caused by or in any way related to delivery, installation, possession, use, condition, inspection, removal or storage of the Equipment. You are responsible for the risk of loss or for any destruction of or damage to the Equipment. You agree to promptly notify us in writing of any loss or damage. If the Equipment is destroyed and we have not otherwise agreed in writing, you will pay to us the unpaid balance of this Agreement, including any future Payments to the end of the term discounted at 2%. Any proceeds of insurance will be paid to us and credited, at our option, against any loss or damage. You authorize us to sign on your behalf and appoint us as your attorney-in-fact to endorse in your name any insurance drafts or checks issued due to loss or damage to the Equipment. All indemnities will survive the expiration or termination of this Agreement.

5. **ASSIGNMENT: YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN OR LEASE THE EQUIPMENT OR THIS AGREEMENT,** without our prior written consent. Without our prior written consent, you shall not reorganize or merge with any other entity or transfer all or a substantial part of your ownership interests or assets. We may sell, assign, or transfer this Agreement without notice. You agree that if we sell, assign or transfer this Agreement, our assignee will have the same rights and benefits that we have now and will not have to perform any of our obligations. You agree that our assignee will not be subject to any claims, defenses, or offsets that you may have against us. You shall cooperate with us in executing any documentation reasonably required by us or our assignee to effectuate any such assignment. This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns.

6. **DEFAULT AND REMEDIES:** You will be in default if: (a) you do not pay any Payment or other sum due to us or any other person when due or if you fail to perform in accordance with the covenants, terms and conditions of this Agreement or any other agreement with us or any of our affiliates or any material agreement with any other lender, (b) you make or have made any false statement or misrepresentation to us, (c) you or any guarantor dies, dissolves or terminates existence, (d) there has been a material adverse change in your or any guarantor's financial, business or operating condition, or (e) any guarantor defaults under any guaranty for this Agreement. If any part of a Payment is more than 5 days late, you agree to pay a late charge of 10% of the Payment which is late or if less, the maximum charge allowed by law. If you are ever in default, at our option, we can terminate this Agreement and require that you pay the unpaid balance of this Agreement, including any future Payments to the end of the term discounted at 2%. We may recover default interest on any unpaid amount at the rate of 12% per year. Concurrently and cumulatively, we may also use any or all of the remedies available to us under Article 9 of the UCC and any other law, including requiring that you: (1) deliver the Equipment to us to a location we specify; and (2) immediately stop using any Financed items. In addition, we will have the right, immediately and without notice or other action, to set-off against any of your liabilities to us any money, including depository account balances, owed by us to you, whether or not due. In the event of any dispute or enforcement of rights under this Agreement or any related agreement, you agree to pay our reasonable attorney's fees (including any incurred before or at trial, on appeal or in any other proceeding), actual court costs and any other collection costs, including any collection agency fee. If we have to take possession of the Equipment, you agree to pay the costs of repossession, moving, storage, repair and sale. The net proceeds of the sale of any Equipment will be credited against what you owe us under this Agreement and you will be responsible for any deficiency after such application. YOU AGREE THAT WE WILL NOT BE RESPONSIBLE TO PAY YOU ANY CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES FOR ANY DEFAULT, ACT OR OMISSION BY ANYONE. Any delay or failure to enforce our rights under this Agreement will not prevent us from enforcing any rights at a later time. You agree that your rights and remedies are governed exclusively by this Agreement. If interest is charged or collected in excess of the maximum lawful rate, we will refund such excess to you, which will be your sole remedy.

7. **FINANCED ITEMS: SOFTWARE, SERVICES:** You may have elected to finance certain licensed software ("Software") and/or services, including but not limited to training, installation, maintenance, custom programming, technical consulting and support services ("Services") (together with the Software, the "Financed Items", which are included in the word "Equipment" unless separately stated). You grant us a security interest in your rights (including any rights as a licensee) in the Software to secure all amounts you owe us under any agreement with us. Ownership of any Software shall remain with the licensor thereof and your rights with respect to such Software shall be governed by a separate license agreement between you and the licensor, which shall not be affected by this Agreement. Any Services shall be performed by a service provider unrelated to us. IN NO EVENT SHALL WE HAVE ANY OBLIGATION TO PERFORM ANY SERVICES, AND ANY FAILURE OF SUCH SERVICE-PROVIDER TO PROVIDE ANY SERVICES FINANCED HEREUNDER SHALL NOT EXCUSE YOUR OBLIGATIONS TO US. WE SHALL NOT BE LIABLE TO YOU, NOR SHALL THERE BE ANY ABATEMENT OR SETOFF IN YOUR PAYMENTS, FOR ANY LIABILITY, CLAIM, LOSS, DAMAGE OR EXPENSE OF ANY KIND OR NATURE CAUSED BY ANY FINANCED ITEMS. Upon the happening of a default, in addition to all other remedies provided for under this Agreement, we shall have the right to cause the termination of all Financed Items.

8. **INSPECTIONS AND REPORTS:** We will have the right, at any reasonable time, to inspect the Equipment and any documents relating to its use, maintenance and repair. Within 30 days after our request, you will deliver all requested information (including tax returns) which we deem reasonably necessary to determine your current financial condition and faithful performance of the terms hereof. This may include: (i) compiled, reviewed or audited annual financial statements (including, without limitation, a balance sheet, a statement of income, a statement of cash flow, a statement of changes in equity and notes to financial statements) within 120 days after your fiscal year end, and (ii) management-prepared interim financial statements within 45 days after the requested reporting period(s). Annual statements shall set forth the corresponding figures for the prior fiscal year in comparative form, all in reasonable detail without any qualification or exception deemed material by us. Unless otherwise accepted by us, each financial statement submitted to us shall be prepared in accordance with generally accepted accounting principles consistently applied and shall fairly and accurately present your financial condition and results of operations for the period to which it pertains.

9. **USA PATRIOT ACT NOTICE; FAXED OR SCANNED DOCUMENTS; MISC.:** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each customer who opens an account. When you enter into a transaction with us, we ask for your business name, address and other information that will allow us to identify you. We may also ask to see other documents that substantiate your business identity. You agree to submit the original duly-signed documents via overnight courier the same day of the facsimile or scanned transmission of the documents. Any faxed or scanned copy may be considered the original, and you waive the right to challenge in court the authenticity or binding effect of any faxed or scanned copy or signature thereon. You agree to execute any further documents that we may request to carry out the intents and purposes of this Agreement. All notices shall be mailed or delivered by facsimile transmission or overnight courier to the respective parties at the addresses shown on this Agreement or such other address as a party may provide in writing from time to time. By providing any telephone number, now or in the future, for a cell phone or other wireless device, you are expressly consenting to receiving communications, regardless of their purpose, at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic dialing system from us and our agents. These calls and messages may incur access fees from your provider.

10. **WARRANTY DISCLAIMERS:** YOU AGREE THAT YOU HAVE SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON YOUR OWN JUDGMENT AND YOU DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US. WE DO NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF OURS AND WE ARE NOT AN AGENT OF THE SUPPLIER, AND NOTHING THE SUPPLIER STATES OR DOES CAN AFFECT YOUR OBLIGATION UNDER THIS AGREEMENT. YOU WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST ANY SUPPLIER, LICENSOR OR MANUFACTURER. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, OF, AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, CONDITION, QUALITY, ADEQUACY, TITLE, DATA ACCURACY, SYSTEM INTEGRATION, FUNCTION, DEFECTS, OR ANY OTHER ISSUE IN REGARD TO THE EQUIPMENT, ANY OTHER ASSOCIATED SOFTWARE AND ANY FINANCED ITEMS.

11. **LAW, JURY WAIVER:** Agreements, promises and commitments made by us, concerning loans and other credit extensions must be in writing, express consideration and be signed by us to be enforceable. This Agreement may be modified only by written agreement and not by course of performance. This Agreement will be governed by and construed in accordance with Minnesota law. You consent to jurisdiction and venue of any state or federal court in Minnesota and waive the defense of inconvenient forum. For any action arising out of or relating to this Agreement or the Equipment, YOU AND WE WAIVE ALL RIGHTS TO A TRIAL BY JURY.

X _____ CUSTOMER INITIALS: _____ X

Case 17-03469-TOM7    Doc 144-1    Filed 11/07/17    Entered 11/07/17 10:41:48    Desc
Exhibit    Page 2 of 19

3. **MAINTENANCE AND LOCATION OF EQUIPMENT; SECURITY INTEREST:** At your expense, you agree to keep the Equipment: (1) in good repair, condition and working order, in compliance with applicable manufacturers' and regulatory standards; (2) free and clear of all liens and claims; and (3) only at your address shown on page 1, and you agree not to move it unless we agree in writing. In the event the Equipment is transferred, you are solely responsible for removing any data that may reside in the Equipment, including but not limited to hard drives, disk drives or any other form of memory. You grant us a security interest in the Equipment to secure all amounts you owe us under any agreement with us, and you authorize us to file a financing statement (UCC-1) or be named on the vehicle title to show our interest. You will not change your state of organization, headquarters or residence without providing prior written notice to us so that we may amend or file a new UCC-1. You will notify us within 30 days if your state of organization revokes or terminates your existence.

4. **COLLATERAL PROTECTION; INSURANCE; INDEMNITY; LOSS OR DAMAGE:** You agree to keep the Equipment fully insured against risk and loss, with us as lender's loss payee, in an amount not less than the original Equipment cost until this Agreement is terminated. You will provide 10 days advance written notice to us of any modification or cancellation of your insurance policy(s). You agree to provide us certificates or other evidence of insurance acceptable to us. If you fail to comply with this requirement within 30 days after the start of this Agreement, we may charge you a monthly property damage surcharge of up to .0035 of the Equipment cost as a result of our credit risk and administrative and other costs, as would be further described on a letter from us to you. We may make a profit on this program. We are not responsible for, and you agree to hold us harmless and reimburse us for and to defend on our behalf against, any claim for any loss, expense, liability or injury caused by or in any way related to delivery, installation, possession, use, condition, inspection, removal or storage of the Equipment. You are responsible for the risk of loss or for any destruction of or damage to the Equipment. You agree to promptly notify us in writing of any loss or damage. If the Equipment is destroyed and we have not otherwise agreed in writing, you will pay to us the unpaid balance of this Agreement, including any future Payments to the end of the term discounted at 2%. Any proceeds of insurance will be paid to us and credited, at our option, against any loss or damage. You authorize us to sign on your behalf and appoint us as your attorney-in-fact to endorse in your name any insurance drafts or checks issued due to loss or damage to the Equipment. All indemnities will survive the expiration or termination of this Agreement.

5. **ASSIGNMENT:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN OR LEASE THE EQUIPMENT OR THIS AGREEMENT, without our prior written consent. Without our prior written consent, you shall not reorganize or merge with any other entity or transfer all or a substantial part of your ownership interests or assets. We may sell, assign, or transfer this Agreement without notice. You agree that if we sell, assign or transfer this Agreement, our assignee will have the same rights and benefits that we have now and will not have to perform any of our obligations. You agree that our assignee will not be subject to any claims, defenses, or offsets that you may have against us. You shall cooperate with us in executing any documentation reasonably required by us or our assignee to effectuate any such assignment. This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns.

6. **DEFAULT AND REMEDIES:** You will be in default if: (a) you do not pay any Payment or other sum due to us or any other person when due or if you fail to perform in accordance with the covenants, terms and conditions of this Agreement or any other agreement with us or any of our affiliates or any material agreement with any other lender, (b) you make or have made any false statement or misrepresentation to us, (c) you or any guarantor dies, dissolves or terminates existence, (d) there has been a material adverse change in your or any guarantor's financial, business or operating condition, or (e) any guarantor defaults under any guaranty for this Agreement. If any part of a Payment is more than 5 days late, you agree to pay a late charge of 10% of the Payment which is late or if less, the maximum charge allowed by law. If you are ever in default, at our option, we can terminate this Agreement and require that you pay the unpaid balance of this Agreement, including any future Payments to the end of the term discounted at 2%. We may recover default interest on any unpaid amount at the rate of 12% per year. Concurrently and cumulatively, we may also use any or all of the remedies available to us under Article 9 of the UCC and any other law, including requiring that you: (1) deliver the Equipment to us to a location we specify; and (2) immediately stop using any Financed Items. In addition, we will have the right, immediately and without notice or other action, to set-off against any of your liabilities to us any money, including depository account balances, owed by us to you, whether or not due. In the event of any dispute or enforcement of rights under this Agreement, you agree to pay our reasonable attorney's fees (including any incurred before or at trial, on appeal or in any other proceeding), actual court costs and any other collection costs, including any collection agency fee. If we have to take possession of the Equipment, you agree to pay the costs of repossession, moving, storage, repair and sale. The net proceeds of the sale of any Equipment will be credited against what you owe us under this Agreement and you will be responsible for any deficiency after such application. YOU AGREE THAT WE WILL NOT BE RESPONSIBLE TO PAY YOU ANY CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES FOR ANY DEFAULT, ACT OR OMISSION BY ANYONE. Any delay or failure to enforce our rights under this Agreement will not prevent us from enforcing any rights at a later time. You agree that your rights and remedies are governed exclusively by this Agreement. If interest is charged or collected in excess of the maximum lawful rate, we will refund such excess to you, which will be your sole remedy.

7. **FINANCED ITEMS: SOFTWARE, SERVICES:** You may have elected to finance certain licensed software ("Software") and/or services, including but not limited to training, installation, maintenance, custom programming, technical consulting and support services ("Services") (together with the Software, the "Financed Items", which are included in the word "Equipment" unless separately stated). You grant us a security interest in your rights (including any rights as a licensee) in the Software to secure all amounts you owe us under any agreement with us. Ownership of any Software shall remain with the licensor thereof and your rights with respect to such Software shall be governed by a separate license agreement between you and the licensor, which shall not be affected by this Agreement. Any Services shall be performed by a service provider unrelated to us. IN NO EVENT SHALL WE HAVE ANY OBLIGATION TO PERFORM ANY SERVICES, AND ANY FAILURE OF SUCH SERVICE-PROVIDER TO PROVIDE ANY SERVICES FINANCED HEREUNDER SHALL NOT EXCUSE YOUR OBLIGATIONS TO US. WE SHALL NOT BE LIABLE TO YOU, NOR SHALL THERE BE ANY ABATEMENT OR SETOFF IN YOUR PAYMENTS, FOR ANY LIABILITY, CLAIM, LOSS, DAMAGE OR EXPENSE OF ANY KIND OR NATURE CAUSED BY ANY FINANCED ITEMS. Upon the happening of a default, in addition to all other remedies provided for under this Agreement, we shall have the right to cause the termination of all Financed Items.

8. **INSPECTIONS AND REPORTS:** We will have the right, at any reasonable time, to inspect the Equipment and any documents relating to its use, maintenance and repair. Within 30 days after our request, you will deliver all requested information (including tax returns) which we deem reasonably necessary to determine your current financial condition and faithful performance of the terms hereof. This may include: (i) compiled, reviewed or audited annual financial statements (including, without limitation, a balance sheet, a statement of income, a statement of cash flow, a statement of changes in equity and notes to financial statements) within 120 days after your fiscal year end, and (ii) management-prepared interim financial statements within 45 days after the requested reporting period(s). Annual statements shall set forth the corresponding figures for the prior fiscal year in comparative form, all in reasonable detail without any qualification or exception deemed material by us. Unless otherwise accepted by us, each financial statement submitted to us shall be prepared in accordance with generally accepted accounting principles consistently applied and shall fairly and accurately present your financial condition and results of operations for the period to which it pertains.

9. **USA PATRIOT ACT NOTICE; FAXED OR SCANNED DOCUMENTS; MISC.:** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each customer who opens an account. When you enter into a transaction with us, we ask for your business name, address and other information that will allow us to identify you. We may also ask to see other documents that substantiate your business identity. You agree to submit the original duly-signed documents via overnight courier the same day of the facsimile or scanned transmission of the documents. Any faxed or scanned copy may be considered the original, and you waive the right to challenge in court the authenticity or binding effect of any faxed or scanned copy or signature thereon. You agree to execute any further documents that we may request to carry out the intents and purposes of this Agreement. All notices shall be mailed or delivered by facsimile transmission or overnight courier to the respective parties at the addresses shown on this Agreement or such other address as a party may provide in writing from time to time. By providing any telephone number, now or in the future, for a cell phone or other wireless device, you are expressly consenting to receiving communications, regardless of their purpose, at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic dialing system from us and our agents. These calls and messages may incur access fees from your provider.

10. **WARRANTY DISCLAIMERS:** YOU AGREE THAT YOU HAVE SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON YOUR OWN JUDGMENT AND YOU DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US. WE DO NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF OURS AND WE ARE NOT AN AGENT OF THE SUPPLIER, AND NOTHING THE SUPPLIER STATES OR DOES CAN AFFECT YOUR OBLIGATION UNDER THIS AGREEMENT. YOU WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST ANY SUPPLIER, LICENSOR OR MANUFACTURER. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, OF, AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, CONDITION, QUALITY, ADEQUACY, TITLE, DATA ACCURACY, SYSTEM INTEGRATION, FUNCTION, DEFECTS, OR ANY OTHER ISSUE IN REGARD TO THE EQUIPMENT, ANY OTHER ASSOCIATED SOFTWARE AND ANY FINANCED ITEMS.

11. **LAW, JURY WAIVER:** Agreements, promises and commitments made by us, concerning loans and other credit extensions must be in writing, express consideration and be signed by us to be enforceable. This Agreement may be modified only by written agreement and not by course of performance. This Agreement will be governed by and construed in accordance with Minnesota law. You consent to jurisdiction and venue of any state or federal court in Minnesota and waive the defense of inconvenient forum. For any action arising out of or relating to this Agreement or the Equipment, YOU AND WE WAIVE ALL RIGHTS TO A TRIAL BY JURY.

X_____ CUSTOMER INITIALS:_____ X



# SCHEDULE "A"
Agreement #

This Schedule "A" is to be attached to and become part of Agreement # _____ dated _____, between <u>Maryland LC Ventures, LLC dba Little Caesars</u> as Customer and <u>IRH Capital, LLC and/or its assigns</u> as financer.

950 Largo Center Dr., Upper Marlboro, MD 20744

Without in any way limiting the description of the Equipment in the Agreement referenced above, the term "Equipment" shall also include the following properties, assets and rights, wherever located, whether now owned or existing or hereafter acquired or arising, and howsoever Debtor's interest therein may arise or appear (whether by ownership, lease, security interest, claim, or otherwise): (a) all Accounts, including Accounts Receivables; (b) all Chattel Paper (including Tangible Chattel Paper and Electronic Chattel Paper); (c) all Instruments; (d) all Goods, including without limitation (i) Equipment, (ii) motor vehicle, (iii) Inventory, (iv) Farm Products, (v) Accessions, and (vi) As-Extracted Collateral; (e) all Documents; (f) all General Intangibles (including, without limitation, payment intangibles and software); (g) all Deposit Accounts; (h) all Letter-of-Credit Rights; (i) all Investment Property; (j) all Supporting Obligations; (k) any and all personal property described below; (l) all personal property listed on any records and data relating to any of the foregoing, whether in the form of a writing, photograph, microfilm, microfiches, or electronic media, together with all of your right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media; and (m) any and all proceeds of any of the foregoing, including insurance proceeds or other proceeds from the sale, destruction, loss, or other disposition of any of the foregoing, and sums due from a third party who has damaged or destroyed any of the foregoing or from that party's insurer, whether due to judgment, settlement or other process (capitalized terms used in this **Schedule A** that are not defined in this **Schedule A** or in the Agreement shall have the meanings attributed to such terms in the UCC).

This Equipment Schedule "A" is hereby verified as correct by the undersigned Customer, who acknowledges receipt of a copy.

<u>Maryland LC Ventures, LLC dba Little Caesars</u>
Customer

X _____
Signature / Nazir Kaisani

_____ Member     V.P.
Title

7/14/15
Date

NOTE: SIGNER OF THIS ADDENDUM MUST BE SAME AS ON FRONT OF AGREEMENT. A FACSIMILE OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

SCHA                                    1



# SCHEDULE "A"
Agreement #

This Schedule "A" is to be attached to and become part of Agreement #_____ dated_____, between **Maryland LC Ventures LLC dba Little Caesars** as Customer and <u>IRH Capital LLC and/or its assigns as</u> Secured Party.

Location (s): 950 Largo Center Drive, Upper Marlboro, MD 20744

Vendor – Blueline Distribution, 24120 Haggerty Rd., Farmington Hills, MI 48335

| Description | Qty | Unit |
|---|---|---|
| 7'9"X15'5" IMPERIAL BEACON II | 1 | CS |
| IMPERIAL GLASS DOOR SET 23"X | 1 | CS |
| METRO OPT. 60" COOLER SHELVIN | 1 | CS |
| RANDELL 111" PREP TABLE W/OVE | 1 | CS |
| SOMERSET SHEETER SYNTHETIC RO | 1 | CS |
| SAFETY CABLE FOR SHEETER | 1 | CS |
| STEPHAN DOUGH MIX VCM 44-A-1 | 1 | CS |
| AM DOUGH ROUNDER/NSF | | CS |
| ROTO-MOLDED AUTO SAUCER W/TAB | 1 | CS |
| QUOTE SAUCER DROPSHIP FRT | 1 | CS |
| WARING IMMERSION MIXER | 1 | CS |
| WARING WALL MOUNT HANGER | 1 | CS |
| METRO OPT. 48" DBL WALL SHELF | 1 | CS |
| METRO OPT. DISH STATION KIT | 1 | CS |
| METRO OPT. 48"DBL LANDING STAT | 1 | CS |
| METRO 22"X36" POLYMER DUNNAGE | 1 | CS |
| DUKE 30"X48" S/S TABLE W/BSPL | 4 | CS |
| DUKE 30"X96" HEAVY DUTY SHEET | 3 | CS |
| DUKE 36"X48" S/S TABLE W/BSPL | 1 | CS |
| DUKE 36"X72" S/S TABLE W/BSPL | 1 | CS |
| AERO WALL MOUNT HAND SINK W/F | 1 | CS |
| HYGENIC PUSH PULL TOWEL DISPE | 1 | CS |
| AERO 3 COMP SINK 16X21 BOWLS/ | 1 | CS |
| T&S LOW-FLOW PRE-RINSE ASY | 1 | CS |
| QUOTE COOLER DROPSHIP FRT | 1 | CS |
| | | CS |

This Equipment Schedule "A" is hereby verified as correct by the undersigned Customer, who acknowledges receipt of a copy.

Maryland LC Ventures LLC dba Little Caesars
Customer

X _Wyndh Kanan_
Signature

**Member**

Title
10-23-15
Date

NOTE: SIGNER OF THIS ADDENDUM MUST BE SAME AS ON FRONT OF AGREEMENT. A FACSIMILE OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL



# SCHEDULE "A"
Agreement # _____

This Schedule "A" is to be attached to and become part of Agreement # _____ dated _____, between **Maryland LC Ventures LLC dba Little Caesars** as Customer and **IRH Capital LLC and/or its assigns** as Secured Party.

Location (s): 950 Largo Center Drive, Upper Marlboro, MD 20744

Vendor – Blueline Distribution, 24120 Haggerty Rd., Farmington Hills, MI 48335

| Description | Qty |
|---|---|
| WARM WHITE CERAMIC TILE 6X6 | 23 CS |
| BLACK 6" CERAMIC TILE BASE (4 | 3 CS |
| VIRGINIA FLORIM CHALK PORCELA | 19 CS |
| SHAW 10' I7 MENUBOARD HEADER | 1 CS |
| INTERIOR DECOR PKG/CRATE 2&3/ | 1 CS |
| NEW FRANCHISE I7 MARKETING TR | 1 CS |
| DUKE 4' FILLER COUNTER W/ELEC | 1 CS |
| COUNTERTOP MAT WITH GRAPHICS | 3 CS |
| DUKE 5' COUNTER W/ELECTRICAL | 1 CS |
| METRO UNDERCOUNTER SHELF KIT | 2 CS |
| I7 CRES COR HOT HOLDING CABIN | 1 CS |
| CRES COR 5-LIGHT MERCHANDISER | 2 CS |
| LED OPEN SIGN 16"W X 22"H | 1 CS |
| I7 LC/HNR DOOR HANDLE SET/ALU | 1 CS |
| RM 21 GAL LOBBY TRASH CAN W/L | 1 EA |
| LOBBY CHAIR BLACK/CHROME (SMI | 1 CS |
| METRO OPT. 60" PHONE STATION | 6 CS |
| METRO PHONE STATION 14"X48" ( | 1 CS |
| 3255 3-DECK W/1SB (F.S. KIT) | 1 CS |
| ADD'L SPLIT BELT CHARGE (ALL | 1 CS |
| AVI HOOD SYSTEM/3255 3-DECK | 2 CS |
| AVI EXHAUST FAN | 1 CS |
| EXHAUST CURB/DALTON/AVI HOOD | 1 CS |
| PRODUCT SHELF NO LIP (ENTRANC | 1 CS |
| INT'L/DOMESTIC OVEN CRATE | 1 CS |
| QUITE OVEN DROPSHIP FRT | 1 CS |
| HOOD CRATE ASSEMBLY | 1 CS |

This Equipment Schedule "A" is hereby verified as correct by the undersigned Customer, who acknowledges receipt of a copy.

Maryland LC Ventures LLC dba Little Caesars
Customer

X _[signature]_
Signature

Member _____

Title
10-23-15
Date

NOTE: SIGNER OF THIS ADDENDUM MUST BE SAME AS ON FRONT OF AGREEMENT. A FACSIMILE OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

# PAYMENT SCHEDULE "B"

## AGREEMENT #

This Payment Schedule "B" is to be attached to and become part of Agreement #     dated between the undersigned as Customer and IRH Capital, LLC and/or its assigns as Lessor/Secured Party.

Term in months from Agreement commencement date: 72

Type of upfront payment and amount:    Security Deposit    $0.00
                                        Advance Payment    $2,998.00 first payment
                                        Down Payment    $0.00

Payment Schedule as follows:
    *plus applicable taxes

2-4 monthly Payment(s)* of $99.00; and

5-72 monthly Payment(s)* of $2,998.00.

This Payment Schedule "B" is hereby verified as correct by the undersigned Customer, who agrees to the terms hereof.

Maryland LC Ventures LLC dba Little Caesars

Customer

X *[signature]*
Signature

Member        10-23-15
Title                 Date

NOTE: SIGNER OF THIS DOCUMENT MUST BE SAME AS ON THE AGREEMENT. A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

SCHB REV 10/11



# DELIVERY & ACCEPTANCE CERTIFICATE

**AGREEMENT #**

This Certificate is delivered to and for the benefit of Lessor/Secured Party and pertains to the below-described Equipment and/or Financed Items which are the subject of the above-referenced Agreement between IRH CAPITAL LLC as Lessor/Secured Party and the undersigned as Customer. The words you and your refer to Customer. The words we, us and our refer to Lessor/Secured Party.

You certify and acknowledge that all of the Equipment and Financed Items (as applicable): 1) have been received, installed and inspected, and 2) are fully operational and unconditional accepted. Further, all terms and conditions of the above-referenced Agreement have been reviewed and acknowledged. Upon you signing below, your promises in the Agreement will be irrevocable and unconditional in all respects. You understand and agree that we have paid for the purchase of the Equipment and/or Financed Items from the below-referenced Supplier and you may contact the Supplier for any warranty rights, which, if the Agreement is a lease, we transfer to you for the term of the Agreement (or until you default).

| Supplier: | Equipment and/or Financed Items Description |
|---|---|
| Blueline Foodservice Distr. | Equipment |
| Mayes Construction LLC | Construction |
|  |  |
|  |  |
|  |  |
|  |  |

*together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries.*

MARYLAND LC VENTURES LLC
Customer

X *(signature)*

Signature WAZIR KAISANI

MEMBER                                   10-23-15

Title                                    Acceptance Date

NOTE: A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

10000 REV 02/15

 

**IRH Capital**
*A Leader in Franchise Finance*

# PAY PROCEEDS DIRECTION

**AGREEMENT #** ☐

TO: IRH CAPITAL LLC

RE: Agreement # _____ dated _____, between the undersigned as Customer and <u>IRH CAPITAL LLC,</u> as Lessor/Secured Party.

Lessor/Secured Party hereby irrevocably is instructed to disburse from the proceeds of the Agreement, evidenced by the above-referenced Instrument, the respective amounts to the respective payees, as designated below:

| Amount | Payee Name and Address |
|---|---|
| $125,338.77 | Blueline Foodservice Distribution, Attn. Julie Turvill<br>2211 Woodward Ave, 7th floor<br>Detroit, MI 48201 |
| $24,661.23 | Mayes Construction LLC<br>922 SE 13 PL<br>Cape Coral, FL 33990 |

Disbursement by Lessor/Secured Party in accordance with the foregoing instructions shall constitute payment and delivery to and receipt by Customer of any and all of such proceeds.

MARYLAND LC VENTURES LLC
Customer
X _(signature)_ Wazir Kaisani
Signature WAZIR KAISANI
MEMBER    10-23-15
Title    Date

NOTE: SIGNER OF THIS DOCUMENT MUST BE SAME AS ON THE AGREEMENT. A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

10446 REV 11/14



**PERSONAL GUARANTY**

**AGREEMENT #**

Customer: MARYLAND LC VENTURES LLC

The words Lessor/Secured Party, we, us and our refer to IRH CAPITAL LLC. The words you, your and Guarantor refer to the undersigned Guarantor.

As additional inducement for us to enter into the above-referenced Agreement (the "Agreement"), the undersigned ("you") unconditionally and absolutely, jointly and severally, guarantees that the above-named Customer will, fully and promptly, make all payments and meet all obligations required under the Agreement and any addendums and supplements thereto. This is a continuing Guaranty and shall not be revoked by your death, bankruptcy, incompetency or insolvency. You may not terminate or revoke this Guaranty without written notice to us, and this Guaranty shall continue in full force and effect with regard to all of Customer's obligations arising prior to the date of such notice. You agree that we may make changes, including compromise or settlement, with the Customer, and you waive all defenses and notice of those changes and you will remain irrevocably responsible for the payment and obligations of the Agreement. We do not have to notify you if the Customer is in default. If the Customer defaults, you will immediately pay all sums due and will perform all the obligations under the terms of the Agreement. It is not necessary for us to proceed first against the Customer or any collateral before enforcing this Guaranty. Your obligations will not be subject to any abatement, setoff, defense or counterclaim for any reason. You certify that the financial information you have given us is true, complete and accurate in all material respects. Within thirty (30) days of our request, you will deliver to us all requested information in order for us to determine your current financial condition. You authorize us to obtain credit bureau reports for credit and collection purposes and to share them with our affiliates and agents. Without our prior written consent, you will not transfer your obligations under this Guaranty or all or substantially all your assets to any person or entity. This Guaranty shall be binding upon and inure to the benefit of the parties' estates, heirs, successors and assigns. We may assign this Guaranty without notice to you. You expressly consent to the laws and jurisdiction of the courts in Minnesota and agree to pay all costs, including attorneys' fees (including any before or at trial, on any appeal and in any other proceeding), incurred in any dispute regarding or enforcement of this Guaranty and the Agreement.

By providing any telephone number, now or in the future, for a cell phone or other wireless device, you are expressly consenting to receiving communications, regardless of their purpose, at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic dialing system from us and our affiliates and agents. These calls and messages may incur access fees from your provider. A fax or scanned copy of this Guaranty with authorized signatures will be considered the original and will be binding on all parties for all purposes.

**YOU AND WE IRREVOCABLY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY LITIGATION RELATED TO THIS GUARANTY.**

This Guaranty is duly executed and delivered as of ___7/19___, 20 _15_.

GUARANTOR:

X _____
Signature

PERVEZ KAISANI
An Individual

Home Phone #: (400) 928-0021

ADDRESSES FOR ALL NOTICES TO LESSOR/SECURED PARTY:
1310 Madrid Street
Marshall, MN 56258

NOTE: CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

10076 REV 03/14

3



# PERSONAL GUARANTY

**AGREEMENT #**

Customer: MARYLAND LC VENTURES LLC

The words Lessor/Secured Party, we, us and our refer to IRH CAPITAL, LLC. The words you, your and Guarantor refer to the undersigned Guarantor.

As additional inducement for us to enter into the above-referenced Agreement (the "Agreement"), the undersigned ("you") unconditionally and absolutely, jointly and severally, guarantees that the above-named Customer will, fully and promptly, make all payments and meet all obligations required under the Agreement and any addendums and supplements thereto. This is a continuing Guaranty and shall not be revoked by your death, bankruptcy, incompetency or insolvency. You may not terminate or revoke this Guaranty without written notice to us, and this Guaranty shall continue in full force and effect with regard to all of Customer's obligations arising prior to the date of such notice. You agree that we may make changes, including compromise or settlement, with the Customer, and you waive all defenses and notice of those changes and you will remain irrevocably responsible for the payment and obligations of the Agreement. We do not have to notify you if the Customer is in default. If the Customer defaults, you will immediately pay all sums due and will perform all the obligations under the terms of the Agreement. It is not necessary for us to proceed first against the Customer or any collateral before enforcing this Guaranty. Your obligations will not be subject to any abatement, setoff, defense or counterclaim for any reason. You certify that the financial information you have given us is true, complete and accurate in all material respects. Within thirty (30) days of our request, you will deliver to us all requested information in order for us to determine your current financial condition. You authorize us to obtain credit bureau reports for credit and collection purposes and to share them with our affiliates and agents. Without our prior written consent, you will not transfer your obligations under this Guaranty or all or substantially all your assets to any person or entity. This Guaranty shall be binding upon and inure to the benefit of the parties' estates, heirs, successors and assigns. We may assign this Guaranty without notice to you. You expressly consent to the laws and jurisdiction of the courts in Minnesota and agree to pay all costs, including attorneys' fees (including any before or at trial, on any appeal and in any other proceeding), incurred in any dispute regarding or enforcement of this Guaranty and the Agreement.

By providing any telephone number, now or in the future, for a cell phone or other wireless device, you are expressly consenting to receiving communications, regardless of their purpose, at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic dialing system from us and our affiliates and agents. These calls and messages may incur access fees from your provider. A fax or scanned copy of this Guaranty with authorized signatures will be considered the original and will be binding on all parties for all purposes.

**YOU AND WE IRREVOCABLY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY LITIGATION RELATED TO THIS GUARANTY.**

This Guaranty is duly executed and delivered as of _____ 7/19 _____, 20 15.

**GUARANTOR:**

X _Wazir Kaisani_ (Signature)

WAZIR KAISANI

An Individual

X Home Phone #: 407-227-7010

ADDRESSES FOR ALL NOTICES TO LESSOR/SECURED PARTY:
1310 Madrid Street
Marshall, MN 56258

NOTE: CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.
10076 REV 03/14



**PERSONAL GUARANTY**

**AGREEMENT #**

Customer: MARYLAND LC VENTURES LLC

The words Lessor/Secured Party, we, us and our refer to JRH CAPITAL, LLC. The words you, your and Guarantor refer to the undersigned Guarantor.

As additional inducement for us to enter into the above-referenced Agreement (the "Agreement"), the undersigned ("you") unconditionally and absolutely, jointly and severally, guarantees that the above-named Customer will, fully and promptly, make all payments and meet all obligations required under the Agreement and any addendums and supplements thereto. This is a continuing Guaranty and shall not be revoked by your death, bankruptcy, incompetency or insolvency. You may not terminate or revoke this Guaranty without written notice to us, and this Guaranty shall continue in full force and effect with regard to all of Customer's obligations arising prior to the date of such notice. You agree that we may make changes, including compromise or settlement, with the Customer, and you waive all defenses and notice of those changes and you will remain irrevocably responsible for the payment and obligations of the Agreement. We do not have to notify you if the Customer is in default. If the Customer defaults, you will immediately pay all sums due and will perform all the obligations under the terms of the Agreement. It is not necessary for us to proceed first against the Customer or any collateral before enforcing this Guaranty. Your obligations will not be subject to any abatement, setoff, defense or counterclaim for any reason. You certify that the financial information you have given us is true, complete and accurate in all material respects. Within thirty (30) days of our request, you will deliver to us all requested information in order for us to determine your current financial condition. You authorize us to obtain credit bureau reports for credit and collection purposes and to share them with our affiliates and agents. Without our prior written consent, you will not transfer your obligations under this Guaranty or all or substantially all your assets to any person or entity. This Guaranty shall be binding upon and inure to the benefit of the parties' estates, heirs, successors and assigns. We may assign this Guaranty without notice to you. You expressly consent to the laws and jurisdiction of the courts in Minnesota and agree to pay all costs, including attorneys' fees (including any before or at trial, on any appeal and in any other proceeding), incurred in any dispute regarding or enforcement of this Guaranty and the Agreement.

By providing any telephone number, now or in the future, for a cell phone or other wireless device, you are expressly consenting to receiving communications, regardless of their purpose, at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic dialing system from us and our affiliates and agents. These calls and messages may incur access fees from your provider. A fax or scanned copy of this Guaranty with authorized signatures will be considered the original and will be binding on all parties for all purposes.

**YOU AND WE IRREVOCABLY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY LITIGATION RELATED TO THIS GUARANTY.**

This Guaranty is duly executed and delivered as of _7/22_, 20_15_.

GUARANTOR:

X _____
Signature

RICHARD RUGGIERO

X An Individual

X Home Phone #: _301-367-5208_

ADDRESSES FOR ALL NOTICES TO LESSOR/SECURED PARTY:
1310 Madrid Street
Marshall, MN 56258

NOTE: CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

10076 REV 03/14

2

Case 17-03469-TOM7    Doc 144-1    Filed 11/07/17    Entered 11/07/17 10:41:48    Desc Exhibit    Page 12 of 19



**GUARANTY**
**(By a Business Organization)**
**AGREEMENT #**

Customer: MARYLAND LC VENTURES LLC

The words Lessor/Secured Party, we, us and our refer to IRH CAPITAL LLC. The words you, your and Guarantor refer to the undersigned Guarantor.

As additional inducement for us to enter into the above-referenced Agreement (the "Agreement"), the undersigned ("you") unconditionally and absolutely, jointly and severally, guarantees that the above-named Customer will, fully and promptly, make all payments and meet all obligations required under the Agreement and any addendums and supplements thereto. This is a continuing Guaranty and shall not be revoked by your dissolution, merger, bankruptcy, incompetency or insolvency. You may not terminate or revoke this Guaranty without written notice to us, and this Guaranty shall continue in full force and effect with regard to all of Customer's obligations arising prior to the date of such notice. You agree that we may make changes, including compromise or settlement, with the Customer, and you waive all defenses and notice of those changes and you will remain irrevocably responsible for the payment and obligations of the Agreement. We do not have to notify you if the Customer is in default. If the Customer defaults, you will immediately pay all sums due and will perform all the obligations under the terms of the Agreement. It is not necessary for us to proceed first against the Customer or any collateral before enforcing this Guaranty. Your obligations will not be subject to any abatement, setoff, defense or counterclaim for any reason. You certify that the financial information you have given us is true, complete and accurate in all material respects. Within thirty (30) days of our request, you will deliver to us all requested information in order for us to determine your current financial condition. You warrant that you and by your formation documents to execute this Guaranty, and the officer, manager or partner signing the same warrants that he/she is authorized to so sign. Without our prior written consent, you will not transfer or allow your owners to transfer your obligations under this Guaranty or all or substantially all your assets or ownership interests to any person or entity. This Guaranty shall be binding upon and inure to the benefit of the parties' successors and assigns. We may assign this Guaranty without notice to you. You expressly consent to the laws and the jurisdiction of the courts in Minnesota and agree to pay all costs, including attorneys' fees (including any before or at trial, on any appeal and in any other proceeding), incurred in any dispute regarding or enforcement of this Guaranty and the Agreement.

By providing any telephone number, now or in the future, for a cell phone or other wireless device, you are expressly consenting to receiving communications, regardless of their purpose, at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic dialing system from us and our affiliates and agents. These calls and messages may incur access fees from your provider. A fax or scanned copy of this Guaranty with authorized signatures will be considered the original and will be binding on all parties for all purposes.

**YOU AND WE IRREVOCABLY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY LITIGATION RELATED TO THIS GUARANTY.**

This Guaranty is duly executed and delivered as of _____ 7/19 , 20 15 .

GUARANTOR: PG COUNTY PIZZA INC

X _____
Signature

X _____
Title

ADDRESSES FOR ALL NOTICES TO LESSOR/SECURED PARTY:
1310 Madrid Street
Marshall, MN 56258

NOTE: CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.
10585 REV 03/14

1

# STAGED FUNDING AGREEMENT

### AGREEMENT #

This STAGED FUNDING AGREEMENT is made by and between Maryland LC Ventures LLC dba Little Caesars, as Customer and IRH Capital, LLC and/or its assigns, as Lessor/Secured Party.

Lessor/Secured Party intends to lease and/or finance certain equipment described as follows: See Attached Schedule ("Equipment") manufactured and/or distributed by vendor(s), as further defined below ("Vendor(s)"), subject to the Agreement whose number is shown above ("Customer Agreement") with the Customer; and Lessor's/Secured Party's payment to Vendor(s) for the Equipment shall be on an installment or one-time basis, some or all of which may be paid before Customer receives and accepts the Equipment; therefore the parties hereto agree as follows:

Customer understands and agrees that not all the Equipment listed on the Customer Agreement may have been delivered yet and that Customer accepts all responsibility for non-delivery of the Equipment.

For the Equipment that has been delivered, Customer represents and warrants that the Equipment is satisfactory and is hereby accepted. Customer understands and agrees that in the event the Customer is not satisfied with the delivery and/or installation of any of the Equipment, the Customer shall only look to persons other than Lessor/Secured Party, such as the Vendor(s), supplier, manufacturer, installer or carrier, and Customer shall not assert against Lessor/Secured Party any claim or defense that Customer may have with reference to the Equipment, its delivery, non-delivery, installation, inadequacy or failure to operate satisfactorily. Further, with respect to the Equipment, whether delivered or not, Customer authorizes Lessor/Secured Party to pay the Vendor(s), as stated below, and to start the Customer Agreement for all of the Equipment listed on the Customer Agreement. Customer understands that Payments shall begin, in the full amount shown in the Customer Agreement, the same date that the Customer executes this Staged Funding Agreement and shall be continuous thereafter per the terms of the Customer Agreement. Customer further understands: (a) Lessor/Secured Party is not responsible for training, service or installation, (b) the Customer Agreement cannot be cancelled for any reason, and (c) Customer's obligation to make the contracted Payments and perform its other obligations under the Customer Agreement are absolute, unconditional, independent and not subject to any counterclaim, setoff or defense.

| Vendor(s) Name & Address | Staged Funding Payment Information |
|---|---|
| Blueline Foodservice Distribution - 2211 Woodward Ave, Detroit, MI 48201 | $125,338.77 will be paid to Vendor upon execution of this Staged Funding Agreement.<br>$ _____ will be paid to Vendor prior to shipment of the Equipment.<br>$ _____ will be paid to Vendor upon final verification of delivery of the Equipment by Customer.<br>$125,338.77: Total Amount. |
| Mayes Construction - 922 SE 13 PL, CApe Coral, FL 33990 | $24,661.23 will be paid to Vendor upon execution of this Staged Funding Agreement.<br>$ _____ will be paid to Vendor prior to shipment of the Equipment.<br>$ _____ will be paid to Vendor upon final verification of delivery of the Equipment by Customer.<br>$24,661.23: Total Amount. |
|  | $ _____ will be paid to Vendor upon execution of this Staged Funding Agreement.<br>$ _____ will be paid to Vendor prior to shipment of the Equipment.<br>$ _____ will be paid to Vendor upon final verification of delivery of the Equipment by Customer.<br>$ _____ : Total Amount. |
|  | $ _____ will be paid to Vendor upon execution of this Staged Funding Agreement.<br>$ _____ will be paid to Vendor prior to shipment of the Equipment.<br>$ _____ will be paid to Vendor upon final verification of delivery of the Equipment by Customer.<br>$ _____ : Total Amount. |

NOTE: SIGNER OF THIS DOCUMENT MUST BE SAME AS ON THE CUSTOMER AGREEMENT. A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE CUSTOMER AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

IC943 REV 10/13

| | | |
|---|---|---|
| | $ <br> $ <br> $ <br> $ | will be paid to Vendor upon execution of this Staged Funding Agreement. <br> will be paid to Vendor prior to shipment of the Equipment. <br> will be paid to Vendor upon final verification of delivery of the Equipment by Customer. <br> : Total Amount. |
| | $ <br> $ <br> $ <br> $ | will be paid to Vendor upon execution of this Staged Funding Agreement. <br> will be paid to Vendor prior to shipment of the Equipment. <br> will be paid to Vendor upon final verification of delivery of the Equipment by Customer. <br> : Total Amount. |

Customer hereby acknowledges that Lessor/Secured Party is relying on the execution of this Staged Funding Agreement as a condition precedent to disbursing the proceeds of the Customer Agreement. Customer may contact the Vendor(s) for its warranty rights (if any, which Lessor transfers to Customer if the Agreement is a lease). The warranties are not Lessor's/Secured Party's responsibility.

If any portion of the proceeds of the Customer Agreement is not disbursed within 120 days after the date hereof, Lessor/Secured Party may cancel the Customer Agreement as to such undisbursed portion and may restructure the Customer Agreement to match the actual amount disbursed hereunder.

In consideration of Lessor/Secured Party offering this Staged Funding Agreement and to compensate Lessor/Secured Party for additional costs and expenses, Customer agrees to pay an additional fee of $    to Lessor/Secured Party. This fee is due on the date the first contracted Payment is due under the Customer Agreement.

This Staged Funding Agreement may not be modified except by an agreement duly signed by each of the parties hereto. In the event of any inconsistency between the terms of this Staged Funding Agreement and the terms of the Customer Agreement, the terms of this Staged Funding Agreement shall prevail.

IN WITNESS WHEREOF, the parties have caused this Staged Funding Agreement to be duly executed as of _____, 20____.

| IRH Capital, LLC and/or its assigns | Maryland LC Ventures LLC dba Little Caesars |
|---|---|
| Lessor/Secured Party | Customer |
| Signature | Signature |
| Title     Date | Member    11/19/15 <br> Title     Date |

ADDRESS FOR ALL NOTICES TO LESSOR/SECURED PARTY:
USBank Equipment Finance
1310 Madrid St
Marshall, MN 56258

Page 2 of 2

NOTE: SIGNER OF THIS DOCUMENT MUST BE SAME AS ON THE CUSTOMER AGREEMENT. A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE CUSTOMER AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

16943 REV 10/13



**U.S. Bank Equipment Finance — Payment Addendum**

Addendum to Agreement # _____ dated _____, between Maryland LC Ventures, LLC as Customer and US Bank Capital LLC and/or its assignees, as Lessor/Secured Party.

The parties agree to amend the above-referenced Agreement by revising the following:

Advance payments should read: $2,595.00
Amount Financed should read: $102,500.00
Term should read: One (1) advance payment of $2,595.00, two (2) payments of $596.00, sixty eight (68) payments of $2,595.00.

By signing this Addendum, Customer acknowledges the above changes to the Agreement and authorizes Lessor/Secured Party to make such changes. In all other respects, the terms and conditions of the Agreement remain in full force and effect and remain binding on Customer.

US BANK CAPITAL, LLC and/or its assignees  
Lessor/Secured Party

MARYLAND LC VENTURES, LLC  
Customer

Signature: _____  
Date: 10-29-15

# usbank.
**EQUIPMENT FINANCE**

**PAYMENT ADDENDUM**

**AGREEMENT #**

Addendum to Agreement # _____ dated _____, between Maryland LC Ventures, LLC as Customer and IRH Capital LLC and/or its assigns, as Lessor/Secured Party.

The parties wish to amend the above-referenced Agreement by restating the following:

    Advance payment should read: $2,998.00
    Amount Financed should read: $150,000.00
    Term should read: One (1) advance payment of $2,998.00, three (3) payments of $99.00, sixty eight (68) payments of $2,998.00

By signing this Addendum, Customer acknowledges the above changes to the Agreement and authorizes Lessor/Secured Party to make such changes. In all other respects, the terms and conditions of the Agreement remain in full force and effect and remain binding on Customer.

| IRH CAPITAL, LLC and/or its assigns | MARYLAND LC VENTURES, LLC |
|---|---|
| Lessor/Secured Party | Customer |
| Signature | X _Wazir Kalsani_ Signature |
| Title       Date | Wazir Kalsani, Member |
| | Title      11/19/15 Date |

NOTE: SIGNER OF THIS DOCUMENT MUST BE SAME AS ON THE AGREEMENT. A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

10169 REV 03/12

# PAYMENT ADDENDUM

## AGREEMENT #

Addendum to Agreement # _____ dated _____ between MARYLAND LC VENTURES LLC as Customer and IRH CAPITAL LLC, as Lessor/Secured Party.

The parties wish to amend the above-referenced Agreement by restating the following:

The term of the above-referenced Agreement is 1 advance Payment of $2,998.20, 6 monthly payments of $99.00 followed by 65 monthly payments of $3,182.24 plus applicable taxes.

By signing this Addendum, Customer acknowledges the above changes to the Agreement and authorizes Lessor/Secured Party to make such changes. In all other respects, the terms and conditions of the Agreement remain in full force and effect and remain binding on Customer.

| IRH CAPITAL LLC | MARYLAND LC VENTURES LLC |
|---|---|
| Lessor/Secured Party | Customer |
| Signature | x Signature |
| Title / Date | Title V.R. / Date 3/23/16 |

NOTE: SIGNER OF THIS DOCUMENT MUST BE SAME AS ON THE AGREEMENT. A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

10163 REV 03/12

# ASSIGNMENT AGREEMENT #

RE: Agreement no.          , dated          , between Maryland LC Ventures LLC dba Little Caesars as Customer and the undersigned as lessor or secured party.

**FOR VALUE RECEIVED**, the undersigned ("Assignor") hereby sells, assigns and transfers to U.S. Bank Equipment Finance, a division of U.S. Bank National Association and its successors and/or assigns ("Assignee"), and to its successors and assigns, all of Assignor's rights, title and interest in (including all rights to receive payments), but none of its obligations under, the above-referenced Agreement made by Assignor as lessor or secured party and all Assignor's right, title and interest (including any security interest) in the equipment which is the subject thereof (the "Equipment").

This Assignment is made pursuant to a certain program agreement and assignment agreement by and between Assignor and Assignee (the "Assignment Agreement"), the terms of which are incorporated herein. The Agreement described herein, the Equipment financed thereunder, and all payments, rent and proceeds thereof are hereby made subject to the Assignment Agreement.

The only executed originals of the above Agreement and all related documents are being delivered in conjunction with this Assignment, unless otherwise agreed with Assignee.

This Assignment is without recourse except as provided in the Assignment Agreement. All representations and warranties contained in the Assignment Agreement are true as of the date of this Assignment.

IRH Capital, LLC
Assignor

X _____
Signature

_____
Title                Date

NOTE: A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE ASSIGNMENT AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

10071 REV 10/11